CHARLES C. RAINEY, ESQ.
Nevada Bar No. 10723
Rainey • Devine
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89052
Telephone:  (702) 425.5100
Facsimile:  (888) 867.5734
chaz@raineydevine.com
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

S. ROWAN WILSON, an individual,

                Plaintiff,

v.

ERIC HOLDER, Attorney General of the United States, et al.,

                Defendants.

Case No.  2:11-cv-1679-GMN-(PAL)

**PLAINTIFF'S RESPONSE TO THE UNITED STATES' MOTION TO DISMISS OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff S. ROWAN WILSON (the "Plaintiff") by and through her counsel Charles C. Rainey of the The Law Firm of Rainey Devine, and hereby submits her OPPOSITION TO THE UNITED STATES'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT. This Opposition and Cross-motion is made and based upon the Memorandum of Points and Authorities attached hereto, the pleadings and papers on file herein, and any arguments to be had at the hearing of this matter.

DATED: March 9, 2012.

Respectfully submitted:

The Law Firm of Rainey Devine

By:    /s/ Chaz Rainey

Charles C. Rainey, Esq.
Nevada Bar No. 10723
8915 South Pecos Road, Ste. 20
Henderson, Nevada 89052
Telephone:  +1.702.425.5100
Facsimile:  +1.888.867.5734
chaz@raineydevine.com
*Attorney for Plaintiff*

Rainey • Devine
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ................................................................................................ i

INTRODUCTION............................................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 2

LEGAL STANDARDS ..................................................................................................... 2

ARGUMENT ................................................................................................................. 3

I.     DEFENDANTS HAVE VIOLATED PLAINTIFF'S RIGHT TO DUE PROCESS. ....................... 3

     A.  Defendants Have Violated Plaintiff's Right to Procedural Due Process by Depriving her of a Fundamental Constitutional Right Without Any Notice, Hearing or Opportunity to Comment....................................................... 3

     B.  Defendants Have Violated Plaintiff's Right to Substantive Due Process Because the Government's Interest is Outweighed by the Plaintiff's Right to Treat her Medical Condition in Accordance with her Doctor's Recommendation ............................................................................... 5

II.    DEFENDANTS HAVE VIOLATED PLAINTIFF'S RIGHT TO EQUAL PROTECTION BY TREATING HER DIFFERENTLY THAN SIMILARY SITUATED INDIVIDUALS.................... 8

III.   DEFENDANTS HAVE VIOLATED PLAINTIFF'S SECOND AMENDMENT RIGHTS. ......... 10

     A.  Plaintiff is Not an "Unlawful User" of or "Addicted To" a Controlled Substance Because Congress Did Not Intend to Include Medical Cannabis Patients in those Categories. ......................................................... 10

     B.  18 U.S.C. § 922(g)(3) is Unconstitutional. .................................... 14

          1.  The Ninth Circuit's Opinion in *Dugan* is Wrong and Must be Overturned........................................................................ 16

          2.  The Constitutionality of 18 U.S.C. § 922(g)(3) Must be Examined Under a Strict Scrutiny Standard Because it Seeks to Deprive Individuals of a Fundamental Constitutional Right ............................ 17

          3.  18 U.S.C. § 922(g)(3) is Unconstitutional, Under a Strict Scrutiny Standard, Because the Law is Not Narrowly Tailored to Satisfy a Compelling Government Interest and the Government has Far Less Restrictive Means of Achieving its Goals. ................................... 19

          4.  Even Under an Intermediate Scrutiny Analysis, 18 U.S.C. § 922(g)(3) is Unconstitutional, Because the Expansive Scope of the Law, Covering More than Half of the U.S. Population, is Not Substantially Related to Any Important Government Interest. .......... 20

     C.  18 U.S.C. § 922(d)(3) is Similarly Unconstitutional Under Both a Strict Scrutiny or Intermediate Scrutiny Analysis.. ................................... 24

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

IV.     PLAINTIFF'S MAIN PURPOSE IN THIS ACTION IS TO PROCURE DECLARATORY AND INJUNCTIVE RELIEF RATHER THAN MONETARY DAMAGES. ............................ 25

CONCLUSION ........................................................................................................ 25

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

**TABLE OF AUTHORITIES**

**U.S. SUPREME COURT CASES**                                                 PAGE

*Albright v. Oliver*, 510 U.S. 266 (1994) ................................................................ 6

*Armstrong v. Manzo*, 380 U.S. 545 (1965). ......................................................... 4

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986). ........................................ 2

*Bolling v. Sharpe*, 347 U.S. 497 (1954) ............................................................... 8

*City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985) .............. 8

*Central Hudson Gas v. Pub. Serv. Comm'n of N.Y.,* 447 U.S. 557(1980) .......... 21

*Clark v. Jeter*, 486 U.S. 456 (1988) ................................................................... 18

*Consolidated Edison Co. v. Public Service Comm'n of N.Y.,* 447 U.S. 530 (1980). ....................... 21

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) ......................................... 6

*Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261 (1990) ................. 6,7

*Dickerson v. New Banner, Inc.,* 460 U.S. 103 (1983). ....................................... 19

*District of Columbia v. Heller*, 128 S.Ct. 2783 (2008). ................................*passim*

*Ex Parte Wall*, 107 U.S. 265 (1883). ................................................................... 3

*Goldberg v. Kelly*, 397 U.S. 254 (1970). ............................................................. 4

*Gonzalez v. Raich*, 545 U.S. 1 (2005) ............................................................... 12

*Graham v. Richardson Sailer v. Leger*, 403 U.S. 365 (1971) ............................ 18

*Grannis v. Ordean*, 234 U.S. 385 (1914). ........................................................... 4

*Griswold v. Connecticut*, 381 U.S. 479 (1965). .............................................. 5,19

*Huddleston v. United States*, 415 U.S. 814 (1974). ......................................... 11

*Joint Anti-Fascist Refugee Comm. V. McGrath*, 341 U.S. 123 (1951). ............. 3,4

*Kramer v. Union Free School District*, 395 U. S. 621 (1969) ........................... 19

*Lawrence v. Texas*, 539 U.S. 558 (2003). ......................................................... 5,6

*Margan v. United States*, 304 U.S. 1 (1938). ...................................................... 4

*McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010) .................................. 17, 20

*Meyer v. Nebraska*, 262 U.S. 390 (1923). ........................................................... 5

*Mills v. Rogers*, 457 U.S. 291 (1982) .................................................................. 6

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) ................................................................ 8

*Opp Cotton Mills v. Administrator*, 312 U.S. 126 (1941). .................................... 3, 4

*Pierce v. Society of Sisters*, 268 U.S. 510 (1925) ................................................. 5

*Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992). .............. 6, 18

*Poe v. Ullman*, 367 U.S. 497 (1961) ..................................................................... 6

*Robertson v. Baldwin*, 165 U. S. 275 (1897) ....................................................... 17, 18

*Roe v. Wade*, 410 U.S. 113 (1973) ...................................................................... 18, 19

*Schneider v. State*, 308 U.S. 147 (1939). ............................................................ 18

*Shelton v. Tucker Carr v. Young*, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). ........... 18

*United States v. Oakland Cannabis Buyer's Cooperative*, 532 U.S. 483 (2001) ......... 12

*United States v. Virginia*, 518 U.S. 515 (1996) .................................................... 18

*Wong Yang Sung v. McGrath*, 339 U.S. 33 (1950) ............................................... 4

*Youngberg v. Romeo*, 457 U.S. 307 (1982) ......................................................... 6

**FEDERAL CIRCUIT COURT CASES**

*Association of Nat. Advertisers, Inc. v. Lungren*, 44 F.3d 726 (9th Cir. 1994) ...... 20, 21

*Compassion in Dying v. State of Washington*, 79 F.3d 790 (9th Cir. 1996). ........... 6, 15

*Coral Const. Co. v. King County*, 941 F.2d 910 (9th Cir. 1991) ........................... 20, 21

*Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037 (9th Cir. 2002) .......................... 8

*Jacobs v. Clark County School Dist.,* 526 F.3d 419 (9th Cir. 2008) ...................... 21

*United States v. Dugan.* 657 F.3d 998 (9th Cir 2011). ...................................... *passim*

*United States v. Oakland Cannabis Buyer's Cooperative*, 190 F.3d 1109 (9th Cir. 1999) ........... 12

*United States v. Purdy*, 264 F.3d 809 (9th Cir. 2001) ........................................ 11, 12

