TRANSCRIBED FROM DIGITAL RECORDING                    1

1              **UNITED STATES DISTRICT COURT**

2                   **DISTRICT OF NEVADA**

3     **THE HON. GLORIA M. NAVARRO, U.S. DISTRICT JUDGE, PRESIDING**

4

5  S. Rowan Wilson,                    )
                                       )
6                Plaintiff,            )          **Case No.**
                                       )     **2:11-cv-01679-GMN-PAL**
7          vs.                         )
                                       )        **Motion Hearing**
8  Eric H. Holder, Jr., et al.,        )
                                       )
9                Defendants.           )        <u>**CERTIFIED COPY**</u>
   _____)
10

11

12

13

14

15              **TRANSCRIPTION OF PROCEEDINGS**

16              Friday, November 2, 2012

17

18

19

20 APPEARANCES:                    See Next Page

21 DIGITALLY RECORDED:             9:13:52 a.m. to 10:43:20 a.m.

22 TRANSCRIBED BY:                 ELLEN L. FORD
                                   (702)366-0635
23

24

25 **Proceedings recorded by electronic sound recording, transcript
   produced by mechanical stenography and computer.**

```
 1    APPEARANCES:

 2    For the Plaintiff:

 3            CHARLES C. RAINEY, ESQ.
              The Law Firm of Rainey Devine
 4            8915 South Pecos Road
              Suite 20
 5            Henderson, Nevada  89074
              (702) 425-5100
 6            email: chaz.rainey@raineylegal.com

 7

 8    For the Defendant:

 9            JOHN KENNETH THEIS, ESQ.
              U.S. Department of Justice
10            Federal Programs Branch
              20 Massachusetts Avenue NW
11            Washington, DC  20530
              (202) 350-7632
12            email: john.k.theis@usdoj.gov

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    **LAS VEGAS, NEVADA; Friday, November 2, 2012; 9:13:52 a.m.**

2                              --o0o--

3                       **P R O C E E D I N G S**

4         THE COURT:  Thank you.  You may be seated.

5         DEPUTY CLERK:  Now calling the case of S. Rowan Wilson

6    versus Eric Holder.  Case number 2:11-cv-1679-GMN-PAL,

7    regarding motion hearing.

8         Counsel, please note your appearances for the record.

9         MR. THEIS:  Go ahead.

10        MR. RAINEY:  Chaz Rainey here on behalf of the

11   Plaintiff, S. Rowan Wilson.

12        THE COURT:  And good morning, Mr. Rainey.  And good

13   morning, Miss Wilson.

14        MR. THEIS:  John Theis on behalf of the Defendants.

15        THE COURT:  And good morning, Mr. Theis.  So it's

16   Theis?

17        MR. THEIS:  Theis.

18        THE COURT:  Not T-h, not thise (phonetic).  It's

19   spelled T-h, but it's pronounced with a T.

20        MR. THEIS:  That's correct.

21        THE COURT:  All right.  Thank you, Mr. Theis.  Good

22   morning.  And did you come in from Washington, D.C.?

23        MR. THEIS:  I did.

24        THE COURT:  Okay.  Well, we're glad we were able to

25   have you here with us.  We weren't sure there for a while with

1 the hurricane if you were going to be able to be here.  So I'm

2 glad to see that you're safe and sound.

3         I appreciate that you all probably are prepared to

4 present oral arguments to me.  I'm hoping that it would be

5 helpful to you for me to explain -- go ahead and be seated --

6 my inclinations at this point.

7         I still have an open mind.  I want to know whether you

8 agree or disagree with my initial thoughts on the matter.

9 There has been some changes in the law since you all finished

10 the briefing, so that might be important for you to explain to

11 me how you think that does or does not affect your position in

12 this case.

13         So I'll just go over very briefly -- obviously, we're

14 talking about the Federal Gun Control Act and two particular

15 sections of Title 18 of the United States Code § 922(g)(3) and

16 (d)(3).

17         As to the CFR, the Code of Federal Regulation, that's

18 at issue at Title 27 § 478.11.

19         It's important to me to figure out which one of the

20 two inferences of current use apply and, of course, the ATF

21 Open Letter.

22         So first of all, looking at the Administrative

23 Procedures Act at Title 5 of the United States Code § 553,

24 which says, "Any proposed rule must undergo notice and comment

25 unless the rule is interpretative."

1          I want to know your thoughts and whether you think

2    that the particular rule at issue is interpretative.  And the

3    one we're speaking of is at Federal code -- the Federal

4    regulation that states that, "An inference of current use may

5    be drawn from evidence of a recent use or possession of a

6    controlled substance, or a pattern of use or possession that

7    reasonably covers the present time."  And so that is the

8    definition of "unlawfully user" as used in the Federal Gun

9    Control Act.

10          It appears that the question might turn on whether or

11   not this rule issued by the ATF Letter and whether it's an

12   interpretation.  Is it an interpretative rule or is it a

13   legislative rule?  If it is a legislative rule, if it's

14   something that Congress has delegated power to the Agency, and

15   the Agency is intending to use that power to promulgate the

16   rule at issue, then, obviously, it would be a legislative rule

17   and then it would require comment and notice.

18          However, if, in fact, that rule is issued by the

19   Agency just to advise the public of its own interpretation and

20   construction of the statute which -- in regards to the rule

21   which it administers, then it is an interpretative rule, and in

22   that case would not be subject to notice and comment.  It's

23   just reflecting on the construction of the statute, and it's a

24   statute which has been entrusted to the Agency to administer.

25          So looking at the Firearms Import/Export Roundtable

1    Trade Group versus Jones case, which is the D.C. District Court

2    case in 2012 recently, it -- they did determine that a

3    different ATF Letter -- not this Open Letter but a different

4    ATF Letter -- was interpretative and, thus, did not require

5    comment and notice.  So if you think that that case applies or

6    doesn't apply here in some way, please let me know.

7         I would like for, if possible, for the Plaintiff to

8    clarify whether or not she is challenging only the statute, the

9    two subsections of the statute, or also the regulation itself.

10   Is she seeking review of that ATF stated policy in the Open

11   Letter only, or is she also challenging the statutes?

12        Because I'm not -- I'm not sure they're all the same

13   thing.  You know.  They could be different things.  You could

14   say, well, the statute may be constitutional, but this

15   interpretation doesn't apply.  I don't want to put words in

16   your mouth, but I want to make sure that I'm clear on what your

17   position is.

18        If it's only the policy's affect on those two statutes

19   in the regulation that keeps her from procuring the gun, then I

20   want to know if that's -- if that's what your position is.

21        Also, if the ATF Open Letter requires notice and

22   comment or not.  Is it an interpretative rule or is it a

23   legislative rule?

24        How much deference should the Court give to the ATF's

25   interpretation?  It's their interpretation.  How binding is

1  that?  Does it have any precedential affect at all?

2        Do the answers to, you know, all of these questions

3  that I'm kind of throwing at you for the first time -- and I

4  appreciate if you can't answer them right now -- but how does

5  that affect my determination of the merits of the action?  And,

6  of course, then there's the question of jurisdiction.

7        Looking more specifically at Section 922(g)(3) which

8  is the portion of the Federal Gun Control Act that makes it

9  unlawful for users of controlled substances to actually possess

10 the guns, looking at that specifically, and the Dugan case,

11 which is a Ninth Circuit case recently in 2011 that was decided

12 after the Heller case, the Supreme Court Heller case.  In Dugan

13 they upheld Congress' ability to prohibit illegal drug users

14 from possessing firearms.

15        So it appears to me that, regardless of the state law

16 on the issue of medical marijuana, marijuana does still remain

17 unlawful under the Federal law, so it seems like this claim

18 would be barred by that Ninth Circuit precedent as issued by

19 Dugan.

20        So tell me if you disagree or why that may not be --

21 maybe that is not a complete -- doesn't completely prevent me

22 from considering the issue if there's another way for me to

23 look at it.  But it does seem to me that that is a bar.

24        As to the 922(d)(3), which is the section that

25 prohibits firearm sales to persons that the firearm seller

1  knows or has reason to believe -- reasonable cause to believe

2  is an unlawful user, that one is perhaps a little easier in a

3  sense that under the Fourth Circuit's Chavin case --

4  C-h-a-v-i-n -- the Court did know that, "The challenged law

5  will only impose a burden on the conduct that is falling within

6  the scope of the Second Amendments' guarantee if the conduct

7  was understood to be within that scope at the initial time, at

8  the original time of its ratification."

9          And so with that in mind, the Fourth Circuit

10  determined -- they analyzed that at the time of the

11  ratification of the Second Amendment, they weren't intending to

12  protect an individual's right to sell firearms as opposed to

13  possess firearms.  And so it does appear that, because Congress

14  can constitutionally preclude illegal drug users -- the key

15  there being illegal -- drug users from possessing a firearm,

16  Congress likewise could prevent sellers from selling a firearm.

17          So it looks to me -- I'm inclined to believe that the

18  Second Amendment probably does not include a right to sell

19  firearms and ammunition.  So is that a complete bar or, again,

20  is there another way of looking at it?

21          Also, I'm not sure as to that particular subsection

22  whether there's a standing question there that needs to be

23  addressed.

24          As to the constitutional analysis, obviously, we need

25  to decide which one of the levels of scrutiny apply.  Is it

1  rational?  Is it intermediate?  Is it strict?

2          So the Government is arguing that it's the

3  intermediate scrutiny, and the Plaintiff is arguing it's strict

4  scrutiny.

5          The Government did rely on a series of cases,

6  including the Nordyke case that was prior to the En Banc

7  decision.  So now we've had the En Banc decision at Nordyke, so

8  I'd like you to explain to me how that does or doesn't change

9  your position.

10         Let's see.  I did look at U.S. v Carter, which is a

11 Fourth Circuit's 2012 case finding that intermediate scrutiny,

12 not strict scrutiny, applied.

13         I'm not sure that I'm persuaded that it's strict

14 scrutiny.  Most of the cases I believe do point towards

15 intermediate scrutiny.  Of course, there is that Nordyke case

16 which found that it was actually a rational basis, but it was

17 county -- that was the County Code violation for possessing the

18 firearms or ammunition on County property.  Not everywhere, but

19 just on County property.  So maybe that's the distinction.  You

20 can let me know what you think I should do or not do in regards

21 to how Nordyke affects the issues here today.

22         Let's see.  Substantive due process.  The Fifth

23 Amendment claims.  There's the substantive due process or

24 procedural due process and the equal protection as to the

25 substantive due process.

1          I think looking at the Raich -- and I'll spell that

2   for the record, R-a-i-c-h -- v Gonzales case, which is the

3   Ninth Circuit 2007 case, it does appear that the Ninth

4   Circuit's already held that there's no constitutionally

5   protected right to use marijuana for medical purposes.

6          I know there's the litany of right to abortion under

7   the Planned Parenthood case, right to use contraceptives under

8   the Eisenstadt case, right to refuse lifesaving hydration and

9   nutrition under the Cruzan case.  But the Raich case is a Ninth

10  Circuit case, so it does have direct precedential value on

11  my -- my court, you know, my jurisdiction.  As opposed to if

12  it's a different district, it's something I consider and give

13  preferential treatment to but not necessarily directly

14  controlling.  But a Ninth Circuit case is directly controlling

15  on this Court.  So tell me why you think that can be

16  distinguished, if you think it can.