*United States v. Seay*, 620 F.3d 919 (8th Cir 2010) ........................................... 17, 20

*United States. v Yancey*, 621 F.3d 681 (7th Cir 2010). ...................................... 17, 20

**FEDERAL DISTRICT COURT CASES**

*United States v. Williams*, 216 F.Supp.2d 568 (E.D. Va. 2002) .............................. 12

**STATE CASES**

*Willis v. Winters*, 350 Or. 299, 253 P.3d 1058 (Or. 2011). ................................... 13

RAINEY  ●  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

**UNITED STATES CONSTITUTION**

U.S. Const. Amend. II ................................................................................*passim*

U.S. Const. Amend. V ................................................................................*passim*

U.S. Const. Amend. XIV ............................................................................*passim*

**STATUTES**

5 U.S.C § 702 ..................................................................................................... 25

18 U.S.C. § 922(g)(3). ...............................................................................*passim*

18 U.S.C. § 922(d)(3). ...............................................................................*passim*

21 U.S.C. § 802(1) ......................................................................................*passim*

21 U.S.C. § 802(6) ............................................................................................. 14

21 USC § 812. ................................................................................................... 15

28 U.S.C. § 2412 ............................................................................................... 25

**FEDERAL RULES AND REGULATIONS**

27 C.F.R. § 478.11. ..................................................................................... 10, 16

21 C.F.R. §§ 1308.01 – 1308.49................................................................... 15

Fed. R. Civ. Pro. 12(d)......................................................................................... 2

Fed. R. Civ. Pro. 12(b)(1). ................................................................................. 2

Fed. R. Civ. Pro. 12(b)(6) ................................................................................. 2

Fed. R. Civ. Pro. 56 ........................................................................................... 2

**LEGISLATIVE MATERIAL**

132 Cong. Rec. H1689-03 (April 9, 1986) ............................................. 10, 11

Firearms Owners' Protection Act, H.R. Rep. No. 495, 99th Cong., 2d Sess, 1986 ...................... 11

Firearms Owners' Protection Act, Pub. L. 99-308 § 102(6)(B) (H.R. 4332, 99th Congress)........ 11

S.Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968) ...................................... 11

U.S. Code Cong. & Admin. News 1968 p. 4410 ........................................... 11

**MISCELLANEOUS**

16 Legal Medical Marijuana States and DC – Laws, Fees, and Possession Limits
(http://medicalmarijuana.procon.org/view.resource.php?resourceID=000881 ......................... 7

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

18 States with Pending Legislation to Legalize Medical Marijuana (as of Mar. 8, 2012) (http://medicalmarijuana.procon.org/view.resource.php?resourceID=002481) ...................... 7

2010 United States Health Report, as compiled by the National Center for Health Statistics (http://www.cdc.gov/nchs/data/hus/hus10.pdf) ....................................................... 14

American Law Institute Model Penal Code, Commentary (1955).............................................. 6

FBI Violent Crime Report http://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2010/crime-in-the-u.s.-2010/violent-crime/violent-crime................................................. 20

"Medical" Marijuana – The Facts (www.justice.gov/dea/ongoing/marinol.html) ..................... 7

Memorandum of Deputy Attorney General David W. Ogden (http://blogs.usdog.gov/archives/192)................................................................................. 13

National Institute on Alcohol Abuse and Alcoholism No. 38 October 1997, available at http://pubs.niaaa.nih.gov/publications/aa38.htm ................................................................. 21

Order List: 565 U.S. (http://www.supremecourt.gov/orders/courtorders/010912zor.pdf) ..... 13

Types of Illicit Drug Use in Lifetime, Past Year, and Past Month - Table 1.1A, compiled in 2010 by the Substance Abuse and Mental Health Services Administration (http://www.samhsa.gov/data/NSDUH/2k10ResultsTables/Web/HTML/Sect1peTabs1to46.htm#Tab1.1A) ................................................................................................ 14, 15, 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

**INTRODUCTION**

Granting the Defendant's current motion would undermine the fundamental individual liberties guaranteed by the United States Constitution and merely serve to bolster the ignorant misperceptions and prejudices held against medical cannabis patients.

The Defendants admit to deliberately seeking to deprive all medical cannabis patients of their constitutional right to keep and bear arms. The Defendants admit that BATFE issued a letter to each and every federally licensed firearms dealer, specifically banning the sale of firearms to any person possessing a state issued medical marijuana registry card.  This letter was issued without providing any notice to or consultation with medical marijuana patients. The Defendants provided no hearing to adjudicate whether the Plaintiff, or any other medical cannabis patient, was, in fact, an "unlawful user" of a controlled substance.  The Defendants failed to provide any meaningful opportunity for the Plaintiff or any other medical cannabis patent to be heard on the matter.  Instead, the Government simply denied the Plaintiff her constitutional rights.

The Government has taken the untenable position that even within a State like Nevada, where a patient's right to grow and use medical cannabis is guaranteed by the State's Constitution, any law-abiding holder of a state-issued medical marijuana registry card is automatically prohibited from exercising her Second Amendment rights.

The Defendants violated the Plaintiffs right to procedural due process, depriving her of her constitutional rights without any notice, hearing or opportunity to comment. The Defendants violated the Plaintiff's right to equal protection, by treating her and others with certain medical ailments differently than similarly situated persons. The Defendant violated the Plaintiff's Second Amendment rights by wrongfully categorizing her as an "unlawful user" of a controlled substance and refusing her the right to purchase or possess a firearm. Meanwhile, the very law that the Defendants seek to promulgate is itself an unconstitutional abuse of individual rights.

The facts of this case are not in dispute; and the Plaintiff is entitled to judgment as a matter of law.   Therefore, the Plaintiff respectfully requests that this Court DENY the

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1 | Defendants' motion to dismiss, DENY the Defendant's motion for summary judgment, and

2 | properly GRANT summary judgment for the Plaintiff.

3 | **STATEMENT OF FACTS**

4 | There are no material facts in dispute in this matter. The Defendants' Motion does not

5 | dispute any of the factual allegations contained in Plaintiff's Complaint. Instead, the

6 | Defendants' Motion only argues the legal conclusions reached in Plaintiff's Complaint. A

7 | statement of undisputed facts is filed concurrently herewith.

8 | **LEGAL STANDARDS**

9 | The Defendants' Motion purports to be a Motion to Dismiss made pursuant to Federal

10 | Rules of Civil Procedure 12(b)(1)[1] and 12(b)(6) and, in the alternative, a Motion for Summary

11 | Judgment made pursuant to Federal Rule of Civil Procedure 56. However, Defendants' Motion

12 | does not contain a statement of the legal standards applicable to either Rule 12(b) motions to

13 | dismiss or Rule 56 motions for summary judgment.

14 | Rules 12(b)(1) and 12(b)(6) provide, respectively, that defenses of lack of subject matter

15 | jurisdiction and failure to state a claim upon which relief can be granted can be raised by

16 | motion before a responsive pleading is filed. Fed. R. Civ. Pro. 12(b). Generally, in considering a

17 | Rule 12(b)(6) motion to dismiss, the Court may only look to the face of the plaintiff's complaint

18 | and must accept all factual allegations as true and draw all reasonable inferences in favor of

19 | plaintiff. "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to

20 | and not excluded by the court, the motion must be treated as one for summary judgment

21 | under Rule 56." Fed. R. Civ. Pro. 12(d).

22 | Rule 56 provides that "[a] party may move for summary judgment, identifying each

23 | claim or defense . . . on which summary judgment is sought." Fed. R. Civ. Pro. 56(a). Rule 56

24 | further provides that "[t]he court shall grant summary judgment if the movant shows that there

25 | is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

26 | of law." *Id*. Material facts are only those facts "that might affect the outcome of the suit under

27 |

28 | [1] The only claim to which Rule 12(b)(1) applies is Plaintiff's conspiracy claim. As will be discussed subsequently, Plaintiff will agree to the dismissal of her conspiracy claim.

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1  the governing law." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247, 106 S.Ct. 2505 (1986).

2  Disputes as to non-material facts and disputes as to legal questions cannot preclude summary

3  judgment. *See id*.

4      Here, the Defendants' Motion should be considered as a motion for summary judgment

5  rather than a motion to dismiss because the Defendants rely on matters outside of the

6  Complaint throughout the Motion. These extrinsic matters cannot be separated from the

7  Motion so as to allow the Court to consider the Motion under Rule 12(b). Furthermore, the

8  Defendants Motion does not even attempt to argue that Plaintiff's Complaint is deficient on its

9  face; the Motion only argues that Defendants are entitled to judgment as a matter of law based

10  on previous court decisions. As such, the Defendants' Motion is, for all intents and purposes, a

11  motion for summary judgment and not Rule 12(b)(6).