17         Also, the questions regarding procedural due process

18  and equal protection.  I just think those are very weak.  If

19  you think that there's -- you know, I want you to use your time

20  wisely.  So if you think that you still want to convince me

21  that those are issues that should -- that you can explain

22  sufficiently to survive a Motion to Dismiss, go ahead and tell

23  me.  But if you don't want to spend too much time on those and

24  just spend more time on the others that seem to be probably

25  more viable at this point, that's up to you.

1          The conspiracy claim also was dismissed already

2   voluntarily by the Plaintiff so we don't need to go into that

3   at all.

4          That's kind of my inclination and those are my

5   questions.  And since this is the Defendant's Motion to

6   Dismiss, we'll go ahead and allow the defense to go ahead and

7   speak first, and then we'll have a response from the Plaintiff,

8   and then a reply from the Government, because it is your

9   motion.

10          And then I most likely will not render a decision

11  today.  I think this is as much of a decision as you probably

12  will get today as far as my -- what my inclinations are.  I'll

13  take it under submission at the end and issue a written ruling

14  as soon as I can.

15          All right.  So go ahead, Mr. Theis.

16          MR. THEIS:  All right.  Thank you, Your Honor.

17          At the outset, on your concerns about what I would

18  call sort of the APA type concerns.  Much of this issue is not

19  fully presented in the -- in the Complaint or in the briefing

20  that was submitted to the Court.  So I will give sort of our

21  initial impression to the questions that the Court's raised,

22  but if possible, I'd like to reserve -- and if the Court would

23  like this, we'd be happy to do this -- the opportunity to

24  submit for the briefing on this particular question and answer

25  the specific questions that the Court has on that issue.

1        So if I can put that to the side for the moment and

2   talk about the constitutional claims which are before the

3   Court, if that -- if that works for Your Honor.

4        THE COURT:  So which particular issue do you want to

5   supplement?

6        MR. THEIS:  What you first addressed.  The question of

7   whether or not this particular regulation and the Open Letter

8   qualifies as an interpretative rule, what level of deference is

9   required for this particular -- for the letter.

10       Those issues were -- the 7-0 -- though the APA was

11  mentioned in the Complaint, it's only the waiver of sovereign

12  immunity element of this, so there's no APA claim brought

13  before the Court in this Complaint, so that's why this issue

14  was not fully fleshed out.

15       And so that's why I'd like to hold on that particular

16  question just for now.  And in the course of this, if we get

17  further answers on this, I'd be happy to give them.

18       THE COURT:  All right.  And there's a standing issue,

19  as well.

20       MR. THEIS:  That's correct.

21       THE COURT:  Because she's not a seller, she's a

22  buyer -- a potential buyer not a seller.  So --

23       MR. THEIS:  That's correct.

24       THE COURT:  -- there's a standing question, too.

25       MR. THEIS:  On that, Your Honor, I believe there's --

1 we did not, you know, specifically raise that individual

2 question.  But yes, that is something that, obviously, the

3 Court needs to look to its jurisdiction first, and if that's

4 something that the Court can't find, that she is not -- doesn't

5 have standing to raise this issue, then that's -- that's where

6 we are.

7          To the constitutional issues.  First, as -- as the

8 Court correctly pointed out, the use of marijuana is prohibited

9 under Federal law.  Though certain states have -- such as

10 Nevada issued past laws that suggest that the use may be used

11 for medical purposes under state law, that is not recognized

12 under Federal law.

13         So the individual registry card that she has here,

14 which is the core of this case, does not prohibit her from

15 any -- from -- that does not give her the right to use

16 marijuana.

17         And that -- that concept sort of applies to several

18 different issues in the claims that she's raised, and so we

19 wanted to make that in the outset.

20         And as Your Honor points out, on 922(g)(3), the

21 possession of -- of a controlled substance, we believe that is

22 foreclosed by Dugan.  There's no further need to engage in

23 another constitutional analysis based on that.  It's -- Dugan

24 squarely held that Congress may prohibit the legal drug users

25 from possessing firearms and that doesn't -- the Second

1  Amendment does not change that analysis, and so that's where we

2  are on that.

3          On the independent constitutional analysis that -- the

4  Court does need to take that second step, we agree, as we

5  pointed out in our briefs, that intermediate scrutiny is

6  appropriate.

7          As to Nordyke, the original panel hearing was vacated

8  by the En Banc decision.  And so it's -- it's not exactly clear

9  where the Ninth Circuit stands on this on the level of

10 scrutiny, but I will say that every Court to address both the

11 level of scrutiny required for 922(g)(3) and for every other

12 section of 922(g) has held that intermediate scrutiny applies,

13 and that's why we've argued in our brief that intermediate

14 should apply.

15         And the reasons behind that are, one, that the level

16 of burden that we're talking about here for 922(g)(3) is

17 relatively low.  An individual who is prohibited from

18 purchasing a firearm by the -- it's a temporal scope to what is

19 included in 922(g)(3).  And so an individual can just stop

20 using unlawful drugs and that would then allow them to -- to

21 purchase a firearm.

22         Because of that temporal scope, because there's not as

23 great a burden as there would be, some courts have said that

24 that's a reason to use definitely less than strict scrutiny,

25 but that intermediate scrutiny is appropriate.

1        And then, two, the actual constitutional analysis

2   itself, this statute has the compelling Government interest of

3   protecting against public safety and preventing violent crime.

4   And that's -- as we've demonstrated in our brief, there's

5   reasonable fit between that compelling interest and the

6   regulations that are at issue here.

7        We cite a wide variety of sources that demonstrate

8   this -- that between those -- the interest and the regulation,

9   including the legislative history, the fact that the majority

10  of states have made the same determination, which the Yangtze

11  Court in the Seventh Circuit found important for this question.

12  And finally, the academic and empirical studies that we've

13  cited that show this connection between crime and the use of

14  marijuana.

15       So all of that in connection with the temporal scope

16  point to -- this is the reason why all these courts have used

17  intermediate scrutiny in the Court.  If it does an independent

18  constitutional analysis, it should use that, as well.

19      On (d)(3), we agree that Chavin forecloses this.  This

20  is -- no Court has recognized -- and it is clear from the

21  nature of the right -- that the laws imposing conditions and

22  qualifications on the commercial sale of arms, that there's --

23  that there's no corresponding restriction for the sale of -- or

24  I'm sorry -- protection for the sale of firearms.

25       Heller articulated the right as -- the core right as the

1  right of law abiding, responsible citizens to use firearms in

2  the hearth and home.  There's no -- as Chavin pointed out,

3  there's no corresponding right to sell firearms in that case.

4  So we -- on the substantive issue, separate from the standing

5  issue, that we agree with that -- or that's the position that

6  the Court should take.

7      Your Honor asked about two other -- the Fifth Amendment

8  claims.  First on the -- it's our position the Complaint does

9  not lay out a Fifth Amendment substantive or procedural due

10  process claim, as we pointed out in our briefs.  This was

11  raised for the first time in the opposition to our Motion to

12  Dismiss, and Plaintiff can't amend their Complaint to add these

13  different claims.

14      But even if the Court were to address those claims, as the

15  Court properly pointed out, Raich -- the Ninth Circuit opinion

16  of Raich 2, has held that there is no substantive due process

17  right to use marijuana, even if it's for medical purposes,

18  under state law.  And that -- and that squarely forecloses the

19  substantive due process claim.

20      So those are the --

21          THE COURT:  Can we go back to the 922(d)(3) claim,

22  though?  Because I'm not sure if you addressed whether or not

23  you believe that the Plaintiff has standing to raise that

24  claim.

25          MR. THEIS:  If I could, Your Honor, I'd like to hold

1    on answering that specific question.  We didn't address that in

2    our briefs because there are cases that have held that the

3    denial of the right to possess -- or to use firearms and

4    possess firearms, that that right alone gives you -- that that

5    denial gives you standing, and I -- I'd like to confirm that

6    that's been used in the same context of the 922(d)(3) for the

7    sale.  So that's why we didn't raise a specific standing

8    argument in our briefs, and that's why we didn't put that as

9    our first point that we would make in this case.

10          But -- but obviously, if Plaintiff is -- so I'd like

11   to hold off and take a brief look at some notes that I have on

12   that particular question because I want to give the Court the

13   correct answer on the standing issue, essentially.

14          THE COURT:  Why don't you take a look now, because

15   that's important to me.

16          MR. THEIS:  And other -- other than those particular

17   issues, I believe I've addressed everything other than, again,

18   that APA issue which we discussed at the outset.

19          THE COURT:  Just a minute.  I just want him to have a

20   chance to look at --

21          MR. RAINEY:  Oh, I'm sorry.

22          THE COURT:  You weren't all -- were you completely

23   done, Mr. Theis, or --

24          MR. THEIS:  Other than the standing issue and the APA

25   issue which we've -- I would like to do a bit more digging on

1  that particular question.  I think we're done with the rest of

2  our argument, though.

3          THE COURT:  Okay.  Well, but before we go over to

4  Plaintiff --

5          MR. THEIS:  Okay.

6          THE COURT:  -- please go ahead and take a look at your

7  thoughts on standing.

8              (Pause in the proceedings.)

9          THE COURT:  Mr. Theis, since you're going to be --

10  I'll go ahead and grant your motion -- your oral motion to have

11  supplemental pleadings on the Administrative Procedures Act

12  issue.  If -- if you're going to already be doing that anyhow,

13  perhaps we'll -- I'll go ahead and allow more briefing on the

14  standing issue and that will give Plaintiff an opportunity, as

15  well, to be able to do a little research and guide the Court as

16  to whether you think that, under the APA, you know, which

17  states that if there's a rule that's proposed by an agency, if

18  it's an interpretative rule -- and I'll spell that for the

19  record again, i-n-t-e-r-p-r-e-t-a-t-i-v-e -- if it's an

20  interpretative rule -- doesn't roll off the tongue very easily,

21  does it? -- then there need not be any comment and notice.  But

22  if it is a legislative rule then there does need to be.

23          And so I think that's important to look at, and so

24  I'll go ahead and allow both parties to provide further

25  briefing on that issue, and on the issue of standing -- of the

1  Plaintiff's standing.

2          And we'll set a briefing schedule after we're done

3  here so that my -- my clerk can have a -- have some time to do

4  that calculation.

5          So is there anything else, Mr. Theis, that you want to

6  say?  And I don't mean to rush you at all.  In fact, I have the

7  entire morning set aside for this.  So I expected this would be

8  more in-depth and would take longer.  So feel free, if you have

9  other things that you want to get into.

10          MR. THEIS:  Nothing further, Your Honor, but I would

11  like to reserve any time, obviously, to rebut any specific

12  points that were made.  But we've made the majority that we'd

13  like for now, and we'll rest on our briefs on the rest.

14          THE COURT:  All right.  Thank you.  All right.

15  Mr. Rainey?

16          MR. RAINEY:  One moment, Your Honor.  Good morning,