12  <u>**ARGUMENT**</u>

13  **I.      DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO DUE PROCESS.**

14      The Fifth Amendment of the United States Constitution provides, in relevant part

15  that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law."

16  U.S. Const. Amend. V. Although the Defendants' Motion only addresses the Plaintiff's Equal

17  Protection claims, the Plaintiff's Complaint also sets forth both procedural and substantive due

18  process claims pursuant to the Fifth Amendment.

19      **A. Defendants Have Violated Plaintiff's Right to Procedural Due Process by**
20      **Depriving her of a Fundamental Constitutional Right Without Any Notice,**
        **Hearing or Opportunity to Comment.**

21      The United States Constitution requires that whenever a governmental body acts to

22  injure an individual, that act must be consonant with due process of law. The minimum

23  procedural requirements necessary to satisfy due process depend upon the circumstances and

24  the interests of the parties involved. "In all cases, that kind of procedure is due process of law

25  which is suitable and proper to the nature of the case, and sanctioned by the established

26  customs and usages of the courts." *Ex Parte Wall*, 107 U.S. 265, 289 (1883).[2]  With respect to

27  _____

28  [2] Justice Frankfurter's concurring opinion in *Joint Anti-Fascist Refugee Comm. V. McGrath*, 341 U.S. 123, 163
    (1951), further elaborated upon this understanding as follows:

RAINEY ● DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1  action taken by administrative agencies, the Supreme Court has held that notice must be given

2  and a hearing must be held before a final order becomes effective. *Opp Cotton Mills v.*

3  *Administrator*, 312 U.S. 126, 152, 153 (1941).

4      For example, the Supreme Court has held that "due process requires an adequate

5  hearing before termination of welfare benefits." *Goldberg v. Kelly*, 397 U.S. 254, 261 (1970).

6  "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v.*

7  *Ordean*, 234 U.S. 385, 394 (1914). When the Constitution requires a hearing, the hearing must

8  be "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552

9  (1965). Generally, these provisions require that the hearing be held before a tribunal which

10  meets currently prevailing standards of impartiality and a party must be given an opportunity

11  not only to present evidence, but also to know the claims of the opposing party and to meet

12  them. *Wong Yang Sung v. McGrath*, 339 U.S. 33, 50 (1950); *see also Goldberg*, 397 U.S. at 267-

13  268. Furthermore, those who are brought into contest with the government in a quasi-judicial

14  proceeding aimed at control of their activities are entitled to be fairly advised of what the

15  government proposes and to be heard upon the proposal before the final command is issued.

16  *Margan v. United States*, 304 U.S. 1, 18-19 (1938).

17      Here, the Defendants have deprived the Plaintiff of a fundamental right without any

18  notice or opportunity to be heard. The Defendants have adopted and are enforcing a policy,

19  through their Open Letter, whereby a distinct group of individuals are automatically precluded

20  from exercising their fundamental rights under the U.S. Constitution based solely upon an FFLs

21  reasonable belief that these persons are exercising their State granted rights. As will be

22  discussed in more detail below, the Supreme Court recently held that the Second Amendment

23  includes a fundamental individual right to possess a handgun in one's home for self-defense.

24  *See District of Columbia v. Heller*, 128 S.Ct. 2783 (2008). The Defendants have conclusively

25

26      "The precise nature of the interest that has been adversely affected, the manner in
       which this was done, the reasons for doing it, the available alternatives to the procedure
27      that was followed, the protection implicit in the office of the functionary whose conduct
       is challenged, the balance of hurt complained of and good accomplished - these are
28      some of the considerations that must enter into the judicial judgment."

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1  determined that the mere fact that an FFL is aware a "potential transferee is in possession of a

2  card authorizing the possession and use of marijuana under State law, then [the FFL has]

3  'reasonable cause to believe' that the person is an unlawful user of a controlled substance" and

4  **must** deny the transfer of firearms or ammunition to that person. *Open Letter*.

5       However, as will be discussed in more detail subsequently, medical marijuana users

6  do not fit the intended definition of "unlawful users." Here, the Plaintiff obtained a valid state

7  medical marijuana registry card in May of 2011, approximately four months before the

8  Defendants issued their Open Letter. Prior to the issuance of the Open Letter, Plaintiff was not

9  given any opportunity to comment on the policy set forth in the Open Letter. Additionally,

10  Defendants have not even provided a post-termination procedure whereby persons who hold

11  medical marijuana registry cards can argue that they are not "unlawful users of or addicted to"

12  a controlled substance. While the exact number of medical marijuana users is uncertain, it is

13  estimated that roughly 600,000 persons in the U.S. are using medical marijuana in the nine

14  states where registration is mandatory. By virtue of their issuance and enforcement of the

15  policy set forth in the Open Letter, the Defendants have willfully deprived a large class of U.S.

16  citizens, including the Plaintiff, of their fundamental rights in direct violation of the procedural

17  requirements of the Due Process Clause.

18       **B.  Defendants Have Violated Plaintiff's Right to Substantive Due Process Because**
          **the Government's Interest is Outweighed by the Plaintiff's Right to Treat her**
19          **Medical Condition in Accordance with her Doctor's Recommendation.**

20       The right to substantive due process concerns the right to "liberty" under the Fifth and

21  Fourteenth Amendments. Essentially, the question of substantive due process asks whether a

22  person is free to engage in certain conduct in the exercise of their liberty under the Due Process

23  Clause. *See Lawrence v. Texas*, 539 U.S. 558, 564 (2003). The broad substantive reach of liberty

24  under the Due Process Clause has been noted in a number of U.S. Supreme Court Cases. *Id.*; *see*

25  *also Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Meyer v. Nebraska*, 262 U.S. 390 (1923);

26  and *Griswold v. Connecticut*, 381 U.S. 479 (1965). "[T]he Due Process Clause has a substantive

27  dimension of fundamental significance in defining the rights of the person." *Lawrence*, 539 U.S.

28  at 565. "[T]he full scope of the liberty guaranteed by the Due Process Clause . . . is not a series

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

of isolated points. . . . It is a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints." *Albright v. Oliver*, 510 U.S. 266, 287 (1994) (concurring opinion), *quoting Poe v. Ullman*, 367 U.S. 497, 543 (1961) (internal quotations omitted).

The U.S. Supreme Court has found that:

> "[Matters] involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment. At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life. Beliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State."

*Lawrence*, 539 U.S. at 574, *quoting Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992). "History and tradition are the starting point but not in all cases the ending point of the substantive due process inquiry." *Id.* at 572, *quoting County of Sacramento v. Lewis*, 523 U.S. 833, 857 (1998) (Kennedy, J., concurring). For example, in 1955 the American Law Institute's Model Penal Code made it clear its position that criminal penalties should not be imposed on consensual sexual relations conducted in private. *Id*.  The ALI based its decision on the grounds that: "(1) [t]he prohibitions undermined respect for the law by penalizing conduct many people engaged in; (2) the statutes regulated private conduct not harmful to others; and (3) the laws were arbitrarily enforced and thus invited the danger of blackmail." *Id*. *quoting* ALI, Model Penal Code, Commentary 277-280 (Tent. Draft No. 4, 1955).

"In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance the liberty of the individual and the demands of organized society." *Youngberg v. Romeo*, 457 U.S. 307, 320 (1982) *see also Mills v. Rogers*, 457 U.S. 291, 299, (1982). "[T]he ultimate question is whether sufficient justification exists for the intrusion by the government into the realm of a person's 'liberty, dignity, and freedom.'" *Compassion in Dying v. State of Washington*, 79 F.3d 790, 799 (9th Cir. 1996), *quoting Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 287, 289, 110 S.Ct. 2841, 2856, 2857 (1990) (O'Connor, J., concurring). "If the balance favors the state, then the given statute--whether it regulates the exercise of a due process liberty interest or prohibits that exercise to some

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

degree--is constitutional. If the balance favors the individual, then the statute--whatever its justifications--violates the individual's due process liberty rights and must be declared unconstitutional, either on its face or as applied." *Id*.