17  Your Honor.

18          THE COURT:  Good morning.  I was very intrigued by the

19  issue.

20          MR. RAINEY:  Yes, it's a fun one.

21          THE COURT:  Yes, it is a fun one.  And there isn't

22  really anything directly on point in any other of the circuits.

23          MR. RAINEY:  No.

24          THE COURT:  So it is a very interesting one, and I

25  think a very important question.

1        MR. RAINEY:  Mm-hmm.

2        THE COURT:  So I am interested to hear what -- what

3  else you have to add to this so far beyond what has already

4  been provided in the briefings.

5        MR. RAINEY:  Well, Your Honor, I want to begin by --

6  by making it clear that we are challenging, not just the

7  letter, and not just the regulation, but also the statute.

8        Now, we -- as we do that, we recognize that

9  challenging the statute is a -- an uphill battle.  It's a

10 long-established -- sorry -- long-established statute.  We're

11 not -- we're not trying to deny that.

12       However, we have to begin from the fundamental

13 preposition -- proposition that, under D.C. v Heller, the

14 Second Amendment was interpreted as an individual fundamental

15 right, and that was reiterated later by the U.S. Supreme Court.

16       And prior to that -- and I think we all can agree --

17 that prior to that it was very much up in the air as to how the

18 Supreme Court would interpret the Second Amendment.  And so

19 from there we have a very different proposition.

20       THE COURT:  Well, the Court specifically held that the

21 right was not unlimited.

22       MR. RAINEY:  That's correct.

23       THE COURT:  They did say that the Government can

24 prohibit possession of weapons in some scenarios without

25 running afoul of the Second Amendment.

1          MR. RAINEY:  Mm-hmm.

2          THE COURT:  For example, prohibiting the possession of

3   firearms by felons or mentally ill persons.

4          MR. RAINEY:  Mm-hmm.

5          THE COURT:  So it sounds like this is an as-applied

6   constitutional challenge?

7          MR. RAINEY:  Mm-hmm, yes.  So the question here is, as

8   applied in those two statutes, as applied in the corresponding

9   regulations and, of course, as applied in that letter, the ATF

10  Letter, was that a constitutional application a valid

11  restriction on the right to own and purchase firearms?

12         I'd like to sort of take -- while I know that we are

13  going to do a separate briefing on the standing issue, I want

14  to point out, though -- the standing, it's not about the

15  constitutional right to sell firearms.  The problem is we're in

16  a regulated profession where there's only one way to buy a

17  firearm.  If you want one, you have to go through a Federally

18  licensed firearms -- Federally -- Federal firearms licensee.

19  And if that's the only avenue, and then you're telling, through

20  statute, that you're not allowed to sell any firearms to anyone

21  who has this card, well, you have essentially a prior restraint

22  issue where those people are now completely shut off from their

23  Second Amendment right, even though they were kind of kept out

24  of the equation all together.

25         The -- the most important thing that we have to focus

1  on here is that we're not talking about someone who has been

2  determined a user of medical marijuana, we're talking about

3  somebody who has a card that, under state law, says they have a

4  right to the use of the medical marijuana.  And that's a huge

5  distinction.

6          What the ATF is saying is that anyone who is a card

7  carrying member of the medical marijuana party must

8  automatically give up their Second Amendment rights.  That

9  they're not allowed to have a gun.

10          And as I say that, I realize, too, that there may be a

11  real dire need to amend or maybe refile the case to include a

12  First Amendment claim.  Because really, that card is a form of

13  political speech, and that's also reinforced by the cases that

14  you have here in the State court determining that there's no

15  real means of commercial access to medical marijuana, so it's

16  very possible -- in fact, it's very likely -- that most people

17  who have these cards aren't even users of medical marijuana

18  because they have no means of accessing or of acquiring it.

19  All the card says is that you have the right under state law to

20  possess a certain amount and to grow the plant.

21          THE COURT:  Okay.  Well, if you are trying to add a

22  First Amendment claim, that wouldn't be an issue on the Motion

23  to Dismiss.  The Motion to Dismiss essentially is looking at

24  the face of the Complaint --

25          MR. RAINEY:  Right.

1          THE COURT:  -- what has actually been pled -- not what

2    maybe you would have wanted to plead or might want to plead

3    later or add -- but what is actually pled and whether or not

4    any of those --

5          MR. RAINEY:  Mm-hmm.

6          THE COURT:  -- claims should be allowed to proceed,

7    whether or not they are valid or invalid.

8          MR. RAINEY:  Right, your Honor.  But actually, also

9    in --

10         THE COURT:  So I'd stick to those.  Maybe you'll amend

11   later, and maybe --

12         MR. RAINEY:  Right.

13         THE COURT:  -- it'll be dismissed and you'll want

14   to --

15         MR. RAINEY:  I understand it, but I think that also I

16   want to point out that it's really that -- that that cause of

17   action comes out of their defense.  Because what they're saying

18   is, look, it's not a big deal.  If you just get rid of the

19   card, we'll let you buy a gun again.  It's sort of saying,

20   look, you get to either have the card or you get to have the

21   gun, you don't get to have both.  You -- that's where --

22         Because there's no actual restraint on speech at this

23   point, it's just saying, you know, everybody's allowed to get

24   the card, but they're saying that once you get it, you're not

25   allowed to have any of these rights.

1          THE COURT:  Okay.  Well, this isn't what we're talking

2   about the "they", "they", "they" without really being more

3   specific.  "They" is not Congress, this is not something that's

4   been enacted by Congress --

5          MR. RAINEY:  Right, by the ATF.

6          THE COURT:  -- this is an ATF Open Letter.

7          MR. RAINEY:  Mm-hmm.

8          THE COURT:  So it either is a new rule that they are

9   either enacting under the authority of Congress, in which case

10  then you would, you know, consider it --

11         MR. RAINEY:  Right.

12         THE COURT:  -- just like a Congressional law, or is it

13  just their interpretation of how they are going to be applying

14  the law, in which case it is open to notice and comment and

15  does have a different standard that's applied, it is a

16  different kind of horse.

17         And so -- so I want to understand where it is that --

18  what it is that the Plaintiff thinks about this distinction,

19  that it's not directly from Congress --

20         MR. RAINEY:  Right.

21         THE COURT:  -- we didn't actually have a bill that was

22  proposed and passed --

23         MR. RAINEY:  Mm-hmm.

24         THE COURT:  -- and signed by the President, this is --

25  this is a rule.

1        MR. RAINEY:  Right.  Examining the constitutionally of

2   the -- the constitutionality of the ATF Letter.  And if we look

3   at that through the lens of legislative versus interpretative,

4   the -- and again, I reserve the right to brief on this more

5   later because it was not properly briefed in the underlying

6   pleadings -- but the fact is that the letter makes it very

7   clear, you're not to sell firearms to anyone who has this card.

8   Don't do it.

9        And if you're saying that, the ATF is essentially

10  foreclosing any further notice or hearing as to whether or not

11  these individuals are, in fact, illegal drug users.  They're

12  just saying we've made the decision, if you have the card,

13  you're automatically deemed an illegal drug user.  And as an

14  automatically deemed illegal drug user, you're not entitled to

15  a firearm and you can't sell that firearm to that person.  And

16  by making that --

17        THE COURT:  But that wasn't necessarily the rule

18  before the Open Letter was issued.

19        MR. RAINEY:  No.

20        THE COURT:  This is an interpretation analysis by an

21  administrative agency of how it is going to react to the

22  situation that it's faced with with what do we do about this

23  scenario in these particular states where medical marijuana is

24  allowed --

25        MR. RAINEY:  Mm-hmm.

1          THE COURT:  -- what do we want to do about it?

2          MR. RAINEY:  Mm-hmm.

3          THE COURT:  And they decide what they're going to do

4    about it, how they interpret the law, and how it should apply.

5          MR. RAINEY:  Sure.  But it forecloses any further

6    opportunity for these people to acquire a firearm.

7          And if you're a Federal firearms licensee and you read

8    that letter, you know for a fact, I am now prohibited from

9    making any further sales to these individuals.  At that point

10   you've cut off the Second Amendment rights of an entire class

11   of individuals.

12         And you've said that this fundamental individual

13   Second Amendment right is not -- is no longer offered to these

14   people simply because they went and got a card.

15         Again, if you look at the other cases in which this

16   law has been applied, and you look at those other cases, those

17   are cases where people were convicted of criminal acts, cases

18   where people were indicted for --

19         I mean, the Dugan case is a great example.  The Dugan

20   case, which by the way is only, what, two pages long and

21   doesn't really give much analysis at all -- the Dugan case is

22   about somebody who was running, essentially, a drug ring out of

23   their apartment and an illegal firearms business.

24         Where here, we're talking about a woman who went to

25   her physician, got a med -- got a prescription, essentially,

1  for medical marijuana, went to the Government and got a

2  State-issued card, and now says, just because you got that

3  card, you can't own a gun.

4          That's -- it's a completely night and day example.

5  And it also underscores the fact that we also believe that this

6  Court does have the --

7          THE COURT:  Well, and I do empathize with the

8  situation that she finds herself in.  There are plenty of

9  legal, prescribed medications that may or may not be much more

10 dangerous --

11         MR. RAINEY:  Mm-hmm.

12         THE COURT:  -- than marijuana as far as the scientific

13 world has told us, and what they know about drugs and drug uses

14 and the effects.  You know, morphine comes to mind.  That's

15 something that's prescribed for pain, and I'm told will

16 essentially kill you if you take it for too long, right?

17         But, you know, that's -- that doesn't necessarily

18 negate someone's possession of a gun so long as there's no

19 other -- you know, if they're taking it, obviously, for a

20 mental illness, or if they're a felon, or so forth, then there

21 could be other problems.

22         So I completely sympathize with the situation, and so

23 don't want that to be lost on Miss Wilson, but this is a matter

24 of -- of, not facts, but rather a matter of law, and so we do

25 need to have -- keep that in mind that we look through the --

1  the recent law and any of the precedent that we have for

2  guidance --

3          MR. RAINEY:  Mm-hmm.

4          THE COURT:  -- and not just act out of sympathy --

5          MR. RAINEY:  No.

6          THE COURT:  -- but rather try to be logical about

7  this.  So I think that your stronger argument is probably as to

8  this ATF Open Letter.

9          MR. RAINEY:  Oh, and I agree with that, Your Honor,

10  and we don't question that.  We think that the ATF Letter --

11  that we have a much stronger argument there, and it's a very

12  uphill battle to argue the unconstitutionality of the statute.

13          But I also think that Dugan doesn't really deal with

14  this situation and it's not really on point.  It definitely

15  discusses the statute as applied in that context, but I just

16  don't think that -- and while it does say that the Government

17  has a right -- sort of omnibus right to restrict Second

18  Amendment rights to dangerous people, it doesn't deal with this

19  situation, and it's not directly on point here.

20          And when you start taking the, sort of, broad

21  interpretation that the ATF has taken of the statute, and you

22  start seeing how it kind of gets wider and wider as you go from