Here, the Plaintiff has a substantive right to treat her medical condition in the manner recommended by her physician and which she and her physician agree is the beat course of treatment for her. The right to choose a course of medical treatment is one of the most intimate and personal choices a person can make. Furthermore, the ability to choose a course of medical treatment is central to the fundamental rights of personal dignity and autonomy. Although the Defendants will argue that cannabis has no accepted medical value and thus is not a treatment option available to Plaintiff, a majority of states have adopted or are in the process of adopting legislation which recognizes the medicinal values of cannabis and legalizes its use for the treatment of various health conditions. Currently, sixteen (16) states and the District of Columbia have legalized the use of medical cannabis.[3] As of February 13, 2012, an additional eighteen (18) states have pending legislation that would legalize the use of medicinal cannabis.[4] Despite the Defendants' refusal to recognize the medical benefits of cannabis, the growing trend indicates that physicians believe cannabis has medicinal value and the public believes medical cannabis is a viable course of treatment. Even the Drug Enforcement Agency has admitted that the active ingredient in marijuana, THC, is valuable for relieving nausea and vomiting and providing pain management.[5] Marinol, a pharmaceutical derived from cannabis, is available by prescription in the U.S. *Id*. The federal government even assisted in the research on Marinol. Marinol, which has been available since 1985, was originally classified as a Schedule II substance but was moved to Schedule III in 1999. Based upon the FDA and DEA's approval of the use of Marinol, the argument that cannabis has no medical use is without merit. Pursuant to the substantive liberty rights imparted by the Due Process Clause, the Defendants cannot deny the Plaintiff her right to choose a viable course of treatment recommended by her

---

[3] *See* 16 Legal Medical Marijuana States and DC – Laws, Fees, and Possession Limits, available at http://medicalmarijuana.procon.org/view.resource.php?resourceID=000881.
[4] *See* 18 States with Pending Legislation to Legalize Medical Marijuana (as of Mar. 8, 2012), available at http://medicalmarijuana.procon.org/view.resource.php?resourceID=002481.
[5] *See* "Medical" Marijuana – The Facts, available at www.justice.gov/dea/ongoing/marinol.html.

RAINEY ● DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-7-

physician.

Additionally, the same factors that militated against the criminalization private consensual sexual conduct of adults support the understanding that a person's fundamental rights should not be deprived based solely upon her use of a medical treatment prescribed by her physician. The policies adopted and implemented by the Defendants, as set forth in their Open Letter undermined respect for the law by penalizing conduct many people engage in. As noted above, it is estimated that roughly 600,000 were using medical marijuana as of January 2009. The policies also regulate private conduct not harmful to others. It does not appear that there is any scientific research indicating that persons using medical marijuana are any more likely that non-users to commit any crimes, let alone gun crimes. Indeed, Defendants have cited to no evidence indicating that holders of medical marijuana registry cards are likely to commit the types of crimes the Gun Control Act seeks to prevent or any other crimes for that matter. The Defendants policies are also arbitrarily enforced and thus invited the danger of blackmail, among other things. An organized society does not require that all holders of medical marijuana registry cards be prohibited from purchasing firearms and ammunition. The Defendants have failed to show that sufficient justification exists for the intrusion by the government into the realm of Plaintiff's liberty, dignity, and freedom to follow a course of medical treatment recommended by her physician. As such, the Defendants policies violate the Plaintiff's substantive liberty interests granted by the Due Process Clause of the Fifth Amendment.

## II.  DEFENDANTS HAVE VIOLATED PLAINTIFF'S RIGHT TO EQUAL PROTECTION BY TREATING HER DIFFERENTLY THAN SIMILARLY SITUATED INDIVIDUALS.

The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the law." This provision of the Fourteenth Amendment has been held by the United States Supreme Court to apply to the federal government by virtue of the Due Process Clause of the Fifth Amendment. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693 (1954). The equal protection component of the Due Process Clause "is essentially a direction that all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). The Equal Protection Clause "keeps governmental decision makers from treating differently persons who are in all relevant aspects

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *see also Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1047 (9th Cir. 2002) ("The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike.") It does not appear that any federal appellate court has yet determined whether users of drugs which are lawful pursuant to state law but unlawful pursuant to federal law are similarly situated to person who use drugs other than those prohibited by the federal law.

Here, Defendants have violated Plaintiff's equal protection rights by treating Plaintiff differently from persons to whom she is similarly situated. The Plaintiff is similarly situated to other law-abiding citizens who are attempting to follow a course of treatment prescribed by their doctors for a chronic medical condition. Defendants attempt to argue that the class of individuals holding state-issued medical marijuana registry cards is not similarly situated to other law abiding citizens because the government may infer that holders of medical marijuana registry cards are "unlawful users of or addicted to" illegal substances. However, persons who obtain a valid state registry card by obtaining a physician's recommendation and use medicinal marijuana solely as recommended by the physician and within the limitations of state law are fundamentally different that other unlawful drug users. Additionally, medical marijuana registry cardholders should be considered as similarly situated to users of the FDA-approved drug Marinol, which contains the same active ingredient as marijuana. It does not appear that the Defendants have issued any letters to FFLs indicating that an awareness that a person is taking Marinol is grounds for the denial of the purchase of a firearm or ammunition.

Furthermore, even if medical marijuana registry cardholders are not considered similarly situated to non-registry cardholders because of presumption that registry cardholders are violating federal law, it is undeniable that registry cardholders are similarly situated to persons using medical marijuana in states where registry is not required. Several states, such as California, have provided for the legal use of medicinal marijuana without the necessity of registering with the state or obtaining a state-issued registry identification card. The Defendants' policy set forth in the Open Letter thus discriminates against persons who live in a state that requires a registry identification card because any knowledge of the person's

-9-

1  possession of that card can be used as conclusive evidence to deny their attempt to purchase

2  firearms and/or ammunition. Meanwhile, persons using medical marijuana in a state that does

3  not issue registry identification cards will avoid the policies set forth in the Open Letter simply

4  because their state does not issue registry identification cards. As such, the policies adopted

5  and promulgated by the Defendants, as set forth in the Open Letter, violate the Plaintiff's right

6  to equal protection.

7  **III.     DEFENDANTS HAVE VIOLATED PLAINTIFF'S SECOND AMENDMENT RIGHTS.**

8  **A. Plaintiff is Not an "Unlawful User" of or "Addicted To" a Controlled Substance
   Because Congress Did Not Intend to Include Medical Cannabis Patients in those**
9  **Categories.**

10  Persons holding validly issued state registry cards do not fall within the meaning of

11  "unlawful user of or addicted to" a controlled substance as that phrase was understood by

12  Congress. The Controlled Substances Act, 21 U.S.C. § 802, defines the term "addict" as "any

13  individual who habitually uses any narcotic drug so as to endanger the public morals, health,

14  safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have lost the

15  power of self-control with reference to his addiction." 21 U.S.C. § 802(1). However, the

16  Controlled Substances Act does not define the term "unlawful user." *See* 21 U.S.C. § 802. The

17  ATF has adopted a regulation, codified at 27 C.F.R. § 478.11, which defines the term "unlawful

18  user" and which also attempts to expand the definition of "addict." However, the text and

19  context of the statute itself are insufficient to provide the necessary explanation for the term.

20  As such, it is appropriate to review the legislative history to discern the intent of the legislature.

21  Nothing in the legislative history of the Controlled Substances Act specifically addresses

22  whether medical cannabis patients were intended to be considered "unlawful users." However,

23  the prevention of crime theme that is prevalent in the legislative history of 18 U.S.C. § 922(g)

24  indicates that Congress did not intend for law-abiding medical cannabis patients to be included

25  in the definition of "unlawful user." Congress enacted the Gun Control Act in 1968 with the

26  explicit purpose of "provid[ing] support to Federal, State, and local law enforcement officials in

27  their fight against crime and violence." The Gun Control Act, Pub.L. 90-618, Sec. 101 (1968).

28  Specifically, the Act and its subsequent amendments were aimed at combating gun crimes and

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

narcotics trafficking. To achieve this end, Congress intended to prevent drug addicts and other criminals from having access to firearms. *See* e.g. 132 Cong. Rec. H1689-03 (April 9, 1986) ("What the bill will do is make it a little harder for drug addicts, muggers, deranged individuals, and other criminal elements to procure handguns."). Congress has also made it very clear that the purpose of this legislation is not to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms. The Gun Control Act, Pub.L. 90-618, Sec. 101 (1968). As such, an interpretation of 18 U.S.C. § 922(d) and (g) that extends the firearm prohibition to lawful medical cannabis use violates Congressional intent.