23  the -- the regulations -- when you go from the statute to the

24  regulations to the letter, it sort of becomes this -- this

25  giant Pacman that envelopes all of us, where we're suddenly --

1  the Second Amendment rights are deprived from just an enormous

2  cross-section of people.

3          And I -- I think that's something that has to be

4  entertained by the courts and dealt with.

5          And when you look at all of these cases that are

6  cited -- and I could read them off here -- I mean, you go

7  through, you know, United States versus Marzzarella in the

8  Third Circuit.  Again, indicted for possession of firearm with

9  an obliterated serial number in violation of 922(k).

10         You have Huddleston v United States which is a

11 previously convicted felon.  You have U.S. v Reese in the 10th

12 Circuit, criminally charged with possessing firearms while

13 subject to Domestic Protection Order.  They're just -- they're

14 all way outside the scope of this.

15         Here we're saying it's a prior restraint before

16 there's been any notice, any hearing onto whether that

17 individual has been an illegal user.

18         And that's where our procedural due process claim

19 comes in, too, is that you're saying, if you're going to deny

20 them the right, you have to have some sort of notice and

21 hearing to say you are deemed an illegal user.  You can't just

22 say we think you're an illegal user.  And as -- because we

23 think that, we're now going to deprive you -- before any sort

24 of hearing or anything -- we're going to deprive you of that

25 right.

1          Now, I know the day sort of --

2          THE COURT:  Well, what the letter specifically says is

3    that if a seller believes, you know, knows, or has reasonable

4    to believe --

5          MR. RAINEY:  Right.

6          THE COURT:  -- that she's a cardholder -- and this was

7    kind of a unique situation where the seller wasn't someone who

8    was unknown to Miss Wilson, they actually knew each other, and

9    so he was aware that she was -- that she did have a card for

10   medical marijuana -- I don't think there's a question as to

11   whether or not she actually possesses marijuana, it's just the

12   possession of the card --

13         MR. RAINEY:  Right.

14         THE COURT:  -- at this point --

15         MR. RAINEY:  Right.

16         THE COURT:  -- and maybe that's an issue that's --

17         MR. RAINEY:  Mm-hmm.

18         THE COURT:  -- more important and shouldn't be

19   overlooked than the fact of, you know, whether or not she

20   actually possesses marijuana, she only possesses the card at

21   this point.

22         MR. RAINEY:  And I don't think this is a unique

23   situation.  I mean, Miss -- Miss Wilson is, in fact, I mean, a

24   medical marijuana advocate.  I mean, she's someone who's been

25   politically active in the movement to get more broad medical

1  access for patients, she works -- she's worked in the medical

2  profession, she believes that the treatment is helpful to

3  people with various ailments from cancer, to HIV, and other

4  conditions.

5       But she -- and so her presence within the community,

6  just like anybody else who happens to be a medical marijuana

7  activist who is carrying these cards, those people would be

8  known if they went to buy a firearm probably within their

9  community in the same context.  I mean, we're talking about a

10 small community in rural Nevada where everybody knows

11 everybody.  And so I don't think it's that unique a situation.

12      Moreover, I think where this issue came to light

13 through the ATF, and why the ATF felt -- I guess, the reason

14 they wanted to pass this rule was because people were using --

15 because when you see the state-issued cards, they look just

16 like driver's licenses.  I mean, they're state-issued.  And so

17 people would pull them out and use them as identification.

18      THE COURT:  So it sounds like you're going beyond the

19 rule here that is the inference.  I took it to mean that the

20 real concern here was not necessarily whether or not she

21 possesses marijuana or whether she intends to possess marijuana

22 and a gun both together at the same time, but the fact that

23 there's an inference being made by the ATF Letter that, just

24 because she is a card carrying member or has a card -- I guess

25 not a membership -- but carries a card, that that alone allows

1   an inference that she, in fact, is going to possess marijuana,

2   much like someone who might be an advocate for Pro Life --

3              MR. RAINEY:  Mm-hmm.

4              THE COURT:  -- and, you know, doesn't think that

5   abortions should be illegal.  Because, I mean, that person has

6   to be getting an abortion, or has got an abortion, or ever is

7   going to -- it could be a man.  You know?  It could be

8   anybody --

9              MR. RAINEY:  Absolutely.

10             THE COURT:  -- that's -- that's -- so the fact that

11  she has a medical marijuana card, I don't know whether that's

12  maybe the stronger argument here is that it's the

13  interpretation that's being given by the ATF Letter that -- the

14  authority to the seller to make an inference --

15             MR. RAINEY:  Mm-hmm.

16             THE COURT:  -- that she possesses marijuana.  And even

17  if you were to admit that, were she actually to possess

18  marijuana and a gun, that perhaps that would be a different

19  situation, a different argument for another day.  But today's

20  argument --

21             MR. RAINEY:  Mm-hmm.

22             THE COURT:  -- is that the inference itself, that just

23  because she has the card necessarily is, you know, proof

24  positive sufficient for a seller to determine that they are not

25  allowed to legally sell a gun to her.

1          MR. RAINEY:  Right.  And, Your Honor, I think that

2   goes back to, if you look at the typical application of these

3   922 statutes, it's usually in the context of a criminal case

4   where someone's already been found guilty or is being

5   prosecuted for, you know, possession of illegal drugs, you

6   know, we found in his car a kilo of cocaine under the

7   passenger's seat and the gun in the glove box, and they're

8   saying, ah-ha, now I've got an extra charge to throw at him

9   because he's not allowed to have that gun if he's got the

10  cocaine.  And so that's usually the context in which we see

11  these cases.

12         What I think has happened here, and what our argument,

13  is that the ATF has made a politically motivated statement

14  against an entire political movement, and has basically tried

15  deliberately to tweak the law to target this group and start

16  depriving rights.

17         And, of course, outside the scope of this case, there

18  are other issues where they've done similar -- similar acts,

19  but we're focused here just on the Second Amendment violation.

20         And what's happened is they're saying -- they're using

21  922 for the purpose of targeting the medical marijuana law --

22         THE COURT:  I'm not inclined to find that because

23  someone is a marijuana user, regardless whether they have a

24  card or not, that they are allowed to have a gun, when under

25  Federal law marijuana is still illegal.

1          MR. RAINEY:  That's -- and that's not the --

2          THE COURT:  So I'm just probably not going to go

3  there --

4          MR. RAINEY:  Right.  And that's --

5          THE COURT:  -- is what I'm telling you as far as

6  wisely using your time.

7          However, the fact that she has -- there's no proof to

8  the seller that she actually possesses marijuana other than

9  that she has the  medical marijuana card.  But the ATF is

10 telling the seller that's enough.

11         MR. RAINEY:  That's right.

12         THE COURT:  So I think that maybe is more of a concern

13 to the community as far as whether this is overreaching and

14 being applied incorrectly or improperly as opposed to if the

15 seller was to walk -- you know, if she was to walk in to buy a

16 firearm, and she had, you know, a bag of marijuana in one

17 hand --

18         MR. RAINEY:  Right.

19         THE COURT:  -- and the money to pay for the firearm in

20 the other, that would be different, and I think that's

21 something that probably you don't want to argue today --

22         MR. RAINEY:  No, that's not something I want to argue

23 today.

24         THE COURT:  -- because I don't think you're going to

25 win on that argument.  Here we don't know for a fact that she

1  has --

2          MR. RAINEY:  Mm-hmm.

3          THE COURT:  -- any marijuana or -- and I think that's

4  probably your better argument.

5          MR. RAINEY:  Right.  And then when we get to the equal

6  protection argument, the argument there also deals with the

7  card saying that, like, well, in states where they don't

8  require a registry card, those people can just walk in and buy

9  a gun even if they are smoking weed, if they are chronic,

10  addicted users, if it is -- you know, there's medical opinion

11  that says you can't be addicted -- but that aside, even if you

12  had someone who was regularly smoking marijuana and is openly

13  smoking marijuana in that state, they could just walk in and

14  they don't even have the card.  And so the Federal firearms

15  licensee doesn't even have to take that into consideration.

16          Whereas, a similarly-situated person in the State of

17  Nevada, where you have a state-issued driver's license looking

18  card, that person is denied a Federal firearms licensee --

19  Federal firearms purchase if they -- just because of the fact

20  that they have the card.

21          THE COURT:  Okay.  So you were advocating the standard

22  of strict scrutiny.

23          MR. RAINEY:  Yes.

24          THE COURT:  So let's assume for a moment that the

25  Government is correct --

1          MR. RAINEY:  Mm-hmm.

2          THE COURT:  -- when they argue that intermediate

3   scrutiny should actually apply.

4          MR. RAINEY:  Mm-hmm.

5          THE COURT:  How -- and so they must show that the

6   regulation is substantially related to an important

7   Governmental objective.

8          MR. RAINEY:  Right.

9          THE COURT:  So how does this regulation not pass

10  muster?

11          MR. RAINEY:  Well, first of all, I wanted to point out

12  that the -- what the -- what the Circuit Court -- just as a

13  preliminary -- what the Circuit Courts have been saying,

14  really, is -- at least in that Seventh Court -- I think it's

15  the Seventh Circuit is the first, I think, to deal with this, I

16  could be wrong -- but what they are saying, sort of, is there's

17  this two-prong test, right?  One is, is there a

18  constitutional -- is there a Second Amendment right being

19  deprived -- which I think in this case is pretty

20  straightforward, it's a gun, you're not allowed to have it --

21  but the second prong is, depending upon the level of the

22  deprivation, what level of scrutiny we apply and the extent to

23  which -- it was sort of this weird sliding scale that I believe

24  was presented in Ezell v City of Chicago?  Is that correct?  I

25  apologize if I'm mispronouncing that.

1          But it -- but the -- if we were to apply intermediate
2    scrutiny -- because I recognize that, even though the Ninth
3    Circuit has this, sort of, strange opinion on En Banc, that
4    most of the courts have adopted an intermediate scrutiny
5    standard -- if we're applying that, again, it goes back to the
6    card versus the usage.
7          They're saying, if you have a card, you're
8    automatically a user.  There's no -- it's not substantially
9    related to any Government purpose at that point.  We're just
10   saying anybody who happens to have a medical condition where
11   their doctor has advised them to do this must be denied a gun.
12         And -- and, I mean, at that point, too, I mean, you've
13   probably got people within this context who just go out, see
14   their doctor, and have no inclination towards smoking marijuana
15   or breaking the law.  And the doctor says, you know what?  I
16   recommended this treatment for you.  And they go and go through
17   the process of getting the card, and we're now going to say,
18   well, you don't get a gun because your doctor made that
19   recommendation.  There's no -- there's not even a rational
20   basis connection there.  It's just sort of saying this is --
21   it's comparing apples and bullets.  It just doesn't make any
22   sense.
23         THE COURT:  So is having a medical marijuana card
24   substantially related -- well, I guess the question is -- is
25   having a medical marijuana card -- and -- is having a medical

1  marijuana card essentially the same as being an unlawful user?