"The principal purpose of the federal gun control legislation . . . was to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'" *Huddleston v. United States*, 415 U.S. 814, 824 (1974), quoting S.Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968). U.S. Code Cong. & Admin. News 1968, p. 4410. Prior to amendment in 1986, subsection (g)(3) against possessing firearms or ammunition applied to a person "who is an unlawful user of or addicted to marijuana or any depressant or stimulant drug (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 473(a) of the Internal Revenue Code of 1954." In 1986, the 99th Congress emended the language of subsection (g)(3) as part of the Firearms Owners' Protection Act, Pub.L. 99-308, § 102(6)(B) (H.R. 4332, 99th Congress), removing the provision's direct reference to "marijuana" and made subsection (g)(3) applicable to a person "who is an unlawful user of or addicted to a controlled substance as defined in the Controlled Substances Act." The House Judiciary Committee Report details the purpose of this change. Firearms Owners' Protection Act, H.R. Rep. No. 495, 99th Cong., 2nd Sess, 1986 (Mar. 14, 1986). Congress "modernized" 18 U.S.C. § 922(g) by closing loopholes for users of new drugs that had become prevalent in the 1980s.

Federal courts have not yet ruled on whether a medical marijuana patient may possess a handgun. However, the Ninth Circuit has held that in order to sustain a conviction under 18 U.S.C. § 922(g)(3), the government must prove "that the defendant took drugs with regularity,

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

over an extended period of time, and contemporaneously with his purchase or possession of a firearm." *United States v. Purdy*, 264 F.3d 809, 812-813 (9th Cir. 2001). In *Purdy*, the defendant had used cocaine, non-medicinal marijuana, and methamphetamines over the course of four years and contemporaneously with his possession of a firearm. *Id*. at 810-11.  In *United States v. Williams*, 216 F.Supp.2d 568 (E.D. Va. 2002), the defendant was found to have possessed a firearm after smoking half of a marijuana cigarette, which was also in his possession. The court concluded that Williams was not guilty of violating 18 U.S.C. 922(g) even though he had obviously used a controlled substance at the same time that he had possessed a firearm because the government must prove that a defendant has a pattern of use, continuous use, or prolonged use of a controlled substance while in possession of a firearm. *Id*. at 576. The  court concluded that the government must prove that, while in possession of a firearm, the defendant used narcotics so frequently that his use was an addiction and in such quantities as to lose the power of self-control and pose a danger to the public. *Id*. at 573.

In *Gonzalez v. Raich*, the United States Supreme Court held that application of the Controlled Substances Act's provisions criminalizing the manufacture, distribution, or possession of marijuana to intrastate growers and users of marijuana for medical purposes does not violate the Commerce Clause. 545 U.S. 1, 125 S.Ct. 2195 (2005). As such, *Raich* merely ruled on the narrow issue of whether the federal government had the power to regulate intrastate activity under the Commerce Clause. In *United States v. Oakland Cannabis Buyer's Cooperative*, the Ninth Circuit reversed an injunction of distribution of medical cannabis under the Controlled Substances Act holding that the distributors had a medical necessity defense. 190 F.3d 1109 (1999). Although the Supreme Court ultimately reversed the Ninth Circuit, the concurring opinion points out that "[m]ost notably, whether the defense might be available to a seriously ill patient for whom there is no alternative means of avoiding starvation or extraordinary suffering is a difficult issue that is not presented here." *United States v. Oakland Cannabis Buyer's Cooperative*, 532 U.S. 483, 501 (2001).

Furthermore, the Federal Government has conceded that persons complying with state medical marijuana laws are not "unlawful users" and Defendants are estopped from asserting

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-12-

1   otherwise. On October 19, 2009, United States Deputy Attorney General David W. Ogden issued

2   a memorandum to all United States attorneys in those Federal Districts where the States have

3   enacted medical marijuana laws entitled "Investigations and Prosecutions in States Authorizing

4   the Medical Use of Marijuana."[6] The Ogden memorandum, which was specifically issued to

5   Defendant B. Todd Jones, states in relevant part that the attorneys "should not focus federal

6   resources in [their] States on individuals whose actions are in clear and unambiguous

7   compliance with existing state laws providing for the medical use of marijuana." Subsequently,

8   then Attorney General Ashcroft relied upon the position set forth in the Ogden memorandum

9   to reach a stipulation and dismissal in a case filed by the County of Santa Cruz, California.

10  Having asserted that the federal government would no longer interfere with medical cannabis

11  patients who are in compliance with state medical marijuana laws in that case, the federal

12  government would be estopped from claiming otherwise here.

13       Additionally, the United States Supreme Court recently denied certiorari to the Oregon

14  case of *Willis v. Winters*, 350 Or. 299, 253 P.3d 1058 (Or. 2011). *See* Order List: 565 U.S.[7]. In

15  *Willis*, the Oregon Supreme Court found that Oregon sheriffs could not deny concealed

16  handgun permits to medical marijuana users despite 18 U.S.C. § 922. The Supreme Court's

17  decision not to review this decision indicates that the Oregon court's decision and reasoning

18  should stand.

19       The overwhelming majority of the evidence indicates that Plaintiff, as a holder of a

20  medical marijuana registry card issued by her state, is not the type of person intended to be

21  precluded from obtaining a firearm under 18 U.S.C. § 922(g)(3). Plaintiff is not a dangerous

22  criminal, but rather a woman who has suffered from chronic and debilitating pain for the last

23  thirty (30) years. Plaintiff cannot automatically be presumed to be an "unlawful user of or

24  addicted to" a controlled substance. The mere fact that the Plaintiff possesses a state issued

25  marijuana registry card issued by her state does not meet the government's burden of proof for

26  a criminal conviction yet alone a deprivation of her fundamental rights. Even if the Defendants

27

28  _____
    [6] Available at http://blogs.usdoj.gov/blog/archives/192.
    [7] Available at (http://www.supremecourt.gov/orders/courtorders/010912zor.pdf)

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1   met the required level of prove and showed that Plaintiff took illegal drugs with regularity, over

2   an extended period of time, and contemporaneously with her purchase or possession of a

3   firearm, the Defendants should be estopped from asserting their position that her registry card

4   deems her an "unlawful user of or addicted to marijuana" based upon the federal government's

5   affirmation of the Ogden memorandum in a previous case. As such, Plaintiff should not be

6   considered an unlawful user of or addicted to a controlled substance.

7       **B.   18 U.S.C. § 922(g)(3) is Unconstitutional.**

8       18 USC § 922(g)(3) is an exceptionally over-broad statute that, if actually enforced to its

9   full effect, would preclude roughly half of adult-aged US citizens (more than one hundred fifty

10  million people) from possessing, purchasing, transporting or even receiving any firearm or

11  ammunition.[8]  In effect, the law, if fully enforced, would deprive more than half of our adult-

12  aged citizens of their fundamental constitutional right to keep and bear arms.   The

13  extraordinary breadth of this law renders it unenforceable and wholly unconstitutional.

14      18 USC § 922(g)(3) reads as follows:

15          (g) It shall be unlawful for any person—
            [...]
16              (3) who is an unlawful user of or addicted to any
                controlled substance (as defined in section 102 of the
17              Controlled Substances Act (21 USC § 802));
            [...]
18          to ship or transport in interstate or foreign commerce, or possess
            in or affecting commerce, any firearm or ammunition; or to
19          receive any firearm or ammunition which has been shipped or
            transported in interstate or foreign commerce.

20

21      Meanwhile, 21 USC § 802(6), the law defining "controlled substances," reads as follows:

22          The term "controlled substance" means a drug or other
            substance, or immediate precursor, included in schedule I, II, III,
23          IV, or V of part B of this subchapter. The term does not include
            distilled spirits, wine, malt beverages, or tobacco, as those terms

24

25  _____

[8] *See* TABLE 1.1A – TYPES OF ILLICIT DRUG USE IN LIFETIME, PAST YEAR, AND PAST MONTH, compiled in 2010 by the Substance
    Abuse and Mental Health Services Administration, available at:

26  http://www.samhsa.gov/data/NSDUH/2k10ResultsTables/Web/HTML/Sect1peTabs1to46.htm#Tab1.1A

    *See* (states that 38,806,000 Americans had taken illicit drugs within the last twelve months and 119,508,000
27  Americans had taken illicit drugs within the last twelve months); *see also* 2010 UNITED STATES HEALTH REPORT, as
    compiled by the National Center for Health Statistics, available at http://www.cdc.gov/nchs/data/hus/hus10.pdf

28  (reporting that nearly half of all persons within the United States have taken prescription drugs within the last 30
    days).