2          Is having a medical marijuana card substantially

3  related to the Governmental objective, the very important

4  Governmental objective, of prohibiting weapons from individuals

5  who may not be of the best judgment in order to exercise

6  control of such a dangerous weapon --

7          MR. RAINEY:  Right.

8          THE COURT:  -- or is it to attenuate it?  Is having

9  the card alone to attenuate it and not the same as possessing

10 the actual marijuana?

11         MR. RAINEY:  Right.  And I think there we have to look

12 at the policy purpose that is adherent to -- I'm sorry --

13 inherent to the 922 statutes.  And the idea there is being like

14 someone who is addicted to a controlled substance has --

15 doesn't have the ability to judge right from wrong, I guess,

16 because they're under the throws of the substance, and then

17 those who are illegal users of a substance, I think the

18 argument there --

19         THE COURT:  Well, there's public safety --

20         MR. RAINEY:  Right.

21         THE COURT:  -- and you want to prohibit crime --

22         MR. RAINEY:  Right.

23         THE COURT:  -- that's violent from -- from --

24         MR. RAINEY:  Right.  But to get there you have to make

25 a connection between unlawful use and violent crime and all of

1  these other ills that could be inflicted on society.  And I

2  think in order to get there you say, well, this person's

3  already breaking the law so they're gonna -- they're liable to

4  break the law in other ways.

5       You say that this person is under the influence of the

6  substance, so they're liable to break the law because of the

7  substance.

8       And so I think in this context you have to look at it

9  and say, well, but if we're talking about patients who have

10  been advised by their physicians to do it -- this specific

11  course of treatment -- those aren't -- those aren't law

12  breakers, these are people that are doing what their physician

13  tells them to do.  These are people that are even going the

14  extra step and following the State-implemented Government

15  system to get the appropriate card to follow that treatment.

16       Now, if they -- if they don't follow the treatment

17  afterwards, if they ultimately decide, you know what, I just

18  don't want to do that, I don't want to break the law at that

19  point -- but they haven't broken the law in any way up to the

20  point of application for the card.

21       THE COURT:  But they haven't broken State law, but

22  they have violated Federal law.  That's the issue here is that

23  Heller is saying that there are limitations and --

24       MR. RAINEY:  Right.

25       THE COURT:  -- when someone is breaking the law, then

1  they're an unlawful user as opposed to a lawful user.  So I

2  realize --

3          MR. RAINEY:  Right, but there is --

4          THE COURT:  -- the State law hasn't been broken, but

5  the Federal law, you have to admit, has been broken.

6          MR. RAINEY:  No.  There's no Federal law that says you

7  can't get the card.  The Federal law doesn't say that.  The

8  Federal law says you can't use marijuana, you can't possess

9  marijuana, and it doesn't say you can't get the card.

10          So if we have, an example, a cancer patient who's told

11  by their physician --

12          THE COURT:  So again, the issue here really is the

13  ATF's interpretation of -- and let me go back and read the --

14  the actual language of the statute here in issue.

15          It starts off essentially with the 922(g)(3) portion

16  which is, "It's unlawful for a user of controlled substances to

17  possess firearms."  So it's an unlawful user of controlled

18  substance.

19          MR. RAINEY:  Yes.

20          THE COURT:  And then the 922(d)(3) is where it

21  "prohibits the firearm seller who knows or has reason to

22  believe that the person is an unlawful user".

23          So where the ATF Letter says that, "evidence of a

24  recent use or possession of a controlled substance or

25  pattern" -- I'm sorry -- going back to the definition of

1  unlawful use is one -- "An inference can occur and can be drawn

2  from evidence of a recent use or possession of a controlled

3  substance, or a pattern of using or possessing that reasonably

4  covers..."

5        So it's actually an inference within an inference at

6  this point --

7        MR. RAINEY:  Mm-hmm, yes.

8        THE COURT:  -- so it's actually a double inference.

9  So the inferences that if there is a pattern of use or

10 possession, that that could constitute unlawful use, and then

11 the inference as to whether that applies is the Open Letter

12 from the ATF that, "possession of the marijuana card

13 constitutes reasonable cause to believe that the buyer is an

14 unlawful user."

15        MR. RAINEY:  Mm-hmm.  It's really, Your Honor, in that

16 one sentence on the letter, if you read it, it says, "Further,

17 if you are aware that the potential transferee is in possession

18 of a card authorizing the possession and use of marijuana under

19 State law, then you have reasonable cause to believe that the

20 person is an unlawful user of a controlled substance."

21        And it says prior to that that if you have that reason

22 to believe, you are not to sell them a gun.

23        THE COURT:  Okay.  So under intermediate scrutiny, I

24 think we agree that there is an important Governmental

25 objective.  The question is whether or not, when this

1  particular new rule that's issued under the letter is

2  substantially related to that important objective, or is it to

3  attenuate it?

4          MR. RAINEY:  Hmm.

5          THE COURT:  Would you --

6          MR. RAINEY:  That's exact --

7          THE COURT:  -- agree with that --

8          MR. RAINEY:  Yeah.

9          THE COURT:  -- being your position?

10         MR. RAINEY:  That is correct, Your Honor.  Now, as I

11  say that, I don't waive the arguments that if she's --

12         THE COURT:  I know you want me to reach further, but I

13  don't think it's gonna happen.

14         MR. RAINEY:  Right.  But I also say that that is

15  our -- that is our initial proposition is that you can't just

16  say that this card is -- is -- you know, is itself

17  justification.

18         And I think that that concludes our argument here.  If

19  you have any further questions --

20         THE COURT:  And you want to reserve the right to argue

21  standing as well; is that right?

22         MR. RAINEY:  Yes, yes, I do want to -- right.

23         THE COURT:  Let's see what else I have here.  All

24  right.  So we'll allow the parties both to brief the effects of

25  the Nordyke En Banc decision as well as the standing issue.

1          Let's see if there was something else.  I have

2   somewhat of a question about the Court's jurisdiction.  I'm not

3   sure that I've worked myself through it yet --

4          MR. RAINEY:  Mm-hmm.

5          THE COURT:  -- in regards to the fact that she hasn't

6   actually been charged under this statute criminally.

7          MR. RAINEY:  Mm-hmm.

8          THE COURT:  It is more of an issue of her being

9   prevented from obtaining the firearm.

10         But with the understanding that if she were to obtain

11  the firearm --

12         MR. RAINEY:  Mm-hmm.

13         THE COURT:  -- then the Government's position very

14  clearly in regards to the Open Letter is that she would be

15  charged -- or, of course, they have discretion -- prosecutorial

16  discretion -- to decide whether or not to use their funding and

17  their resources and things on --

18         MR. RAINEY:  Right.

19         THE COURT:  -- an individual such as Miss Wilson, or

20  whether they would prefer to use it --

21         MR. RAINEY:  Yeah.  And, Your Honor --

22         THE COURT:  -- on other individuals.  So I'm not sure

23  whether that jurisdictional question is one that is

24  controlling.  But even if you all don't bring it up, that's the

25  Court's duty is to look at jurisdiction.  I'm reminded of the

1  case that went all the way up to the Supreme Court --

2       MR. RAINEY:  Right.

3       THE COURT:  -- many years after the case had been

4  filed, and when it got there, one of the first things the

5  Supreme Court said is this was never a Federal question.

6  There's no jurisdiction here.

7       So I definitely don't want to waste your time, if

8  that's the case, if I don't even have jurisdiction.  But, like

9  I said, I'm not sure that I've worked myself through that yet.

10      MR. RAINEY:  Right.

11      THE COURT:  Is there anything else that you want to

12 add?

13      MR. RAINEY:  You know, and Your Honor, actually, on

14 that point, and I want to point out that I recognize that

15 procedurally what we did as Plaintiffs was a little unorthodox

16 in a Cross-Motion for Summary Judgment, and maybe we were

17 rushing a bit to get this going.  But at the same time,

18 there -- there are clearly issues that you've brought up that

19 were not raised in the underlying briefs that need to be

20 addressed.  And the issue of standing being one of them.

21      The way we interpret, really, the issue of the fact

22 that she hasn't been charged, the fact that she's been deprived

23 of the firearm in the same fashion of the prior restraint case

24 in speech -- the free speech case, it's like saying you're not

25 allowed to even speak on this matter, it's very similar in that

1  sense.

2          And while they have sort of -- the opposing side has

3  made some hay of how we applied First Amendment doctrine, it's

4  clear since D.C. v Heller, when you start looking at these

5  Circuit Court opinions, that they're really starting to apply

6  principles that are borrowed from First Amendment case -- case

7  law.

8          And I think the idea of the Government being able to

9  shut down a person's right to ever acquire a firearm legally

10  is, in and of itself, a violation of that constitutional

11  individual right to own and possess a firearm.

12          So thank you.

13          THE COURT:  And you said you were kind of in a hurry

14  to get -- to get this filed.  So is there some Statute of

15  Limitations that's -- that's --

16          MR. RAINEY:  No, no, Your Honor.

17          THE COURT:  -- an issue or --

18          MR. RAINEY:  I think we -- we were pretty targeted in

19  the way that we pled the case.  And I -- looking back now, I

20  think all these issues being raised, I'm thinking maybe we

21  should have just done an opposition to their Motion to Dismiss,

22  and allow more discovery, and kind of move through the case in

23  normal channels rather than do a Cross-Motion for Summary

24  Judgment.  Because there are issues that, as you sort of --

25  with any constitutional thing -- as you sort of pull at the --

1  the string of the sweater, you start seeing more and more items

2  that you have to address.

3          And the 20 -- what is it -- the 30-page limitation on

4  a motion that's -- doesn't really give us enough time to

5  properly vent all these issues.  So, thank you.

6          THE COURT:  All right.  Thank you.  Mr. Theis?

7          MR. THEIS:  Thank you, Your Honor.  Several points I'd

8  like to address.

9          First, I'd like to try to bring us back to the

10 controlling law and the Complaint that's before the Court,

11 because there are several policy arguments and discussions

12 about amending the Complaint, and I'd like to focus very

13 clearly about what the issues are here and what was pled in the

14 Complaint.

15         What we have here is a -- is a clear understanding

16 of -- a question about what is this inference that a seller who

17 is selling firearms can make about someone's unlawful drug use.

18 That seemed to be something the Court was concerned about.

19         And I think what is clear here is, the Plaintiff is

20 the master of the Complaint, and she's pled several facts that

21 show that she is or intends to violate the law, violate Federal

22 law.

23         As the Court repeatedly said, marijuana is against the

24 law under Federal law.  So when Plaintiff argues that this

25 is -- you know, she's not violating the law, if someone is an

1  unlawful user, they are violating Federal law, even if it's for

2  medical purposes under State law.

3         So what we have here is, if someone possesses a card,

4  there is -- that specifically allows them to use marijuana

5  under State law, the logical inference is that they are, in

6  fact, going to use that card and use marijuana.  So that is a

7  completely logical inference for a seller to make.

8         In addition to the plain fact of that, the factual

9  pieces, what she's alleged in her Complaint make clear that she

10 had to go through several steps to aver to the State of Nevada