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1   are defined or used in subtitle E of the Internal Revenue Code of 1986.

2   Accordingly, under 18 USC § 922(g)(3), any person that is an "unlawful user of or addicted to"

3   any drug within Schedules I, II, III, IV or V is prohibited from exercising his/her Second

4   Amendment rights. Those schedules encompass not only illegal narcotics, but also ANY

5   prescription drug and even some over the counter medicines, such as Robitussin. *See* 21 USC §

6   812; *see also* 21 CFR §§ 1308.01 – 1308.49.

7   The phrase "unlawful user of or addicted to" is disturbingly broad and fails to state with

8   reasonable particularity the specific group of persons targeted.  If carried to its extreme, the

9   phrase could include roughly half of the US population.  Even if narrowly read, the category of

10  person includes, at the very least, thirty-eight million people,[9] more than twelve percent of the

11  total United States population.

12  Moreover, the statutory definition of "addict," already broadly drawn under 21 USC §

13  802(1), is stretched to its absolute limits through ATF regulation.  Under 21 USC § 802(1), the

14  term "addict" is defined as any individual who either (1) habitually uses any narcotic drug so as

15  to endanger the public morals, health, safety, or welfare, or (2) who is so far addicted to the use

16  of narcotic drugs as to have lost the power of self-control with reference to his addiction.

17  Notice that the second category of "addict" is actually quite broad and could even include

18  persons addicted to lawfully prescribed medicines.  For instance, a person taking Ritalin to treat

19  his/her Attention Deficit Disorder would likely fall within this category.  Ritalin is a physically

20  addictive substance that may be prescribed for daily ongoing use.[10]  If taken for a prolonged

21  period of time, the physical addiction to Ritalin could be such that the person taking the drug is

22  no longer able to control the addiction, thereby falling within the second category of addict,

23  defined under 21 USC § 802(1).  As evidenced by the Ritalin example above, this definition of

24  "addict" can be very broadly interpreted to include many tens of millions of Americans who

25  lawfully take prescribed pharmaceuticals.

26  _____

[9] *Id.*

27  [10] Methylphenidate, the systematic name for Ritalin, is a Schedule II controlled substance, due to its high likelihood for addictive potential. *See* 21 CFR §§ 1308; Data reported by the DEA, and collected by IMS Health (a national

28  prescription auditing firm) shows that as of 2000, doctors in the United States were writing approximately 11 million prescriptions for Ritalin annually.

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-15-

Surprisingly, the ATF's regulations employ this much broader definition of addiction from § 802(1), then go even further to deliberately push the interpretation of the definition as far as it can go.   Under 27 C.F.R. § 478.11, the term "[u]nlawful user of or addicted to any controlled substance" is defined as follows:

> A person who uses a controlled substance and has lost the power of self-control with reference to the use of the controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct. A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm. An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time […].

In the following pages, the Plaintiff will provide the analysis necessary to demonstrate that the expansive scope of 18 U.S.C. § 922(g)(3) renders it unenforceable and unconstitutional. First, the Plaintiff will highlight the deeply flawed aspects of *United States v. Dugan*, the case principally relied on by the Defendants.  Second, the Plaintiff will show how existing Supreme Court case law requires that § 922(g)(3) be analyzed under a strict scrutiny analysis.  Then, in applying that strict scrutiny analysis, the Plaintiff will demonstrate how the subject law falls far short of being constitutional.   Finally, the Plaintiff will demonstrate how, even if this Court were to apply the lesser intermediate scrutiny, § 922(g)(3) still fails to pass constitutional muster.

**1.  The Ninth Circuit's Opinion in *Dugan* is Wrong and Must be Overturned.**

In seeking to validate the constitutionality of § 922(g)(3), the Defendants rely heavily, almost exclusively, upon the Ninth Circuit case *United States v. Dugan*.  657 F.3d 998 (9th Cir 2011). However, *Dugan* is a deeply flawed opinion that must be overturned.  Consisting of just four short paragraphs, *Dugan* makes the sweeping assertion that § 922(g)(3) is constitutional, without even bothering to examine the law under a strict scrutiny, intermediate scrutiny or even rational basis analysis. Indeed, *Dugan* provides no substantive analysis of the law's

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1  constitutionality and appears to base its entire decision upon two similarly brief and similarly

2  flawed opinions from sister circuit courts.[11]

3      Meanwhile, the facts of *Dugan* are so prejudicial that they fail to provide a proper

4  framework for analyzing the constitutionality of § 922(g)(3).  In *Dugan,* the party challenging

5  the law's constitutionality, Kevin Dugan, was arrested during a domestic violence complaint,

6  when officers discovered an illegal marijuana "operation" in Mr. Dugan's home.  Mr. Dugan was

7  the very sort of person that  § 922(g)(3) was designed for—a dangerous criminal.  Based on the

8  facts represented in the *Dugan* opinion, Kevin Dugan was possibly a wife beating, drug dealing,

9  drug using, arms dealer.  As the old saying goes: "Bad facts make bad law."

10      Indeed, § 922(g)(3) doesn't just affect the rights of the Kevin Dugans of this world; this

11  law threatens the fundamental constitutional rights of nearly half of the U.S. population.[12]

12  Even though § 922(g)(3) is intended to keep guns out of the hands of a small subset of the

13  population, the law radically over-reaches such that it poses a substantial threat to any person

14  who is a chronic user of any drug, from marijuana to Robitussin, a group of people that

15  constitute anywhere from twelve percent (12%) to fifty percent (50%) of the total U.S.

16  population. For the foregoing reasons, the *Dugan* Opinion is simply wrong and MUST be

17  overturned.[13]

18      **2.    The Constitutionality of 18 U.S.C. § 922(g)(3) Must be Examined Under a
            Strict Scrutiny Standard Because it Seeks to Deprive Individuals of a
19          Fundamental Constitutional Right.**

20      In *DC v. Heller*, the Supreme Court finally made clear that the Second Amendment is a

21  "fundamental" individual right. *District of Columbia v. Heller,* 554 US 570, 128 S. Ct. 2783, 171 L.

22  Ed. 2d 637 (2008).[14]  Recently considering the applicability of the Second Amendment to the

23  States, the Supreme Court reiterated this notion in *McDonald v. City of Chicago*, where it stated

---

24  [11] *Dugan* cites to only two cases in support of its proposition that 922(g)(3) is constitutional, *U.S v. Seay*, 620 F.3d

25  919 (8th Cir 2010), and *U.S. v Yancey*, 621 F.3d 681 (7th Cir 2010).
   [12] *Supra* note 8.

26  [13] The Plaintiff acknowledges and understands that, in accordance with the principle of *stare decisis*, this Court is
   somewhat limited in its ability to overturn *Dugan*.  Nevertheless, in the event of any appeal of this matter, the

27  Plaintiff will be seeking to overturn the *Dugan* decision.
   [14] Specifically, the Court stated that "By the time of the founding [of the United States], the right to have arms had

28  become fundamental for English subjects" then further states that the Second Amendment was "a codified right
   'inherited from our English ancestors,'" 128 S. Ct. 2783  (*quoting  Robertson v. Baldwin*, 165 U. S. 275, 281 (1897)).

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1  "[i]t is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to

2  keep and bear arms among those <u>fundamental</u> rights necessary to our system of ordered

3  liberty." 130 S.Ct. 3020, 3042 (2010) (*emphasis added*).

4      Although the *Heller* court failed to state the specific standard of analysis, prior Court

5  precedent makes clear that where the government seeks to deprive individuals of a

6  fundamental right, as is the case with § 922 (g)(3), the constitutionality of the law must be

7  examined under a strict scrutiny analysis, ensuring that the law is narrowly tailored to

8  effectuate a compelling government interest and that no less restrictive means exists. *See e.g.*,

9  *Graham v. Richardson Sailer v. Leger*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Roe v.*

10 *Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Planned Parenthood of Southeastern*

11 *Pennsylvania v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); *Clark v. Jeter*, 486

12 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988); *United States v. Virginia*, 518 U.S. 515, 116

13 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (*Scalia dissenting* notes that "strict scrutiny will be applied to

14 the deprivation of whatever sort of right we consider 'fundamental.'"). "Even though the

15 governmental purpose [may] be legitimate and substantial, that purpose cannot be pursued by

16 means that broadly stifle fundamental personal liberties when the end can be more narrowly

17 achieved." *Shelton v. Tucker Carr v. Young*, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

18 "Where legislative abridgment of 'fundamental personal rights and liberties' is asserted, 'the

19 courts should be astute to examine the effect of the challenged legislation." *Id.* (*quoting*

20 *Schneider v. State*, 308 U.S. 147, 161, 60 S.Ct. 146, 151 (1939).  "Mere legislative preferences or

21 beliefs respecting matters of public convenience may well support regulation directed at other

22 personal activities, but be insufficient to justify such as diminishes the exercise of rights so vital

23 to the maintenance of democratic institutions.'" *Schneider*, 308 U.S. at 161.