11 that she intended to and was going to use marijuana.

12        Those facts include she had to go -- under the statute

13 you're required to go to a physician, the physician is required

14 to diagnose you with one of the various conditions that are --

15 by statute that you can have that allows you to use marijuana

16 for medical purposes under State law.

17        And in particular, the physician also has to warn the

18 individual about the deleterious effects of marijuana, there

19 has to be -- the disease itself has to be chronic and

20 debilitating, and there has to be a clear understanding that,

21 whatever -- the use of marijuana would somehow mitigate the

22 conditions.

23        And so the Plaintiff then had to take that

24 documentation and submit it to the State in order to say, I'm

25 going to use marijuana to alleviate the symptoms of the

1    condition that I have.

2         Taking those two pieces together, it's clear, this is

3    not an unreasonable inference that a person who does that, who

4    goes through those steps to say, I'm going to use marijuana,

5    does, in fact, use marijuana.

6         And again, there's two different -- there's a temporal

7    scope to this.  Every year you have to renew your license.  You

8    have to go back to the State of Nevada and submit more

9    documentation from your physician saying, my physician is

10   telling me I need to continue to use marijuana, and that's, in

11   fact, what she did, and that's what's alleged in the Complaint.

12        So there's no allegation about, you know, these other

13   pieces or questions about why she got the card or the purpose

14   for getting the card, that's not in the Complaint.  What's in

15   the Complaint is that she wanted to use marijuana, she got a

16   card, told the State of Nevada she was going to use marijuana,

17   and then was prohibited from purchasing a firearm because of

18   the possession of the card.

19        So that -- I feel like the logic and the facts in the

20   Complaint get to that inference question that the Court is

21   concerned about.

22        And again, under (d)(3), it's just that someone needs

23   to have reasonable cause -- seller needs to have reasonable

24   cause to believe.  All of these facts show that that was

25   entirely reasonable for someone to believe that she was an

1  unlawful user.

2          I also second wanted to address this -- the

3  independent constitutional analysis.  The two steps got a

4  little bit blurred here and how we were discussing this.

5          The second -- the first step is not whether or not

6  this case generally involves the Second Amendment, but the

7  question is whether or not the restriction at issue here falls

8  within the scope or is within the historical understanding of a

9  type of restriction that the Second Amendment allows.

10         And we've cited a variety of sources in our briefs

11 that point to the understanding of the Second Amendment right,

12 as Heller described it, as reserved for law abiding,

13 responsible citizens.  That's the core right of the Second

14 Amendment.

15         So for individuals who are not law abiding, who are

16 not responsible citizens, who affirmatively tell the State of

17 Nevada that they're going to violate Federal law, the Second

18 Amendment does not apply to them.

19         So that is -- you don't even need to get to the

20 scrutiny position.  The restriction under the analysis of the

21 Second Amendment, it does not apply to those individuals.

22         Second, for the scrutiny piece, we want to make -- and

23 I would just point out on that specific point, Plaintiff

24 doesn't, in her briefs at least, challenge that assertion.  She

25 doesn't suggest that somehow the Second Amendment didn't

1  include, well, but if people have an exemption for medical

2  marijuana or medical drug use or somehow had some other

3  exemptions for violating the law, that that would be fine.

4  That's not in the briefs.

5        All that they say is that she doesn't violate State

6  law.  But again, there is no such thing as a lawful marijuana

7  user under Federal law.

8        THE COURT:  So --

9        MR. THEIS:  Yes.

10       THE COURT:  -- what would be the Governmental

11 objectives that are important and at issue here under strict

12 scrutiny?

13       MR. THEIS:  The Court -- in 922(d)(3), as in all of

14 the Gun Control Act from 1968, the Government objective was to

15 ensure that criminals do not possess firearms.  To make sure

16 that -- there was an interest in protecting public safety.

17       And every Court -- that's a compelling interest.

18 That's beyond -- this is a very substantial interest that the

19 Government has.

20       And 922(g)(3) references the Controlled Substances Act

21 in order to determine what type of drugs and what qualifies as

22 legal and not legal.

23       And that -- within the Controlled Substances Act is

24 various schedules.  Under Schedule I, marijuana has been on

25 Schedule I since the beginning.  It's clear that what -- from

1  the initial putting of marijuana on Schedule I to the continued

2  rejections of the petitions to the Attorney General and to HHS

3  to remove marijuana from Schedule I, that there's a continuing

4  judgment by the Federal Government, by the Attorney General, by

5  HHS, that there is no medical use for marijuana, one, that

6  individuals who use marijuana, as the Duty Court recognized,

7  are more likely to have -- lack self-control.

8         And in addition, there's the pharmacological or other

9  deleterious effects that are -- we point out in our briefs,

10 that someone who is under the influence might more likely

11 engage in activities that would tie back to that violent crime.

12        So that -- that's the fit that we're -- we're looking

13 for in that intermediate scrutiny analysis is between those two

14 different pieces.  So I think that answers the Government's

15 question -- or the Court's question about that particular

16 question.

17        THE COURT:  Well, the earlier cases that the Plaintiff

18 was referring to were the criminal cases where someone's

19 actually been charged with a criminal offense.  We don't have

20 that here.  In those cases, intermediate scrutiny was applied.

21        This is a different case in that she has not yet been

22 charged with a criminal offense because it's more of a -- of

23 a -- like he was saying -- perhaps a prior restraint or, not to

24 use a legal word, but at least she has been prevented from

25 committing what, in the Government's eyes, would be perhaps a

1 criminal offense.

2        So how does that affect the standard that I should
3 apply, or does it?

4        MR. THEIS:  Well, Your Honor, it's -- it supports the
5 argument that this is -- that there's no constitutional
6 violation here.

7        In criminal cases, the burden is squarely on the
8 Government.  And it's a substantial burden, it's beyond a
9 reasonable doubt.  There has to be a wide variety of facts that
10 are submitted that a finder of fact has to determine beyond a
11 reasonable doubt that that person committed this crime.

12        This is a civil pre-enforcement challenge.  The only
13 burden that's relevant here is whether or not a
14 constitutional -- a statute, or regulation, or the letter
15 violates some provision of the constitution.

16        And she has put forth in her complaint, she's averred
17 to this Court and to the State of Nevada that she is --
18 falls -- she is violating the law.  And that -- that -- so
19 that's -- there's no question here about -- you know, there
20 hasn't been a full hearing about whether or not she's an
21 unlawful user.  You don't need to do that because this is --
22 she's the master of her Complaint and she's pled facts that
23 show that she is an unlawful user and violates Federal law.

24        THE COURT:  Well, isn't that the question?  I don't
25 think that she's alleged she's an unlawful user.  If anything,

1  she's alleged that she's not an unlawful user.  What she's

2  alleged is that she has the medical marijuana card issued by

3  the State.  She hasn't admitted that she has any marijuana, or

4  even that she plans to possess any marijuana.

5         I realize that's the inference that the Government is

6  asking the seller to make and, likewise, asking the Court to

7  make now, but I don't think that the Plaintiff has admitted

8  that that inference is correct.  In fact, that's why we're here

9  is to determine whether or not, as you say, it is a logical

10  inference or is it not.

11         MR. THEIS:  Well, and I would again go back to those

12  two points.  That if someone has a card that says you can use

13  marijuana, the inference is that they are using marijuana.  If

14  someone tells the State of Nevada I'm going to use Nevada -- I

15  need to use marijuana in order to alleviate a condition that I

16  have under State law, if I -- if this person goes to the doctor

17  and says, I want to use marijuana, and the doctor prescribes

18  something that's submitted to the State of Nevada, all of

19  those -- those facts build to a very reasonable inference that

20  someone is violating Federal law.

21         THE COURT:  So you're saying, in the application

22  process to get the medical marijuana card, that she has to

23  aver, or sign, or in some way admit or declare that she plans

24  to use marijuana?

25         MR. THEIS:  Well, what the statute says is that you

1  need to have valid, written documentation from the physician

2  stating that, one, they've been diagnosed with a chronic and

3  debilitating medical condition, two, that the use of marijuana

4  may mitigate the symptoms and, three, that the attending

5  physician has explained the risks and benefits of the medical

6  use.  That's --

7          THE COURT:  So she's not declaring she's going to --

8          MR. THEIS:  Well, there's no other inference that can

9  be drawn from that.  If she submits -- she goes to her doctor

10 and asks, I have a debilitating condition, is marijuana

11 something I can use?  And the doctor says yes, and here are the

12 problems with using marijuana, here's this information, submit

13 it to the State, that's -- that's a pretty reasonable inference

14 to say that all of that leads to that one intends to use

15 marijuana to alleviate those conditions.  And that's --

16 that's -- you know --

17         THE COURT:  Are you aware -- and I realize you're from

18 D.C. so maybe you're not -- but in your research, have you

19 determined how long it takes to go through that process of

20 obtaining the medical marijuana card here?

21         MR. THEIS:  I don't, Your Honor.  I know that in this

22 particular case, I believe it was several months that she --

23 between the actual submission of the application to the time

24 that she received her -- and that it was a few months after

25 that that she then attempted to purchase the firearm in this

1  case.

2          THE COURT:  So the likelihood that she might be doing

3  this, getting the card just in case this -- whatever illness

4  she has becomes intolerable enough that she needs the

5  marijuana, that she's getting the card now before it's -- it's

6  too late, is that something that I should consider, or not?

7          MR. THEIS:  I don't think so, Your Honor.  Because the

8  statute makes clear that this is something that's about chronic

9  or debilitating condition.

10          THE COURT:  I mean, if her doctor told her, look, this

11  is only gonna get worse, it's not gonna get better.  I can give

12  you medications.  They're not -- they'll work at first but

13  they're not going to work long-term, and eventually, you're

14  going to need something else, do you want me to write you a

15  prescription for this?  And she says, well, I don't know.  And

16  he says, it's going to take you about seven months to get the

17  medical marijuana card so you may want to go ahead and do it

18  now just in case?

19          I mean, sometimes I go to the doctor, and the doctor

20  will give me a prescription for my son's sore throat and says,

21  if it doesn't get better in a few days, get the prescription

22  filled.  Doesn't mean I'm gonna.  I'm gonna wait and see if

23  that sore throat gets better on its own.  But if it doesn't,

24  I'm gonna get the prescription filled.

25          So is that the scenario -- you know, if that is a

1   scenario we have here, can I even assume that?  Does it matter?

2   Should I just confine myself to the fact that she got the card

3   regardless of how long it took to get the card?

4           MR. THEIS:  I think that's correct, your Honor.

5   Respectfully, all of those suggestions are not before -- this

6   is not pled in the Complaint.  What's pled in the Complaint is