24      Here, 18 USC § 922(g)(3) seeks to deprive individuals of their Second Amendment right

25 to keep and bear arms. This federal criminal statute renders it a crime for any person that is an

26 "unlawful user of or addicted to" a "controlled substance" to possess a firearm.  It is a direct

27 attack on a fundamental constitutional right.  As such, the law's constitutionality must be

28 examined under a strict scrutiny standard.

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

**3. 18 U.S.C. § 922(g)(3) is Unconstitutional, Under a Strict Scrutiny Standard, Because the Law is Not Narrowly Tailored to Satisfy a Compelling Government Interest and the Government has Far Less Restrictive Means of Achieving its Goals.**

18 USC § 922(g)(3) plainly fails to survive a strict scrutiny analysis.  To survive a strict scrutiny analysis, the law must:

> (1)  further a compelling government interest;
>
> (2)  be narrowly tailored to achieve that compelling government interest; and
>
> (3)  be the least restrictive means for achieving that compelling government interest.

*See e.g. Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Kramer v. Union Free School District*, 395 U. S. 621, 395 U. S. 627 (1969); *Griswold v. Connecticut*, 381 U.S. at 381 U. S. 485 (1965).

Section 922(d)(3) fails on prongs two and three of the above-cited test: the law is not narrowly tailored to achieve the intended government interest, nor is it the least restrictive means of achieving the intended government interest.

As noted by the Defendants, in their most recent Motion, § 922(d)(3) was drafted with the intent of keeping firearms "out of the hands of presumptively risky people." DEF MOTION TO DISMISS, p. 3, line 24 (*quoting Dickerson v. New Banner, Inc.,* 460 U.S. 103, 112, n. 6 (1983).  At the heart of § 922(g)(3) is a desire to keep firearms out of the hands of dangerous individuals – individuals that might use guns in a dangerous manner that could harm others.  However, in its attempt to deter firearm possession amongst dangerous persons, § 922(g)(3) takes a scorched earth approach, seeking to deprive Second Amendment rights to a phenomenally large contingent of the American population.

18 USC § 922(g)(3) is just too impossibly broad to survive strict scrutiny (or intermediate scrutiny for that matter).  The law aims to deprive tens of millions of people of their constitutional right to keep and bear arms, just to target an infinitesimal subset of potentially dangerous individuals.  Even if § 922(g)(3) was solely concerned with illicit substance abuse (which it is not) and even if we were to assume that every single person who committed a violent crime within the last year was an illicit substance abuser (which is a quantum leap of an

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-19-

1  assumption), the violent persons targeted by § 922(g)(3) would <u>still</u> only account for 3.2% of the

2  total people affected by § 922(g)(3).[15]   This is like leveling the entire rainforest just to take

3  down a single tree.

4        This law seeks to deprive an extraordinary number of people of their fundamental

5  constitutional rights, without the remotest attempt at narrowly tailoring the scope of its

6  impact.  As evidenced by the statistical analysis provided above and further supported by the

7  accompanying footnote, a basic examination of drug use and violent crime in this country

8  shows that this law attacks the constitutional rights of more than thirty times the number of

9  people that it is intended to affect. This law is flawed at its very core and must be declared

10  unconstitutional.

11        **4.  Even Under an Intermediate Scrutiny Analysis, 18 U.S.C. § 922(g)(3) is**
             **Unconstitutional Because the Expansive Scope of the Law, Covering**
12           **More than Half of the U.S. Population, is Not Substantially Related to**
             **Any Important Government Interest.**
13

14        Even though the United States Supreme Court has made it clear in its opinions from

15  *Heller* and *McDonald* that the Second Amendment is a "fundamental" individual right, some

16  Circuit Courts have erroneously sought to apply an intermediate scrutiny standard in their

17  examinations of the constitutionality of § 922(g)(3). *See U.S v. Seay*, 620 F.3d 919 (8th Cir 2010);

18  *U.S. v Yancey*, 621 F.3d 681 (7th Cir 2010).   While the fundamental nature of Second

19  Amendment Rights calls for and requires a strict scrutiny analysis, even when properly analyzed

20  under intermediate scrutiny, the law fails to pass constitutional muster.

21        To overcome intermediate scrutiny, the asserted governmental interest must be

22  "substantial," rather than "compelling," and the regulation adopted must "be a direct,

23  substantial relationship between the objective and the means chosen to accomplish the

24

25  [15] This statistic is based on a combination of two statistical sources.  First, and as noted earlier, the Substance
      Abuse and Mental Health Services Administration calculates that 38,806,000 Americans had taken illicit drugs
26  within the last twelve months. *Supra* at note 20. Second, statistics compiled by the Federal Bureau of Investigation
      estimate that in that same year there were approximately 1,240,000 instances of violent crime. *See* CRIME IN THE
27  UNITED STATES, available at http://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2010/crime-in-the-u.s.-
      2010/violent-crime/violent-crime.   Taken together, if we assume that each instance of violent crime was
28  committed by a separate and distinct individual, and that each and every violent assailant was an illicit drug user,
      then only 3.2% of illicit drug users account for all violent crimes committed in the United States.

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1  objective." *Coral Const. Co. v. King County*, 941 F.2d 910 (9th Cir. 1991); *See also Association of*

2  *Nat. Advertisers, Inc. v. Lungren*, 44 F.3d 726, 729 (9th Cir. 1994) (*citing Central Hudson Gas v.*

3  *Pub. Serv. Comm'n of N.Y.,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980);

4  *Consolidated Edison Co. v. Public Service Comm'n of N.Y.,* 447 U.S. 530, 540, 100 S.Ct. 2326,

5  2334-35, 65 L.Ed.2d 319 (1980).   As noted by the Ninth Circuit, "[i]ntermediate scrutiny's

6  precise contours vary slightly depending upon which constitutional right is at issue." *Jacobs v.*

7  *Clark County School Dist.,* 526 F.3d 419, fn 23 (9th Cir. 2008).   Neither the Ninth Circuit, nor the

8  Supreme Court has set down a system of intermediate scrutiny as applied to Second

9  Amendment issues.

10       Here, the Plaintiff does not argue or even question whether § 922(g)(3) is intended to

11  further a "substantial" government interest.  As previously noted, the underlying purpose of §

12  922(g)(3) is to keep firearms out of the hands of potentially dangerous people.  This underlying

13  goal is perfectly valid and addresses a genuine policy concern. However, due to the

14  extraordinary breadth and scope of § 922(g)(3), the law fails to provide a direct, substantial

15  relationship between the law's objective and the means chosen to accomplish that objective.

16       As noted earlier, § 922(g)(3) takes a scorched earth approach, seeking to deprive huge

17  swaths of the American populace of their Second Amendment rights in an over zealous attempt

18  to curtail gun ownership amongst a much smaller subset of individuals.  The overwhelming

19  impact of the law falls on the shoulders of non-violent, harmless individuals, depriving those

20  individuals of a fundamental constitutional right to keep and bear arms.  The law does not

21  merely apply to thieving, violent scoundrels.  As written, § 922(g)(3) prohibits the sick, the

22  elderly[16], and millions others.

23       Meanwhile, the law allows a specific exception for alcohol abuse.  Curiously, alcoholism,

24  a condition that is widely known to increase aggression and violent tendencies[17] is exempted

25  from prosecution under § 922(g)(3).  If the law were truly constructed for the purpose of

26

27  [16] *See supra* note 8 (90.1% of persons over the age of 65 report having taken prescription medications within the last thirty days).