7   she went to a physician, she got the -- submitted the paperwork

8   to the State and got the card.

9           There's nothing to suggest that she's -- nothing to

10  suggest that she's not using marijuana for any particular

11  purposes, nothing to suggest that she stopped using marijuana

12  the day she got the card.  All of -- all that we have is what,

13  again, in the Complaint.  And what is in the Complaint is

14  enough to dismiss the case because there's nothing there

15  that -- that would give her some sort of relief.

16          I would -- a couple of different just quick points

17  that we talked about that were also raised.  The equal

18  protection thing, I'll just very briefly address this.

19          There's this question about whether or not, so the

20  State of Nevada is a registered card, but other states -- that

21  also have recognized medical marijuana under State law, but

22  those states don't, you know, formally have registry cards, and

23  that therefore, they're somehow being treated differently.

24          What that claim really boils down to is that

25  individuals in the State of Nevada, it's more -- it's more

1  difficult for them to evade the law than other states.  Meaning

2  you still have to fill out a form and submit it to the ATF --

3  or submit it to the firearm seller when you're at the firearm

4  licensee.  The question is, are you an unlawful user of drugs,

5  that you have to answer yes or no.

6          And if someone doesn't have a medical marijuana --

7  they're supposed -- if they are an unlawful user of marijuana,

8  meaning if they use marijuana at all under Federal law, they're

9  required to answer yes to that.  But that doesn't -- just

10 because there's two different ways in which the seller can look

11 to -- there's two different ways in which the seller can make

12 the judgment about whether or not the person is an unlawful

13 user of marijuana, but that doesn't create an equal protection

14 claim.  They're treated equally, same.  Two -- the Federal law

15 applies equally to both of those categories and individuals.

16          THE COURT:  Did she fill out the form -- the

17 application form, and did she indicate on the application form

18 that she was a marijuana user?

19          MR. THEIS:  She left that question blank.  And I

20 believe in her Complaint she stated she didn't --

21          THE COURT:  So on that basis alone the seller could --

22          MR. THEIS:  Absolutely.

23          THE COURT:  -- deny her the firearm because --

24          MR. THEIS:  That's correct.

25          THE COURT:  -- it's an incomplete application, no?

1          MR. THEIS:  That's correct.

2          THE COURT:  She might have to apply again and actually

3 indicate on that application and have a successful application

4 before we get to this legal issue, it appears.  I -- I have to

5 think about that.

6          MR. THEIS:  That's correct, your Honor.  And that is

7 certainly -- you know, if she -- that's correct.  That is

8 another grounds or cause to dismiss this present Complaint.

9          THE COURT:  With leave to amend, perhaps.

10          MR. RAINEY:  If I may really quickly, Your Honor, on

11 that point?  If you read the Complaint, it actually says that

12 she went to fill out the question, and she was stopped by

13 Mr. Houser, and he testified that he stopped her from answering

14 the question saying, "You have to answer this yes because I

15 know you have that card."  And that was -- that's why she

16 didn't fill it out.

17          THE COURT:  But he hasn't testified because we had --

18 this is the first hearing I've had on this case --

19          MR. RAINEY:  His -- his --

20          THE COURT:  -- but he's got an Affidavit or a

21 declaration.

22          MR. RAINEY:  It's attached to the Complaint, yeah.

23 And it includes -- and it actually cites -- and so is the

24 application.  And he specifically says that, "I told her not to

25 fill that out because I knew that she was an unlawful user

1   because she had a card."

2            THE COURT:  Okay.  So not only is she prevented from

3   having a firearm, she's prevented from even applying for the

4   firearm.

5            MR. RAINEY:  Essentially, yes.

6            MR. THEIS:  That's -- that's not correct, Your Honor.

7   She could still --

8            THE COURT:  That's not what the ATF, I think, intends,

9   but perhaps it is.  I don't know.

10           MR. THEIS:  Well, no, no.  She can still -- she can

11   still apply for the -- for the -- for a firearm, absolutely.

12   There's -- but until she is --

13           THE COURT:  That's not what the seller understood the

14   letter to say.

15           MR. THEIS:  But the seller -- what the sell -- again,

16   I want -- to go back to --

17           THE COURT:  So was that a misunderstanding?  Should

18   the seller have allowed her to at least complete the

19   application and then make the determination whether or not to

20   approve it?

21           MR. THEIS:  Congress has determined -- and this is the

22   language of (d)(3) -- that, "Any person that the seller knows

23   or has reasonable cause to believe is an unlawful user of a

24   controlled substance, they can deny that person a firearm."

25           But they have almost -- they have wide, wide authority

1  to do so.  And so the question of whether or not she -- you

2  know, she -- he stopped her from answering that question or

3  whether -- that doesn't matter to the -- to the question before

4  the Court, and that is, does that statute, which says you can

5  use reasonable inferences to determine whether or not someone

6  is an unlawful user, that that's all that -- that matters for

7  this case.

8          And so, you know, the fact that -- because this

9  particular seller could use a wide variety of inferences to

10 determine whether or not the person has a reasonable cause to

11 believe that they're an unlawful -- that they're violating

12 Federal law by using marijuana.

13         And sellers, in fact, do that.  There's -- they can do

14 a wide -- they can make any sort of determinations they want in

15 that purchase process regarding this particular issue.

16         I want to just get back -- briefly back, again, to

17 this -- there's this question about -- you know, the Court

18 suggested that there's -- that somehow, because she is using

19 marijuana for medical purposes, or that individuals who use the

20 card -- or have the card use the marijuana for medical

21 purposes, that that's somehow different than other types of

22 marijuana users.

23         And I just want to drive home again that the Federal

24 Government is not taking that position.  The policy, based on

25 years of determinations and analysis of this, is the Federal

1  Government looks at marijuana use as exactly the same no matter

2  how one uses it or when one uses it.

3          And so -- but there's no diff -- all of the questions

4  about, well, she's somehow different, that's something that

5  she's welcome to petition Congress about and ask can we change

6  the law and -- or go to the Attorney General or the DEA and

7  say, move marijuana from Schedule I, but that's not the case

8  here.

9          All -- what has -- what has been the standing policy

10 is that marijuana cannot be used no matter what the case, even

11 marijuana for medical purposes.

12         So that's what -- I want to keep focusing in on that

13 particular issue because there's no distinguishing fact between

14 these two types of users of marijuana.

15         THE COURT:  So this medical marijuana card is only

16 good for a year, right?

17         MR. THEIS:  That's correct.

18         THE COURT:  And has to be renewed.  So if hers

19 expires, she doesn't renew it, she goes to the seller, she gets

20 a firearm, and the next day she reapplies for the medical

21 marijuana card, then she wouldn't be afoul of the seller's --

22 the seller wouldn't necessarily be in trouble, he wouldn't be

23 charged under the Gun Control Act for having sold a firearm,

24 but she would still be in the position of both possessing the

25 card and the firearm.  So you're saying then she would still be

1  subject to conviction?

2          MR. THEIS:  So in your hypothetical, the card has

3  expired --

4          THE COURT:  Mm-hmm.

5          MR. THEIS:  -- she no longer has the card, but she

6  goes and tries to purchase the firearm and is denied --

7          THE COURT:  No, no.

8          MR. THEIS:  -- or is not denied --

9          THE COURT:  Not denied.

10          MR. THEIS:  -- she gets the firearm.

11          THE COURT:  She gets the gun, yeah.

12          MR. THEIS:  So for the two different issues here.  The

13  first one is, on the seller's part, all that is incumbent upon

14  the seller is to determine whether or not there's a reasonable

15  basis to believe they're an unlawful user.

16          And hypothetically, you have the -- I don't -- there's

17  nothing that would suggest immediately, from the seller's point

18  of view, this person is a user of marijuana.  So that there's

19  nothing -- there's no issue there.

20          The question -- whether -- the second -- to your

21  second question about the former holder of the card.  All that

22  matters is whether --

23          THE COURT:  So if she was to do it in the reverse, she

24  gets the gun first, then she applies for the medical marijuana

25  card, but she at some point has both the medical marijuana card

1   and a firearm.  So is that the ATF's Open Letter's position

2   that now she is in violation of -- because she is an unlawful

3   user with a firearm?

4            MR. THEIS:  Well --

5            THE COURT:  Because the inference is that she is an

6   unlawful user if she has the medical marijuana card.

7            MR. THEIS:  I want to go back to the text of the

8   letter.  All that the letter is saying is -- first of all, the

9   letter -- the vast majority of the letter, all that it does is

10  restate the law.  It says this is what (d)(3) says.  You know

11  this.  This is what the regulation says.  You know this.

12           THE COURT:  Right.  It's addressed to the seller.

13           MR. THEIS:  And it's addressed to the seller, and it

14  specifically says, any piece of information that you have that

15  you can use is the possession of this card.  And if you know

16  that they have possession of a medical marijuana card, that

17  that's a piece of evidence that you can use to not allow them

18  to possess a firearm.

19           So -- so that that -- that's all that we're focused on

20  as far as the letter is concerned.  The letter is not

21  prescriptively giving any guidance to the Department of Justice

22  or to the public at large about who they're going to prosecute

23  based on possessions of a -- if you have -- if you're --

24           THE COURT:  But the purpose of the letter is to

25  satisfy the important Governmental interest, which is to

1  provide safety and prevent violent crimes --

2          MR. THEIS:  Correct.

3          THE COURT:  -- and prevent individuals who have both

4  firearms and a medical marijuana card from possessing both at

5  the same time.  A valid medical marijuana card, not an expired

6  one.  A valid medical marijuana card.

7          So if you can prevent someone from getting the gun,

8  the reason that you want to prevent them from getting the gun

9  is because, if they do get the gun, the Government believes

10 that they will have violated the statute by being an unlawful

11 user in possession, right?

12         MR. THEIS:  I think those are two different analyses.

13 The first is what the letter addresses, and that's only the

14 point of sale.  And that is the focus of the letter, and that

15 letter is fleshing out the -- how to deal with this -- this

16 language in (d)(3) that you have a reasonable cause to believe

17 they're violating the Federal law.

18         THE COURT:  And the letter doesn't address or even

19 intend to address the (g)(3) --

20         MR. THEIS:  Right.  Exactly.  That's not the point --

21         THE COURT:  -- language.  Okay.

22         MR. THEIS:  -- is that that's a separate analysis.  Is

23 if someone is violating (g)(3), you look to whether or not

24 they're an unlawful user of a controlled substance.  And

25 that's -- that's clear.  If you're possessing a gun at the same

time that you're an unlawful user of a controlled substance, then that -- that you fall within that category.

Now, I'm not hyp -- you know, making a hypothetical about this particular Plaintiff, but in the hypothetical that you set out. That's -- that's what --

THE COURT: Right. But you're saying the purpose of advising the seller about what -- how they interpret the language of (g)(3) is so that the seller doesn't inadvertently enable a person from violating the -- the other subsection. So I'm --