28  [17] *See* NATIONAL INSTITUTE ON ALCOHOL ABUSE AND ALCOHOLISM NO. 38 OCTOBER 1997, available at http://pubs.niaaa.nih.gov/publications/aa38.htm

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

curtailing the ownership of firearms amongst potentially violent people, then why would it provide a specific exclusion for alcoholics?  In a 1997 report from the National Institute of Health, it was noted that, as a direct effect of the consumption of alcohol, "[a]lcohol may encourage aggression or violence by disrupting normal brain function."[18]   Nevertheless, § 922(g)(3), a law allegedly designed to keep firearms out of the hands of potentially dangerous people makes no attempt to keep guns from alcoholics.

Meanwhile, there is no viable evidence to suggest that marijuana use is correlated with violent crime (or any other crime beyond illegal drug use). While the Government makes a feeble attempt to tie drug use to criminal behavior, the statistics that the Government points to fail to take into account the large number of non-criminal drug users.  The statistics cited by the Government merely analyze the number of prison inmates who admit to having been on narcotic substances at the time of arrest.  However, those individuals account for a miniscule fraction of the total number of drug users in the United States.

At the end of 2010, state and federal prison populations totaled 1,518,104. Correctional Population in the United States, 2011. Bureau of Justice Statistics. This figure equals approximately 0.5% of the U.S. population. *Id.*; 2010 Census. Federal prisons housed 206,968 prisoners while state prisons housed 1,311,136. The 2004 DOJ study relied upon by Defendants indicates that 32% of state prisoners and 26% of federal prisoners committed their current offense while under the influence of drugs.[19] However, only 15% of state prisoners and 14% of federal prisoners used marijuana at the time of their offense.[20] Thus, approximately 196,670 state inmates and 28,975 federal inmates committed their crimes while using marijuana.  This equates to approximately 0.07% of the U.S. population having committed a crime while under the influence of marijuana. When this number is compared with the total number of Americans who report using marijuana, it is clear that marijuana use has no causal link to crime. Approximately 106,232,000 Americans (or 34.4% of the total U.S. population) report having

---

[18] *Id.*
[19] *See* http://bjs.ojp.usdoj.gov/content/dcf/duc.cfm.
[20] *Id.*

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

using marijuana in their lifetime.[21] Approximately 17,373,000 Americans (or 5.6% of the total U.S. population) report having used marijuana in the past month. Thus, the number of incarcerated persons who were using marijuana at the time of their crime equals only 0.2% of all persons who have used marijuana and 1.2% of all persons who are habitual users of marijuana.

Additionally, the 2004 DOJ study reports that violent offenders were less likely than other offenders to have used drugs in the month prior to their offense.[22] The report states "Violent offenders in State prison (50%) were less likely than drug (72%) and property (64%) offenders to have used drugs in the month prior to their offense." *Id* at p. 1.

The Defendants also rely on a 2010 report by the Office of National Drug Control Policy. However, this report is not a good indicator of any supposed link between marijuana and crime because it only reports incidents of marijuana use in males arrested in 10 cities. Additionally, the ONDCP is not an independent research organization but rather a cabinet level component of the Executive Office with the stated objective of eradicating drug use. As such, any studies conducted by the ONDCP are inherently biased.

There is no viable link between the use of cannabis and violent behavior; meanwhile, there is clear and well-established evidence that alcohol is directly linked with violent behavior. Nevertheless, 18 USC § 922(g)(3) arbitrarily precludes users of cannabis (or any other controlled substance for that matter) from exercising their fundamental constitutional rights. Section 922(g)(3) does not provide a direct, substantial relationship between the law's objective and the means chosen to accomplish the objective.   As such, the law must be declared unconstitutional.

/ / /

/ / /

/ / /

/ / /

---

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

[21] *See* http://www.samhsa.gov/data/NSDUH/2k10ResultsTables/Web/HTML/Sect1peTabs1to46.htm#Tab1.1A.
[22] *See* http://bjs.ojp.usdoj.gov/content/pub/pdf/dudsfp04.pdf.

**C.  18 U.S.C. § 922(d)(3) is Similarly Unconstitutional Under Both a Strict Scrutiny or Intermediate Scrutiny Analysis.**

18 USC § 922(d)(3), drafted as a counterpart to 18 USC § 922(g)(3), is similarly unconstitutional under both a strict and intermediate scrutiny analysis, since § 922(d)(3) is neither narrowly tailed to effect a compelling government interest, nor directly related to a substantial government interest.

18 USC § 922(d)(3) reads as follows:

> (d) It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person—
> […]
> (3) is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))

Much of the analysis devoted to § 922(g)(3) can be equally applied to § 922(d)(3), since the provisions virtually mirror each other.  However, there is another distinct consideration with § 922(d)(3) – the law places an exceptional burden and liability upon firearms sellers. Unlike a ban on the sale of firearms to felons, this ban is generally difficult, if not impossible to police.   A simple background check will typically reveal whether a person is a convicted felon. However, the standard imposed by § 922(d)(3), if effectively policed, would require gun sellers to conduct an extensive investigation of the private behaviors and habits of their customers (an investigation that might itself violate the privacy protections of the Constitution).

Meanwhile, the law raises a multitude of nearly unanswerable questions: To what extent is the seller required to investigate the drug habits of the buyer? If the seller knows that the buyer once took an illicit substance, is that a complete bar to any sale of a firearm?  What if the instance of substance abuse was a year ago?  What if it was six months ago?  How long ago must the drug use be in order to allow the sale of a firearm?  What if the buyer only smoked marijuana once at a party?  What if the party was last week?  What if the buyer is a recovered drug addict, who has relapsed numerous times?  What if the last relapse was a year ago?  What if the last relapse was ten years ago?  Where do we draw the line?

This law is untenable, unenforceable, unconstitutional and utterly unrealistic.

/ / /

RAINEY  •  DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

**IV.     PLAINTIFF'S PRIMARY PURPOSE IN THIS ACTION IS TO PROCURE DECLARATORY AND INJUNCTIVE RELIEF RATHER THAN MONETARY DAMAGES.**

As noted above, Plaintiff has voluntarily dismissed her claims against the Defendants in their individual capacities. Plaintiff does not dispute that 5 U.S.C § 702 does not provide for monetary damages against the United States, the ATF or the individual Defendants in their official capacities. The primary purpose of Plaintiff's Complaint is, and has always been, to obtain declaratory and injunctive relief against the Defendants. To the extent that the Prayer for Relief contained in Plaintiff's Complaint seeks monetary damages, Plaintiff agrees that 5 U.S.C § 702 does not provide for such damages. Further, based upon the Plaintiff's prior dismissal of the Defendants in their individual capacities, the Plaintiff does not object to the dismissal of her conspiracy claim. Notwithstanding the foregoing, Plaintiff does not waive her right to pursue various fees and costs associated with pursuing this case as provided for in 28 U.S.C. § 2412 and similar statutes.

**CONCLUSION**

As set forth above, there are no disputed material facts in this matter. Based upon the authorities set forth herein, Plaintiff is entitled to summary judgment on her claims for violations of the Second and Fifth Amendment against the Defendants. Plaintiff respectfully requests that Defendants' Motion be DENIED as to the Plaintiff's Second and Fifth Amendment claims and that summary judgment be GRANTED in Plaintiff's favor as to these claims.

Dated this 9th day of March 2012.

Respectfully Submitted by:

RAINEY DEVINE, ATTORNEYS AT LAW

By:      /s/ Chaz Rainey
         Charles C. Rainey, Esq.
         Nevada Bar No. 10723
         2445 W. Horizon Ridge Pkwy, Ste. 110
         Henderson, Nevada 89052
         Telephone:  +1.702.425.5100
         Facsimile:  +1.888.867.5734
         *Attorney for Plaintiff*

RAINEY • DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-25-

**PROOF OF SERVICE**

I, Jennifer J. Hurley, an employee of The Law Firm of Rainey Devine, certify that the following individuals were served with PLAINTIFF'S RESPONSE TO THE UNITED STATES' MOTION TO DISMISS OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT, on this date by the below identified method of service:

**Electronic Case Filing**

TONY WEST
DANIEL G. BOGDEN
SANDRA SCHRAIBMAN
ALICIA N. ELLINGTON
JOHN K. THEIS
Trial Attorneys, Federal Programs Branch
United States Department of Justice, Civil Division
20 Massachusetts Ave, N.W. Rm 7226
Washington, DC 20530

Zachary Richter
Trial Attorney, Constitutional Torts Staff
United States Department of Justice, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, DC 20044

DATED this 9th day of March 2012.


                              /s/Jennifer J. Hurley
                              An employee of The Law Firm of Rainey Devine.

RAINEY ● DEVINE
8915 S. Pecos Road, Ste. 20
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)