MR. THEIS: Yes. It could be read that way, but I think it's clearly focused on the seller's own concerns.

And what animated this, obviously, was seller is saying there are now these states that have passed marijuana laws that exempt one from prosecution. So what do we do with that fact? And so that's what this -- the letter was intended to -- to address was specifically at the point of sale, do you violate (d)(3) if you know that the person has a medical marijuana card?

And so what the -- again, what the ATF said, and which was completely reasonable and well within the scope of their interpretation of the statute and the regulation, is that this is clearly an inference that you can make. If they've averred to the State of Nevada that they are going to use marijuana and they have a card that allows them to use marijuana, that's

1 information that you could use in your determination of whether

2 or not this person is an unlawful user of a controlled

3 substance.

4          And so that -- again, that's what that -- the focus of

5 the letter is, and that's what -- that's why the letter was

6 sent, and that's why it addresses the issues of the sellers.

7          THE COURT:  All right.  Well, I appreciate both

8 counsel's comments.  I'm now inclined to look at this more as a

9 prior restraint issue that hasn't actually been claimed yet.

10 So I'm going to take it under advisement, I'm not going to rule

11 now.  I'm thinking perhaps this is a -- the situation where the

12 Government's Motion to Dismiss might be granted with leave to

13 amend, and perhaps it needs to be either pled completely

14 different or not.  But it does sound like we might be a little

15 bit short of an actual -- of the issue that the Plaintiff

16 intended to allege at this point because of the fact that

17 there's -- the four corners of the Complaint is all that I'm

18 looking at, and that's what I'm going base my determination on.

19          And just to -- I suppose just to get on the pulpit for

20 a second and to say, again -- which I -- I find myself saying

21 very often lately -- is that the Court's purpose is not to

22 render rulings based on passions or emotions or what I would do

23 if I were a legislator, because I'm not.  We do have a

24 legislative body, we do have administrative bodies.  They are

25 delegated from time to time with the authority to prescribe

1  rules and regulations so that they can effect the purpose of

2  the laws that are enacted by Congress and signed into law by

3  the President.

4           And so it's not for this Court to say at this point

5  whether or not the -- the theories of the Plaintiff I think is

6  asking the Court to rule on are correct or not because I

7  don't -- I'm not sure that they're properly before the Court at

8  this point, and it's a question of whether or not they're

9  constitutional, not whether or not I like it or don't like it.

10          So I think with that being said, it's -- it's probably

11  premature, the Complaint, but I will look into it.  I look

12  forward to the briefing as to the standing issue still, and

13  also as to whether or not there's a notice and comment that

14  needs to be provided as to this particular interpretation given

15  in the Open Letter or not, whether it's interpretative or

16  whether it's not.

17          Mike, do we have a briefing schedule?  Do we want to

18  just have a -- since we have dual Motions to Dismiss, I think

19  we can just do the one deadline for both to submit blind briefs

20  on the standing and issue, as well as the Nordyke issue.  And

21  then -- I don't know.  What do you all think you need?  Two

22  weeks or more?  Three weeks?  I don't want to cut you short.

23          MR. RAINEY:  Yeah.  You know, Your Honor, I -- I have

24  a prescheduled trip to Croatia to work from our Croatian office

25  for the next few weeks.  I'm not going to be back until

1  December 6th.  And I don't think there's a rush on this.  I'd

2  prefer it if we could have something maybe --

3        THE COURT:  I'm sure the Government doesn't have a

4  rush on this because, the way it stands now, Miss Wilson cannot

5  obtain a firearm.  So if anyone has a rush --

6        MR. RAINEY:  Yeah.

7        THE COURT:  -- my understanding is that Miss Wilson

8  would be the one who has --

9        MR. RAINEY:  Yeah.

10        THE COURT:  -- the most to lose from any delay.  So

11  it's up to you all.  I know you want to take your best

12  opportunity to explain everything to me that I need to know

13  rather than rush through it.

14        MR. RAINEY:  Right.  I would prefer it be sometime

15  like mid December, like December 15th, or even December -- you

16  know, before Christmas, but mid December would be nice.

17        THE COURT:  All right.  So Mike, something right

18  before Christmas.  So -- Mr. Theis, I'm just assuming, but I

19  should ask you, if that's all right with you, something mid

20  December before Christmas?

21        DEPUTY CLERK:  45 days, Your Honor, would be

22  December 17th, 2012.

23        THE COURT:  All right.  So December 17th at, we'll

24  say, 4:00 p.m. so that we can get it -- so 4:00 p.m. on

25  December 17th.  What day of the week is that?

1          DEPUTY CLERK:  That is a Monday, Your Honor.

2          THE COURT:  On a Monday.  So you even have an extra

3    weekend there to work on it.  So Monday, 4:00 p.m.  Go ahead

4    and --

5          I'm hoping that you'll just stick to -- you know, the

6    issues that I really need to know is the Nordyke, and the

7    standing issue, and whether or not it's an interpretative rule

8    or not that requires -- whether it requires comment and notice

9    or not.

10         MR. THEIS:  If I might briefly, Your Honor.  So I

11   understand the second point, the notice and comment.

12         The first comment as I understood was -- and correct

13   me if I'm wrong -- is that -- is whether there's standing to

14   bring (d)(3) because she is not a seller.  Is that what

15   we're -- the focus of the standing question is?  Or -- I'm

16   sorry.  Or in your order were you --

17         THE COURT:  That was the only one originally that I

18   thought was an issue.  Now I'm not so sure whether the --

19   there's -- there's a standing question because she didn't

20   complete the application.  But the representation is that she

21   was also prevented from completing the application.  So maybe

22   there's not a standing issue as to that regard, but there does

23   seem to be as to the seller's statute, that section.

24         MR. THEIS:  And the -- the Nordyke question?  So is

25   that a separate --

1          THE COURT:  So the Nordyke question is, is it a

2    rational basis?  Because that's what the En Banc Court decided,

3    and all the other cases seem to indicate that intermediate

4    scrutiny is correct, but we still have the Plaintiff asking for

5    the strict scrutiny.

6          So how do I reconcile all that, keeping in mind that

7    the other cases are not Ninth Circuit cases, and the Nordyke

8    case is a Ninth Circuit case, which has direct precedential

9    value on this Court.

10          MR. THEIS:  So those are the three issues that we

11   then -- as we understand -- okay.

12          THE COURT:  Yeah.  And if you think of something else,

13   file leave to amend -- I mean -- leave to supplement, rather,

14   if there's something else that you think I need to know that

15   we -- that aren't -- isn't contained in those three.

16          But I'd prefer if you can -- if you stick to those

17   three, keeping in mind, if you didn't put it in the Complaint,

18   it's probably not something that needs to be argued now.  And

19   if there is no Statute of Limitations issue, then you probably

20   can raise it later, or she could always apply again and see

21   what happens there.  That would be, I believe, a whole new

22   cause of action and then --

23          MR. RAINEY:  Your Honor, if I may.  Given the

24   discussion today, would it be appropriate for me to file a

25   Motion to Amend at this time?

1          THE COURT:  Say that again?

2          MR. RAINEY:  Would it appropriate for me to file a

3  Motion to Request Leave to Amend the Complaint at this time?

4          THE COURT:  Well, I was thinking about that, but you

5  hadn't made that motion.

6          MR. RAINEY:  I'd be happy to make that motion.

7          THE COURT:  You could make that motion.  I don't know

8  if I'll address it before or after the Motion to Dismiss.

9          MR. RAINEY:  Right.

10          THE COURT:  I usually do address both at the same

11  time --

12          MR. RAINEY:  Okay.

13          THE COURT:  -- but --

14          MR. RAINEY:  I will try to get you that motion right

15  away, and I'll also talked to my opposing counsel here and see

16  if there's any sort of stipulation --

17          THE COURT:  A stipulation is always --

18          MR. RAINEY:  -- or agreement that we can --

19          THE COURT:  -- something that's easier for me to sign

20  within a day or two, obviously, yes.

21          MR. RAINEY:  Okay.  And I guess if that happened, then

22  we would have to restart -- jump start everything over again.

23          THE COURT:  Okay.  If you want to address whether the

24  issue that she raises is even ripe or not, you can go ahead

25  and --

1          MR. RAINEY:  Ripeness.

2          THE COURT:  -- and address that, I suppose, since the

3    issue of her application is a ripeness question, but probably

4    can be addressed along with standing.

5          My understanding is that what she's asserting is that

6    she would have completed the application had she been allowed

7    to, but that the seller did not allow her to, and that there is

8    a declaration from the seller that justifies her position.

9          I can't tell you honestly right now, I can't remember

10   off the top of my head if it actually says that or not.  But --

11         So if you go back and look at it and that's not what

12   it says and you want to argue ripeness, obviously, that's

13   something that the Court would be interested in.  But I -- I'm

14   taking the Plaintiff at this point at his word as an Officer of

15   the Court that that's, in fact, what the declaration says.  If

16   you find otherwise, you probably want to address that.

17         Anything else that you think that we should be

18   thinking about addressing in these supplemental briefs or -- it

19   always helps to have these hearings to help us all focus on

20   what the actual issues are here.

21         So I'll just leave it at that, that those are the

22   issues to be addressed.  If you do find other issues that you

23   want to address, please file leave to supplement and address

24   separately, as a separate motion, and then address anything

25   else that's not included in those limitations.  All right.

TRANSCRIBED FROM DIGITAL RECORDING                73

1           MR. THEIS:  And that could be before we submit the --
2   move to file leave to supplement?
3           THE COURT:  You can just do it together.
4           MR. THEIS:  Right, okay.
5           THE COURT:  If I grant it then I consider it, so you
6   would actually brief it, as well.  Kind of like when you do a
7   Motion to Amend the Complaint and you have to attach the
8   Complaint as amended, as well, you know, do that.  That way
9   I'll have it all together.
10          MR. THEIS:  All right.
11          THE COURT:  Okay?  Any questions?  All right.  So
12  that's the date.  I didn't write it down.  Mike, I'm sorry,
13  could you repeat it?
14          DEPUTY CLERK:  It's December 17th, 2012 at 4:00 p.m.
15          THE COURT:  Okay.  So Monday, December 17th at
16  4:00 p.m., 2012, obviously.
17          If anyone has a need to extend that deadline for
18  whatever reason, and you can agree to a different deadline and
19  file a stipulation, I'll sign that.  It's --
20          You know, like I said, from my point of view, it's the
21  Plaintiff's concern to get this done quicker rather than later.
22  So if you all have a stipulation, I'll go ahead and sign that.
23          All right?  Thank you very much counsel for coming in
24  today.  Court's in recess.
25                  (Proceedings concluded at 10:43:20 a.m.)

ELLEN L. FORD - (702) 366-0635

1                    **C E R T I F I C A T E**

2

3   I, Ellen L. Ford, court-approved transcriber, certify that the

4   foregoing is a correct transcript transcribed from the official

5   electronic sound recording of the proceedings in the

6   above-entitled matter.

7

8    /s/ ELLEN L. FORD                     January 11, 2013
         Ellen L. Ford                          Date
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25