CHARLES C. RAINEY
Nevada Bar No. 10723
DC Bar No. 989628
chaz@raineydevine.com
JENNIFER J. HURLEY, ESQ.
Nevada Bar No. 11817
Jennifer@raineydevine.com
RAINEY DEVINE, ATTORNEYS AT LAW
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89052
Telephone: (702) 425.5100
Facsimile: (888) 867.5734

*Attorneys for Plaintiff Rowan S. Wilson*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| S. ROWAN WILSON, an individual, <br><br> Plaintiff, <br><br> v. <br><br> ERIC HOLDER, Attorney General of the United States, <u>et al.</u>, <br><br> Defendants. | Case No. 2:11-cv-1679-GMN-(PAL) <br><br> **RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT** <br><br> **HEARING REQUESTED** |

COMES NOW Plaintiff S. ROWAN WILSON (the "Plaintiff") by and through her counsel Charles C. Rainey of the THE LAW FIRM OF RAINEY DEVINE, and hereby submits her RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT.

/ / /

/ / /

/ / /

/ / /

/ / /

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1   This Response is made and based upon the Memorandum of Points and Authorities

2   attached hereto, the pleadings and papers on file herein, and any arguments to be had at the

3   hearing of this matter.

4   DATED: February 25, 2013.                    Respectfully submitted:

    THE LAW FIRM OF RAINEY DEVINE

5                                    By:   /s/ Chaz Rainey
                                           Charles C. Rainey, Esq.
6                                          Nevada Bar No. 10723
                                           chaz@raineydevine.com
7                                          Jennifer J. Hurley, Esq.
                                           Nevada Bar No. 11817
8                                          Jennifer@raineydevine.com
                                           8915 South Pecos Road, Ste. 20A
9                                          Henderson, Nevada 89052
                                           Telephone:  +1.702.425.5100
10                                         Facsimile:  +1.888.867.5734
                                           *Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

# **TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES ..................................................................................................i

INTRODUCTION .............................................................................................................1

STATEMENT OF FACTS ................................................................................................1

PROCEDURAL HISTORY ..............................................................................................2

LEGAL STANDARDS ....................................................................................................2

LEGAL ARGUMENT3

I.    DEFENDANTS' MOTION TO DISMISS UNDER F.R.C.P. 12(b)(1)
      MUST BE DENIED BECAUSE THE PLAINTIFF HAS ARTICLE III
      STANDING ON EACH OF HER CLAIMS. ...............................................4

      A.  Plaintiff has Suffered, and is Continuing to Suffer, an "Injury in Fact" ................5

      B.  Plaintiff Meets the Traceability Element as Her Harm is Not "Self-Inflicted" .......7

      C.  Plaintiff's Harm Will be Redressed by the Relief Requested ................................8

II.   DEFENDANTS VIOLATED PLAINTIFF'S SECOND AMENDMENT
      RIGHTS .......................................................................................................9

      A.  The ATF's Issuance of the Open Letter Violated the APA Because it
          Made Substantive Changes to the Law Without the Requisite Notice and
          Comment Period.. ............................................................................................9

      B.  If the ATF's Letter Was Merely Interpreting Existing Law, Then the
          Underlying Law Violates the Second Amendment. ...........................................13

          1.  The ATF's Overbroad Interpretation of 18 U.S.C. §§ 922(d)(3)
              and (g)(3) Unconstitutionally Violates Second Amendment
              Rights, Failing Under Both Strict Scrutiny and Intermediate
              Scrutiny Analysis ......................................................................................14

              a.   The Applicable Standard of Scrutiny for Second Amendment
                   cases is Unclear and Unsettled .............................................................15

              b.   The ATF's Interpretation of §§ 922(d)(3) and (g)(3) Fails
                   Under a Strict Scrutiny Analysis Because it is Not Narrowly
                   Tailored to Satisfy a Compelling Government Interest and
                   the Government has Far Less Restrictive Means of Achieving
                   its Goals ...............................................................................................17

              c.   Even Under an Intermediate Scrutiny Analysis, 18 U.S.C. §§
                   922(d)(3) and (g)(3) is Unconstitutional Because the
                   Expansive Scope of the Law, Covering More than Half of the
                   U.S. Population, is Not Substantially Related to Any
                   Important Government Interest ..............................................................19

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

　　　　d.　*United States v. Dugan* does Not Foreclose a Constitutional
　　　　　　Challenge to 18 U.S.C §§ 922(d)(3) and (g)(3) ................................22

III.　DEFENDANTS　VIOLATED　PLAINTIFF'S　FIRST　AMENDMENT
　　　RIGHTS ...............................................................................................................23

　　A.　The Constitutionality of the ATF's Enforcement Actions, as Applied
　　　　to the First Amendment, Should be Examined Under a Strict Scrutiny
　　　　Standard. ...................................................................................................24

　　B.　The ATF's Enforcement Actions, as Set Forth in the Open Letter, Fail
　　　　to Meet Strict Scrutiny Standards ............................................................26

　　C.　Even Examined Under the Less Restrictive O'Brien Test, the ATF's
　　　　Universal Ban on the Sale of Firearms to Registry Cardholders
　　　　Amounts to an Unconstitutional Restriction on Free Speech. ...............27

IV.　DEFENDANTS　VIOLATED　PLAINTIFF'S　RIGHT　TO　SUBSTANTIVE
　　　DUE PROCESS ...................................................................................................28

V.　DEFENDANTS　VIOLATED　PLAINTIFF'S　RIGHT　OT　PROCEDURAL
　　　DUE PROCESS ...................................................................................................30

VI.　DEFENDANTS　VIOLATED　PLAINTIFF'S　RIGHT　TO　EQUAL
　　　PROTECTION ....................................................................................................32

VII.　PLAINTIFF DOES NOT SEEK MONETARY DAMAGES AGAINST THE
　　　UNITED STATES, OTHER THAN COSTS AND FEES ALLOWED, BUT
　　　INSTEAD SEEKS DECLARATORY AND INJUNCTIVE RELEIF ......................34

CONCLUSION .......................................................................................................................35

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

# TABLE OF AUTHORITIES

**U.S. SUPREME COURT CASES**                                                      PAGE

*Albright v. Oliver*, 510 U.S. 266 (1994) ...........................................................29

*Allen v. Wright*, 468 U.S. 737, 751 (1984) ......................................................4

*Armstrong v. Manzo*, 380 U.S. 545 (1965)....................................................31

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986).....................................3

*Bolling v. Sharpe*, 347 U.S. 497 (1954)...........................................................32

*Celotex Corp. v. Catrett*, 47 U.S. 317 (1986) ................................................3

*Central Hudson Gas v. Pub. Serv. Comm'n of N.Y.,* 447 U.S. 557(1980)....................19

*City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985) .................32

*Clark v. Jeter*, 486 U.S. 456 (1988)...............................................................16

*Consolidated Edison Co. v. Public Service Comm'n of N.Y.,* 447 U.S. 530 (1980). ............19

*Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261 (1990) ...........30

*Dickerson v. New Banner, Inc.,* 460 U.S. 103 (1983). ...................................18

*District of Columbia v. Heller*, 128 S.Ct. 2783 (2008)....................................16

*Ex Parte Wall*, 107 U.S. 265 (1883)...............................................................30

*Goldberg v. Kelly*, 397 U.S. 254 (1970)..........................................................31

*Graham v. Richardson Sailer v. Leger*, 403 U.S. 365 (1971) ......................16

*Grannis v. Ordean*, 234 U.S. 385 (1914). ......................................................31

*Griswold v. Connecticut*, 381 U.S. 479 (1965).........................................17, 29

*Hein v. Freedom From Religion Found.*, 551 U.S. 587 (2007)........................4

*Joint Anti-Fascist Refugee Comm. V. McGrath*, 341 U.S. 123 (1951). .............30

*Kramer v. Union Free School District*, 395 U. S. 621 (1969)...........................17

*Lawrence v. Texas*, 539 U.S. 558 (2003)........................................................29

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-1, 112 S.Ct. 2130 (1992).....................5, 7, 9

*Margan v. United States*, 304 U.S. 1 (1938). ................................................31

*Maryland Casualty Co. v. Pacific Coal and Oil Co.*, 312 U.S. 270 (1941) ...................4

*McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010) ....................................16

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

*Meyer v. Nebraska*, 262 U.S. 390 (1923). ...................................................29

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) .....................................................32

*Opp Cotton Mills v. Administrator*, 312 U.S. 126 (1941). ...........................31

*Pierce v. Society of Sisters*, 268 U.S. 510 (1925) ......................................29

*Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992). .................16, 29

*Poe v. Ullman*, 367 U.S. 497 (1961) ..........................................................29

*Robertson v. Baldwin*, 165 U. S. 275 (1897) ............................................16

*Roe v. Wade*, 410 U.S. 113 (1973) ......................................................*passim*

*Schneider v. State*, 308 U.S. 147 (1939). ..................................................17

*Secretary of State v. Hoseph H. Munson Co.*, 467 U.S. 947 (1984).................5

*Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87 (1995)......................10

*Shelton v. Tucker Carr v. Young*, 364 U.S. 479 (1960)...............................17

*Sprint Commc'ns Co. v. APCC Servs., Inc.* 554 U.S. 269 .....................5, 7, 9

*United States v. Virginia*, 518 U.S. 515 (1996) .........................................16

*Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988); ..............5

*Wong Yang Sung v. McGrath*, 339 U.S. 33 (1950)....................................31

**FEDERAL CIRCUIT COURT CASES**

*American Mining Congress v. Mine Safety & Health Administration*, 995 F.2d 1106 (D.C.Cir.1993) ...........................................................................10, 11

*Appalachian Power Co v. Envtl. Protection Agency*, 208 F.3d 1015 (D.C. Cir., 2000) ..............13

*Association of Nat. Advertisers, Inc. v. Lungren*, 44 F.3d 726 (9th Cir. 1994) ...........................19

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011)........................4

*Chief Prob. Officers of California v. Shalala,* 118 F.3d 1327, 1329 (9th Cir.1997)...................10

*Compassion in Dying v. State of Washington*, 79 F.3d 790 (9th Cir. 1996)........................29

*Coral Const. Co. v. King County*, 941 F.2d 910 (9th Cir. 1991).........................19

*Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008)...........................4

*Erringer v. Thompson*, 371 F.3d 625 (9th Cir. 2004)........................10

*Epstein v. Washington Energy Co.*, 83 F.3d 1136 (9th Cir. 1999). ........................3

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

*Hemp Industries Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082 (9th Cir., 2003). .......... 10, 11

*Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037 (9th Cir. 2002). ................................................. 32

*Jacobs v. Clark County School Dist.,* 526 F.3d 419 (9th Cir. 2008). ....................................... 19, 24

*San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121 (9th Cir. 1996) ................................. 5

*Sequoia Orange Co. v. Yeutter,* 973 F.2d 752 (9th Cir.1992) ...................................................... 10

*United States v. Carter*, 669 F.3d 411 (4th Cir. 2012) ................................................................. 16

*United States v. Dugan*, 657 F.3d 998 (9th Cir 2011). ....................................................... *passim*

*United States v. Marzzarella*, 614 F.3d 85 (3rd Cir. 2010) .......................................................... 16

*United States v. Seay*, 620 F.3d 919 (8th Cir 2010) ................................................................... 22

*United States. v Yancey*, 621 F.3d 681 (7th Cir 2010). ..................................................... *passim*

**FEDERAL DISTRICT COURT CASES**

*Mirin v. Justices of Supreme Court of Nev*., 415 F.Supp. 1178, 1195 (D. Nev. 1976) .............. 3, 4

**UNITED STATES CONSTITUTION**

U.S. Const. Amend. I ................................................................................................. *passim*

U.S. Const. Amend. II ............................................................................................... *passim*

U.S. Const. Amend. V ............................................................................................... *passim*

**STATUTES**

5 U.S.C § 553 ................................................................................................................ 10

5 U.S.C § 702 ................................................................................................................ 34

18 U.S.C. § 922(g)(3). ............................................................................................... *passim*

18 U.S.C. § 922(d)(3). ............................................................................................... *passim*

21 U.S.C. § 802 ....................................................................................................... 11, 14

28 U.S.C. § 2412 ........................................................................................................... 34

**FEDERAL RULES AND REGULATIONS**

27 C.F.R. § 478.11 ................................................................................................... *passim*

Fed. R. Civ. Pro. 12(d) ..................................................................................................... 3

Fed. R. Civ. Pro. 12(b)(1) ............................................................................................ 3, 4, 5

Fed. R. Civ. Pro. 12(b)(6) .......................................................................................... *passim*

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

Fed. R. Civ. Pro. 56 ..................................................................................................3

**MISCELLANEOUS**

2010 United States Health Report, as compiled by the National Center for Health
Statistics (http://www.cdc.gov/nchs/data/hus/hus10.pdf)..........................................14

National Institute on Alcohol Abuse and Alcoholism No. 38 October 1997, available at
http://pubs.niaaa.nih.gov/publications/aa38.htm  .......................................................20

National Survey on Drug Use and Health, 2010, Substance Abuse & Mental Health
Death Archive, available at http://www.icpsr.umich.edu/cgi-
bin/file?comp=none&study=32722&ds=1&file_id=1094507 .................................14, 21

Order List: 565 U.S. (http://www.supremecourt.gov/orders/courtorders/010912zor.pdf)...........13

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

**INTRODUCTION**

Defendants' Motion to Dismiss attempts to bury the fundamental and meritorious issues of this case inside a myriad of irrelevant facts and arguments. Plaintiff does not dispute that the possession of marijuana remains prohibited under federal law despite a growing number of states legalizing the possession and use of marijuana for the treatment of medical conditions. Nor is Plaintiff, by this case, attempting to claim that Defendants may not advise federal firearms licensees ("FFLs") that possession of marijuana remains illegal under federal law. Instead, Plaintiff is asserting that the Defendants' explicit direction to FFLs that they "may not transfer firearms or ammunition to [a] person" who "is in possession of a card authorizing the possession and use of marijuana under State law," is unconstitutional. *See* First Amended Complaint ("FAC"), Dkt. No. 34, Ex. 2-B. The mere fact that a person possesses a document, validly issued under the laws of his or her state and authorizing some act not compatible with federal law, without more, cannot constitute grounds for the deprivation of fundamental constitutional rights.

The Defendants have deprived the Plaintiff of her fundamental constitutional rights. Through 18 U.S.C. §§ 992(d)(3), 922(g)(3), and their Open Letter to all FFLs, the Defendants have deprived the Plaintiff of her rights under the First, Second, and Fifth Amendments. Dismissal of Plaintiff's claims is unwarranted as Plaintiff properly alleges each required element of her claims. Defendants' Motion to Dismiss sets forth virtually no arguments concerning Plaintiff's alleged failure to state a claim for which relief can be granted, but instead argues almost exclusively that summary judgment is appropriate because, the Defendants contend, Plaintiff's claims fail as a matter of law under *United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011). *Dugan*, however, is factually distinguishable from the present case in a number of important respects, which Defendants fail to address. Furthermore, summary judgment is inappropriate as genuine issues of fact remain in dispute regarding Plaintiff's claims. Therefore, Defendants' Motion must be denied and this case must be allowed to move forward.

**STATEMENT OF FACTS**

In connection with their Motion to Dismiss, Defendants' filed a Statement of Undisputed Facts (the "Statement"). Dkt. No. 37-2. Plaintiff does not dispute the Statement to the extent that

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

it sets forth the laws governing this dispute; however, Plaintiff does dispute several other items set forth in the Statement. First, Paragraph 4 of the Statement alleges that "marijuana cannot be legally prescribed for medical use." *Id*. at p. 3, line 3. Plaintiff agrees that marijuana cannot be legal prescribed for medical use under federal law but asserts that marijuana can be legally prescribed under many state laws. Second, Plaintiff disagrees with Paragraph 5 of the Statement to the extent that it implies Nevada's statutes regarding medical marijuana only apply when the Registry Cardholder actually "engages in the medical use of marijuana." *Id*. at p. 3, lines 8-10. There is no requirement in the Nevada statutes that a Registry Cardholder ever use or possess marijuana; nor is there any determination that a Cardholder will in fact obtain and use marijuana.

Additionally, further factual disputes exist in this matter. Specifically, factual disputes exist as to the Defendants' intent in issuing the Open Letter and Plaintiff's intent in obtaining a Registry Card. Plaintiff contends that by issuing the Open Letter, Defendants intended to curtail certain speech and to damage the political movement regarding the legalization of medical marijuana. Defendants' contend that there was no such intent, alleging instead that the sole purpose in issuing the Open Letter was preventing the threat of gun crime caused by persons possessing Registry Cards. There is further dispute as to Plaintiff's intent in obtaining her Registry Card. Plaintiff alleges that she obtained the Registry Card as part of her advocacy for the use of medical marijuana, while Defendants claim that Plaintiff obtained the Registry Card solely for medical reasons.

## PROCEDURAL HISTORY

Plaintiff does not dispute the procedural history set forth in Defendants' Motion. In regards to the four issues which the Court requested be briefed by the parties during the November 2, 2012 hearing, Plaintiff addresses such issues as follows: the level of scrutiny for Second Amendment challenges is addressed at page 16; whether the Open Letter is legislative or interpretive is addressed at page 11; whether Plaintiff has standing to challenge 922(d)(3) is addressed at page 4, note 1; and whether Plaintiff's claim is "ripe" is addressed at page 4, note 1.

## LEGAL STANDARDS

Defendants' Motion purports to be a Motion to Dismiss made pursuant to F.R.C.P.

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-2-

12(b)(1) and 12(b)(6) and, in the alternative, a Motion for Summary Judgment made pursuant to F.R.C.P. 56. Rules 12(b)(1) and 12(b)(6) provide, respectively, that defenses of lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted can be raised by motion before a responsive pleading is filed. Fed. R. Civ. Pro. 12(b). In considering a motion under Rule 12(b)(1) or 12(b)(6), the Court must accept all factual allegations as true and draw all reasonable inferences in favor of plaintiff. *Mirin v. Justices of Supreme Court of Nev*., 415 F.Supp. 1178, 1195 (D. Nev. 1976); *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1999). Additionally, "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. Pro. 12(d).

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). Material facts are only those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247, 106 S.Ct. 2505 (1986). The moving party bears the burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 47 U.S. 317, 325 106 S.Ct. 2548 (1986).

Here, Defendants' Motion should be considered as a motion for summary judgment rather than a motion to dismiss under Rule 12(b)(6) because the Defendants rely on matters outside of the FAC throughout the Motion. These extrinsic matters cannot be separated from the Motion so as to allow the Court to consider the Motion under Rule 12(b)(6). Defendants' Motion only seeks dismissal under Rule 12(b)(1) in that it claims Plaintiff lacks standing under Article III. As such, the Defendants' Motion is, for all intents and purposes, a motion for summary judgment and not a motion for dismissal under Rule 12(b)(6).

## **LEGAL ARGUMENT**

Defendants' Motion must be denied on each and every ground set forth therein. First, Plaintiff has clearly satisfied the requirement to establish Article III standing. Second, Defendants' fail to establish that there are no genuine disputes of material fact and that they are entitled to summary judgment as a matter of law. Defendants are not entitled to summary

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

judgment because they have violated Plaintiff's Second and Fifth Amendment rights and, at the very least, a question of fact exists as to whether Defendants have violated Plaintiff's First Amendment rights.

## I. DEFENDANTS' MOTION TO DISMISS UNDER F.R.C.P. 12(b)(1) MUST BE DENIED BECAUSE PLAINTIFF HAS STANDING TO CHALLENGE THE STATUTES, THE REGULATION, AND THE OPEN LETTER.

Plaintiff possesses standing under Article III because she has suffered an injury in fact that is fairly traceable to the Defendants' conduct and likely to be redressed by the relief requested in this case.[1] In order to satisfy the requirement of standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Hein v. Freedom From Religion Found.*, 551 U.S. 587, 127 S.Ct. 2553 (2007), *quoting Allen v. Wright*, 468 U.S. 737, 751 (1984).  The question of standing is "a factual one in which we view the facts pled in the light most favorable to Plaintiff." *Mirin v. Justices of Supreme Court of Nev.*, 415 F.Supp. 1178, 1195 (D. Nev. 1976), citing *Maryland Casualty Co. v. Pacific Coal and Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941).  Furthermore, the Supreme Court has instructed lower courts to take a broad view of constitutional standing in civil rights case, especially where private enforcement suits are the primary method of obtaining redress. *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209, 93 S.Ct. 364 (1972); *see Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 (9th Cir. 2008); *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011).

Here, the facts pled, when viewed in the light most favorable to the Plaintiff and in light of the broad view of standing dictated by the Supreme Court, demonstrate that Plaintiff clearly has standing under Article III. As discussed in further detail below, Plaintiff suffered an injury through the Defendants' implementation of the policy set forth in the Open Letter, which

---

[1] At the November 2, 2012 hearing, the Court asked the parties to brief whether Plaintiff has standing to challenge 18 U.S.C. § 922(d)(3). In their Motion to Dismiss, Defendants admit that if Plaintiff has standing under § 922(g)(3), she also has standing under § 922(d)(3). DEF MOTION TO DISMISS, p. 11, n. 9, citing *Dearth v. Holder*, 641 F.3d 499, 500-03 (D.C. Cir. 2011). For the reasons set forth in this section, Plaintiff has standing under § 922(g)(3) and thus also has standing to challenge § 922(d)(3). Defendants have also admitted that this case is ripe. DEF MOTION TO DISMISS, p. 11, n. 9. Plaintiff agrees with the Defendants assertion that there is no ripeness problem in this case regardless of any incomplete information on Form 4473 because Mr. Hauseur denied the Plaintiff's purchase of the firearm based on his knowledge that Plaintiff possessed a Registry Card and the explicit instruction in the Open Letter than he was prohibited from transferring a firearm to anyone he knew possessed a Registry Card.

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1   conclusively and irrefutably labels Plaintiff as an unlawful user of a controlled substance and

2   thereby prohibits Plaintiff from exercising her Second Amendment right to purchase and possess

3   a handgun. In the same respect, Plaintiff also suffered injury to her First Amendment right to free

4   speech and Fifth Amendment right to due process. These injuries are directly traceable to the

5   Defendants' actions complained of in the FAC and can only be redressed by the granting of the

6   relief requested by Plaintiff. Therefore, Defendants' Motion to Dismiss under Rule 12(b)(1) must

7   be denied as Plaintiff has Article III standing.

8          **A.  Plaintiff has Suffered, and is Continuing to Suffer, an "Injury in Fact."**

9          The first element of Article III standing is "an injury in fact (i.e. a 'concrete and

10  particularized' invasion of a 'legally protected interest.'" *Sprint Commc'ns Co. v. APCC Servs.,*

11  *Inc.* 554 U.S. 269, 273, 128 S.Ct. 2531, *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555,

12  560-1, 112 S.Ct. 2130 (1992). The Supreme Court has recognized that in First Amendment

13  challenges, "chilling effect [is] an adequate injury for establishing standing because the alleged

14  danger . . . is, in large measure, one of self-censorship; a harm that can be realized even without

15  actual prosecution." *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1129, *quoting*

16  *Virginia v. American Booksellers Ass'n, Inc*., 484 U.S. 383, 393, 108S.Ct. 636, 643 (1988)

17  (internal quotations omitted); *see also Secretary of State v. Hoseph H. Munson Co*., 467 U.S.

18  947, 956, 104 S.Ct. 2839, 2847 (1984) ("when there is a danger of chilling free speech, the

19  concern that constitutional adjudication be avoided whenever possible may be outweighed by

20  society's interest in having the statutes challenged").

21         As a preliminary matter, Defendants' argument that Plaintiff is suffering no injury

22  because her Registry Card expired is cut off by the fact that Plaintiff did renew her Registry Card

23  and currently possesses an unexpired Registry Card. *See* **RENEWED REGISTRY CARD**,

24  attached hereto as Exhibit "**A**" and incorporated herein by reference. The Registry Card attached

25  to the FAC is the card Plaintiff possessed when she was initially denied her right to purchase a

26  handgun, which was valid at the time of the attempted purchase and at the time of the filing of

27

28

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

the Complaint.[2] Plaintiff has at all times relevant hereto possessed a valid and unexpired Registry Card and will continue to possess such a Card. The fact that the unexpired Registry Card was not attached to the FAC does not mean that the Plaintiff has failed to allege an injury in fact.

Even if Plaintiff's Registry Card had expired, she would still have sufficiently alleged an injury in fact. Where an issue is "capable of repetition, but evading review," standing exists even if the injury may be seen as not continuing at some point in the case. *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705 (1973). In *Roe v. Wade*, a pregnant woman, Roe, challenged the constitutionality of Texas laws criminalizing abortion. *Id.* at 120. In both the district court and on appeal it was argued that Roe did not have standing because her pregnancy had naturally ended before the case was decided. On appeal, the Supreme Court upheld the district court's finding that Roe had standing because Roe could potentially become pregnant again; thus the same issue would be presented again but, because the normal human gestation period is so short, the pregnancy would again end before the appellate process could be completed. *Id.* at 124-25.

Here, even if Plaintiff had not maintained a valid Registry Card, the harm suffered by Plaintiff is capable of repetition but evading review. Under Nevada law, a Registry Card is only valid for a period of one year, which is a much shorter time period than what is typically required to litigate a case of this nature. N.R.S. 453A.220(4). Even if Plaintiff let her Registry Card expire, she would still have an injury in fact giving rise to standing because she could potentially obtain a new Registry Card in the future and again be denied the purchase of a firearm as a result of her possession of the Card. Under *Roe*, the mere possibility that the harm will continue but

---

[2] The card was valid until March 10, 2012. The purchase was attempted on October 4, 2011 and the Complaint was filed on October 18, 2011. While not applicable to the facts of the present case, Defendants argue that if an FFL used an expired registration card to deny the purchase of a firearm, "Plaintiff's injury would stem from the actions of the FFL, not the Government." However, the Defendants' Open Letter does not at any point inform the FFL that it may not use an expired registration card to deny the transfer of a handgun. In fact, the Open Letter actually states that "if you are aware that the potential transferee is in possession of a card authorizing the possession and use of marijuana under State law . . . the person is an unlawful user of a controlled substance . . . [and] you may not transfer firearms or ammunition to the person." A reasonable FFL would take the Open Letter to mean that it cannot transfer a firearm or ammunition to a person who possesses a Registry Card, regardless of whether the card has recently expired. This seems especially clear in light of the definition of "unlawful user" set forth in 27 CFR 478.11, which provides that the use giving rise to a determination that a person is a current unlawful user of a controlled substance "is not limited to . . . use . . . within a matter of days or weeks before, but rather . . . use [that] has occurred recently enough to indicate that the individual is actively engaged in such conduct . . . [and an] inference of current use may be drawn from evidence of a recent use or possession . . . or a pattern of use or possession that reasonably covers the present time." Thus, FFLs would understand the Open Letter and regulation to mean that they could not transfer a firearm or ammunition to someone who they were aware possessed a recently expired Registry Card.

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1    evade review is sufficient to satisfy the "injury in fact" element of standing.

2            Plaintiff was and continues to be denied her right to purchase a firearm as a result of her

3    possession of a Registry Card. Through the Open Letter, Defendants have deemed the possession

4    of a Registry Card to be conclusive and irrefutable evidence that the holder is an "unlawful user"

5    of marijuana and have directed all FFLs not to sell firearms to anyone possessing such a card.

6    Plaintiff has been injured by the denial of her Second Amendment right to purchase and possess

7    a handgun. Furthermore, Plaintiff has experienced a chilling effect on her free speech as a result

8    of the Defendants' actions. Specifically, Plaintiff's possession of the Registry Card is a form of

9    protected speech, the exercise of which has led to the denial of her Second Amendment rights.

10   The harm suffered by Plaintiff is a concrete and particularized invasion of a legally protected

11   interest as Defendants deprived Plaintiff of her constitutional rights based solely on the fact that

12   she possesses a Registry Card. Moreover, the harm suffered by Plaintiff is capable of repetition

13   but evading review. As such, the Court should find that Plaintiff has alleged an injury in fact that

14   will continue regardless of whether Plaintiff maintains her Registry Card.

15           **B.  Plaintiff Meets the Traceability Element as Her Harm is Not "Self-Inflicted."**

16           The second element of standing is that there be "a 'fairly . . . traceable' connection

17   between the alleged injury in fact and the alleged conduct of the defendant." *Sprint Commc'ns*

18   *Co. v. APCC Servs., Inc.* 554 U.S. 269, 273, 128 S.Ct. 2531, *quoting Lujan v. Defenders of*

19   *Wildlife*, 504 U.S. 555, 560-1, 112 S.Ct. 2130 (1992).

20           Here, a fairly traceable connection clearly exists between the Plaintiff's alleged injury in

21   fact and the alleged conduct of the Defendants. By issuing the Open Letter, Defendants deprived

22   Plaintiff of her Second Amendment right to acquire a firearm and other related constitutional

23   rights. Defendants argue that Plaintiff's injury does not stem from their actions but rather from

24   Plaintiff's own decision making, i.e., Plaintiff's decision to obtain a Registry Card in accordance

25   with the rights provided by her State's constitution and statutes. Defendant's argument is

26   analogous to arguing that a pregnant woman may not challenge laws restricting access to

27   abortions because the woman's own decision making is what caused her to become pregnant.

28   Defendants' allegation that Plaintiff can simply chose an option that causes her no harm by

RAINEY  /  DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

relinquishing her Registry Card fails in two respects: (1) it fails to address the harm that would then be caused to Plaintiff by the loss of her state law rights and (2) it fails to address the very real possibility that even if she relinquished her Registry Card, the Defendants' actions would still prevent Plaintiff from obtaining a firearm.[3]

Through their actions, Defendants are attempting to force Plaintiff to choose between her state law right to possess a Registry Card and her federal right to possess a firearm. However, there is no actual conflict between these rights as there is no federal law making it illegal to possess a Registry Card. The only conflict between the rights is the Defendants' unilateral determination, as set forth in the Open Letter, that the mere possession of a Registry Card constitutes conclusive and irrefutable evidence of unlawful drug use. Defendants completely foreclose the possibility that persons may possess a Registry Card and yet not use or possess marijuana, claiming that these persons would be "holding cards that serve them no purpose." DEF MOTION TO DISMISS at p. 13, lines 19-20. Defendants' opinion that no one would possess a Registry Card without also consistently invoking the corresponding right to possess and use marijuana is not based in reality and cannot be used as a grounds to deny the Plaintiff her Constitutional rights.

Furthermore, Defendants' argument that Plaintiff's injury is self-inflicted, and therefore not traceable to Defendants, is disingenuous. Initially, the "self-inflicted" harm standard set forth in Defendants' Motion is found almost exclusively in cases dealing with disputes between two states.[4] Defendants also rely on *United States v. Yancey*, 621 F.3d 681, 682 (7th Cir. 2010). However, *Yancey* is inapplicable because Yancey actually was in possession of marijuana and confessed that he had smoked marijuana daily for about 2 years.[5] In the present case, Plaintiff's harm is clearly and directly traceable to the Defendants' actions.

**C. Plaintiff's Harm Will Be Redressed by the Relief Requested.**

The third element of standing is whether it is "'likely' and not 'merely speculative' that

---

[3] As set forth in Note 2 above, it appears that if Plaintiff relinquished her Registry Card, she would still be denied her right to purchase and possess a handgun based on the definition of an "unlawful user" set forth in 27 C.F.R. 478.11 and the policy set forth in the Open Letter.
[4] *See e.g.*, *Pennsylvania v. New Jersey*, 426 U.S. 660, 96 S.Ct. 2333.
[5] Moreover, *Yancey* did not even consider the issue of whether Yancey had standing to challenge 922(g)(3).

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit." *Sprint Commc'ns Co. v. APCC Servs., Inc.* 554 U.S. 269, 273, 128 S.Ct. 2531, *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-1, 112 S.Ct. 2130 (1992). Defendants' assertion that Plaintiff does not satisfy the redressability element of standing is without merit. The redressability element only requires that it is 'likely' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit. The remedy sought by Plaintiff in this matter is to declare 922(d)(3), 922(g)(3), 27 CFR 478.11, and the Open Letter unconstitutional as they violate the First Amendment, Second Amendment, and Fifth Amendment. If they are declared unconstitutional, Plaintiff will be able to purchase and possess a firearm.

Defendants argue that even if 922(d)(3), 922(g)(3), 27 CFR 478.11, and the Open Letter were all declared unconstitutional, Plaintiff still would be unable to purchase a handgun under Nevada law because they contend Plaintiff would still be an unlawful user of, or addicted to, a controlled substance. This argument is fundamentally flawed and, indeed, evidences the same flaw running through most of Defendants' arguments – that is, the unilateral, conclusive, and irrefutable determination that Plaintiff is an unlawful user of a controlled substance based solely on her possession of a card that gives her a right to possess and use marijuana if she chooses. There is no provision of Nevada law that deems Plaintiff an unlawful user of or addicted to a controlled substance based on her possession of a Registry Card. The Nevada laws only affect Plaintiff to the extent that they incorporate the federal laws challenged by Plaintiff in this suit. If the federal laws were removed, Nevada laws would not pose a barrier to Plaintiff obtaining and possessing a handgun.

## II.   DEFENDANTS VIOLATED PLAINTIFF'S SECOND AMENDMENT RIGHTS.

### A.   The ATF's Issuance of the Open Letter Violated the APA, Because it Made Substantive Changes to the Law Without the Requisite Notice and Comment Period.

The ATF's Issuance of the Open Letter was an unlawful abuse of authority, given that the Letter made substantive changes to existing law and did so without the requisite period for notice and comment, as required under the Administrative Procedure Act (the "APA"). The APA

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

requires agencies to advise the public through a notice in the Federal Register of the terms or substance of a proposed substantive rule, allowing the public a period to comment. *See* 5 U.S.C. § 553(b) and (c). This is termed the "notice and comment" requirement of the APA. "Th[e] requirement is designed to give interested persons, through written submissions and oral presentations, an opportunity to participate in the rulemaking process." *Chief Prob. Officers of California v. Shalala* ["*Probation Officers*"], 118 F.3d 1327, 1329 (9th Cir.1997). Generally, "[t]he procedural safeguards of the APA help ensure that government agencies are accountable and their decisions are reasoned." *Sequoia Orange Co. v. Yeutter,* 973 F.2d 752, 758 (9th Cir.1992); *Erringer v. Thompson*, 371 F.3d 625 at 629-630.  The only instances where agency rulings don't require notice and an opportunity for public comment are where such rulings are merely "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(3)(A); *see also Erringer*, 371 F.3d 625 at 629.

In the present case, the Defendant seeks to justify the ATF's failure to follow the APA's Notice and Comment Requirement by asserting that the Open Letter was merely interpretive. However, the mere fact that an agency claims that its rule is interpretive does not by itself render the law interpretive. *Hemp Industries Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1088 (9th Cir., 2003).  Not surprisingly, the Defendants fail to apply the appropriate legal standard in determining whether the Open Letter was interpretive.  If the Defendants had applied the proper standard, as set forth in the Ninth Circuit case *Hemp Industries*, the Defendants would have had no choice but to acknowledge that the Open Letter was, indeed, a substantive agency ruling, clearly subject to the Notice and Comment Requirement.

In *Hemp Industries*, the Ninth Circuit adopted the framework previously set down by the DC Circuit, noting that an agency ruling is "legislative," as opposed to "interpretive" whenever the rule is delivered with the "force of law." *Id.* at 1087 (9th Cir., 2003); *quoting American Mining Congress v. Mine Safety & Health Administration*, 995 F.2d 1106, 1109 (D.C.Cir.1993); *see also Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 99, 115 S.Ct. 1232 (1995). The Court then identified the following three circumstances in which a rule has the "force of law":

> (1)   when, in the absence of the rule, there would not be an adequate legislative basis for enforcement action;

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-10-

(2)     when the agency has explicitly invoked its general legislative authority; or

(3)     when the rule effectively amends a prior legislative rule.

*Hemp Industries Ass'n v. Drug Enforcement Admin.*, 333 F.3d 1082, 1087 (9th Cir., 2003); *quoting American Mining Congress v. Mine Safety & Health Administration*, 995 F.2d 1106, 1109 (D.C.Cir.1993).

Here, the Open Letter was issued with the force of law, because: (a) without the Open Letter, there is no legislative basis for enforcing a blanket ban on the sale of firearms to Registry Cardholders and (b) the Open Letter effectively amended ATF's prior regulation on this matter, codified at 27 CFR 478.11. Despite the Defendants' somewhat forced attempt to paint the Open Letter as "interpretive," the simple fact is this: were it not for the Open Letter, there would be no legal basis for holding FFLs criminally liable under Section 922(d)(3) for selling a firearm to a Registry Cardholder. Indeed, after an exhaustive search of federal cases dating back to the original passage of Section 922(d)(3), the Plaintiff was unable to find a single case anywhere in the United States where an FFL was charged, let alone convicted, of violating Section 922(d)(3) for selling a firearm to a Registry Cardholder. Such a criminal charge has never occurred because, neither the statute nor the corresponding regulation provide any basis for such a charge.

Section 922(d)(3) reads in relevant part:

(d) It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person—
[…]
(3) is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802));

While the statute does point to a definition for the term "Controlled Substances," citing 21 U.S.C 802, the statute fails to provide any definition for the term "unlawful user."  Taken on its plain meaning, the logical definition of the term "unlawful user" would mean an individual convicted of unlawfully using a Controlled Substance (whether convicted of a felony or a misdemeanor). However, the ATF took a somewhat broader interpretation of the term, when it in enacted 27 CFR 478.11, in which the agency provided the following definition of "unlawful user or addicted to a Controlled Substance":

A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person

RAINEY  /  DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-11-

1    who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician […].

2    27 CFR 478.11.

3    The foregoing regulation immediately contradicts the language of the Open Letter, since

4    the Open Letter specifically prohibits the sale of firearms to Registry Cardholders, who would

5    have by necessity consulted a licensed physician prior to obtaining a Registry Card. As already

6    pointed out in this brief, the process of obtaining a Registry Card requires under State Law a

7    recommendation from a licensed physician. Meanwhile, 27 CFR 478.11 specifically defines

8    "unlawful user" as a person who failed to obtain a prescription from a physician.  This plain

9    reading of the regulation would provide a simple and decisive defense for any firearms licensee

10   wrongfully charged with a violation of Section 922(d)(3).  However, the Open Letter changes the

11   rule, providing the force of law necessary to charge and even convict any FFL that sells a firearm

12   to a Registry Cardholder.

13   While this obvious distinction between the regulation and the Open Letter is sufficient

14   grounds for triggering the Notice and Comment Requirements of the APA, a further reading of

15   the entire regulation 27 CFR 478.11 gives us even more cause for concern.   27 CFR 478.11

16   includes a further explanation of the term "unlawful use," along with a list of illustrative

17   examples, none of which would come close to justifying a blanket ban on the sale of firearms to

18   Registry Cardholders.  27 CFR 478.11 further states:

19    [Unlawful use] is not limited to the use of drugs on a particular day, or
20    within a matter of days or weeks before, but rather that the unlawful use
      has occurred recently enough to indicate that the individual is actively
      engaged in such conduct. A person may be an unlawful current user of a
21    controlled substance even though the substance is not being used at the
      precise time the person seeks to acquire a firearm or receives or possesses
22    a firearm. An inference of current use may be drawn from evidence of a
      recent use or possession of a controlled substance or a pattern of use or
23    possession that reasonably covers the present time, e.g., a conviction for
      use or possession of a controlled substance within the past year; multiple
24    arrests for such offenses within the past 5 years if the most recent arrest
      occurred within the past year; or persons found through a drug test to use a
25    controlled substance unlawfully, provided that the test was administered
      within the past year. For a current or former member of the Armed Forces,
26    an inference of current use may be drawn from recent disciplinary or other
      administrative action based on confirmed drug use, e.g., court-martial
27    conviction, nonjudicial punishment, or an administrative discharge based
      on drug use or drug rehabilitation failure.

28   27 CFR 478.11

-12-

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

Nothing within the foregoing regulation states or even suggests that a Registry Cardholder would be automatically and irrefutably deemed an "unlawful user" and therefore denied her Second Amendment Rights.  All of the examples provided above presume some level of fact-finding due process carried out to determine whether the person is, in fact, an unlawful user: "a conviction for use or possession […]; multiple arrests within the past 5 years […]; a drug test […]; court-martial conviction." *Id.*   Each and every one of these bases for an "inference" requires some level of investigation or due process.  However, the Open Letter simply makes the blanket assertion that any person with a Registry Card is *per se* a criminal and therefore shall be automatically deprived of her constitutionally guaranteed rights, without any notice, without any hearing, and without any due process.

The Open Letter represents a substantive change in the law, amending a prior regulation and creating criminal liability for FFLs where such liability did not previously exist.  Yet, the Defendant failed to provide any opportunity for the public to review and comment upon this proposed rule, as required under the APA.  Accordingly, the Open Letter is an unlawful abuse of the ATF's authority and must be declared invalid.

## B. If the ATF's Letter was Merely Interpreting Existing Law, Then the Underlying Law Violates the Second Amendment.

A quote from the DC Circuit seems especially relevant to this case:

> The phenomenon we see in this case is familiar. Congress passes a broadly worded statute. The agency follows with regulations containing broad language, open-ended phrases, ambiguous standards and the like. Then as years pass, the agency issues circulars or guidance or memoranda, explaining, interpreting, defining and often expanding the commands in the regulations.

*Appalachian Power Co v. Envtl. Protection Agency*, 208 F.3d 1015, 1020 (D.C. Cir., 2000).

Here, we have an instance where a federal agency has so broadly interpreted a federal statute as to render that statute unconstitutional.  If this Court were to accept the extraordinary breadth with which the ATF has interpreted § 922(d)(3), and by implication § 922(g)(3), then between 10% and 50% of adult-aged US citizens would be precluded from possessing,

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-13-

purchasing, transporting or even receiving any firearm or ammunition.[6]   In effect, the law, if enforced to the extent argued by the ATF, could deprive half of our adult-aged citizens of their fundamental constitutional right to keep and bear arms.   Moreover, the ATF's interpretation of these statutes, as espoused in the Open Letter, seeks to create a means of automatically labeling entire groups of people with medical conditions as criminals, without any notice, without any hearing, and without any means of refuting or overturning what is, in effect, a criminal punishment.

      **1.   The ATF's Overbroad Interpretation of §§ 922(d)(3) and (g)(3) Unconstitutionally Violates Second Amendment Rights, failing under both a strict scrutiny and an intermediate scrutiny analysis.**

18 U.S.C § 922(d)(3) reads as follows:

> (d) It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person—
> […]
> (3) is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))

Meanwhile, 21 U.S.C § 802(6), the law defining "controlled substances," reads as follows:

> The term "controlled substance" means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter. The term does not include distilled spirits, wine, malt beverages, or tobacco, as those terms are defined or used in subtitle E of the Internal Revenue Code of 1986.

If § 922(d)(3) were narrowly construed, such that the definition of an "unlawful user" encompassed only persons recently convicted of drug-related crimes (both misdemeanors and felonies), then the statute would satisfy constitutional standards.   Similarly § 922(g)(3), which imposes criminal liability upon "unlawful users" who acquire or possess firearms, is constitutionally sound, if we assume that the determination of whether a person is an "unlawful

---

[6] According to data from the Substance Abuse and Mental Health Services Administration, dated 2011, out of a random sample of 58,397 people surveyed, 11.5% admitted to smoking marijuana within the last 12 months and an additional 30.4% admitted to smoking marijuana at some point preceding the last 12 months; as a representative statistic of the entire United States, this indicates that  approximately 29.6 million people within the United States have used marijuana within the last year, while an additional 78.3 million people have smoked marijuana within their lifetimes (http://www.icpsr.umich.edu/cgi-bin/file?comp=none&study=34481&ds=1&file_id=1098647); *see also* 2010 UNITED STATES HEALTH REPORT, as compiled by the National Center for Health Statistics, available at http://www.cdc.gov/nchs/data/hus/hus10.pdf (reporting that nearly half of all persons within the United States have taken prescription drugs within the last 30 days).

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

user" requires some level of judicial review (i.e., the criminal charges and proceedings filed against the accused party).

However, the ATF has deliberately sought to broaden the definition of "unlawful user" to include, not only persons with prior drug-related criminal convictions, but also any person that an FFL may by inference think is an "unlawful user." As already noted, under 27 C.F.R. § 478.11, the ATF broadly defines the term "[u]nlawful user of or addicted to any controlled substance." *See full definition at p. 12, infra*. Then, in the Open Letter, the ATF further expanded the meaning of "unlawful user" to include any person with a Registry Card, dictating to all FFLs "if you are aware that the potential transferee is in possession of a card authorizing the possession and use of marijuana, then you have 'reasonable cause to believe' that the person is an unlawful user of a controlled substance. As such, you may not transfer firearms or ammunition to the person."

The definition of "unlawful user" is disturbingly over-broad, attempting to circumvent all judicial review of alleged "unlawful" activity and merely labeling large groups of people as automatically and irrefutably engaged in criminal conduct, so as to deprive those individuals of their Second Amendment rights and do so without providing any notice, hearing or other procedural due process. This is a constitutionally untenable position, which is especially concerning, given the political underpinnings of the Government's action.[7] This overbroad "interpretation" of §§ 922(d)(3) and (g)(3) is simply far too overreaching to pass constitutional muster, regardless of the level of scrutiny applied by this Court.

### a. The Applicable Standard of Scrutiny for Second Amendment Cases is Unclear and Unsettled.

As noted by the Defendant, neither the US Supreme Court nor the Ninth Circuit has adopted a specific standard of scrutiny for Second Amendment cases. DEF MOTION TO DISMISS at pp. 36-37. While other Circuits have addressed this issue, the Defendants offer only a cursory analysis of those court opinions and makes the broad assertion that all circuits have uniformly

---

[7] As referenced in the introduction and addressed in more detail in Section III below, it is the Plaintiff's position that the Open Letter was issued as a means of suppressing a growing pro-cannabis political movement and not actually aimed at the same policy issues that gave rise to the legislative enactment of §§ 922(d)(3) and (g)(3).

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

decided that Intermediate Scrutiny applies. *Id.* p. at 37, lines 11-12.  While some circuits have openly adopted an intermediate scrutiny standard, most circuits have elected a more nuanced, case-by-case approach. *See e.g., United States v. Yancey*, 621 F.3d 681, 683 (7th Cir., 2010) (court applied intermediate scrutiny to the case at hand, but expressly stated that a different level of scrutiny may be applicable to other Second Amendment cases); *see also United States v. Marzzarella*, 614 F.3d 85, 97 (3rd Cir., 2010) (court noted that Second Amendment cases should be treated similarly to first amendment cases, in that, different levels of scrutiny may apply depending upon the threat posed to the right); *see also United States v. Carter*, 669 F.3d 411 (4th Cir., 2012) (referencing the same standard enunciated by the Seventh Circuit, suggesting that different levels of scrutiny shall apply, depending upon the extent to which the Second Amendment right is curtailed under the law).[8]

Moreover, the wholesale adoption of an intermediate scrutiny standard for all Second Amendment cases is deeply problematic given that the Supreme Court has made clear that the Second Amendment is a "fundamental" personal right.  *District of Columbia v. Heller,* 554 US 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) [9]; *see also McDonald v. City of Chicago*, 130 S.Ct. 3020, 3042 (2010) ("It is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty"). If the Second Amendment is a "fundamental" right, as posited by the Supreme Court, then our nation's case law directs that the Strict Scrutiny standard is the appropriate standard for analyzing laws aimed at stripping individuals of these rights. *See e.g., Graham v. Richardson Sailer v. Leger*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); *Clark v. Jeter*, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988); *United States v. Virginia*,

---

[8] It should also be noted that, while there is a debate as to whether strict or intermediate scrutiny applies to Second Amendment cases, the Supreme Court did rule out the rational basis standard of scrutiny. *DC v. Heller*, 554 US 570, n. 27, 628, 128 S. Ct. 2783, n. 27, 2783 (2008); *see also US v. Carter*, 669 F.3d 411, 415 (4th Cir., 2012) (acknowledging the Supreme Court's foreclosure of rational basis scrutiny in Second Amendment cases).
[9] Specifically, the Court stated that "By the time of the founding [of the United States], the right to have arms had become fundamental for English subjects" then states that the Second Amendment was "a codified right 'inherited from our English ancestors.'" 128 S. Ct. 2783  (*quoting Robertson v. Baldwin*, 165 U. S. 275, 281 (1897)).

RAINEY  /  DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (J. Scalia *dissenting* notes that "strict scrutiny will be applied to the deprivation of whatever sort of right we consider 'fundamental'"). "Even though the governmental purpose [may] be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton v. Tucker Carr v. Young*, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). "Where legislative abridgment of 'fundamental personal rights and liberties' is asserted, 'the courts should be astute to examine the effect of the challenged legislation." *Id.* (*quoting Schneider v. State*, 308 U.S. 147, 161, 60 S.Ct. 146, 151 (1939).

Nevertheless, regardless of which standard this Court ultimately decides to employ, §§ 922(d)(3) and (g)(3), as interpreted and promulgated by the ATF, fail to pass constitutional muster under any applicable standard. As explained in more detail below, the ATFs overbroad construction of §§ 922(d)(3) and (g)(3) is impossibly expansive, to the point that it utterly fails to comport with constitutional standards.

### b. The ATF's Interpretation of §§ 922(d)(3) and (g)(3) Fails Under a Strict Scrutiny Analysis because it is Not Narrowly Tailored to Satisfy a Compelling Government Interest and the Government has Far Less Restrictive Means of Achieving its Goals.

18 U.S.C §§ 922(d)(3) and (g)(3), as interpreted by the Defendants, plainly fail to survive a strict scrutiny analysis. To survive a strict scrutiny analysis, the law must: (1) further a compelling government interest; (2) be narrowly tailored to achieve that compelling government interest; and (3) be the least restrictive means for achieving that compelling government interest. *See e.g. Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Kramer v. Union Free School District*, 395 U. S. 621, 395 U. S. 627 (1969); *Griswold v. Connecticut*, 381 U.S. at 381 U. S. 485 (1965).

The ATF's broad interpretation of the term "unlawful user," as embodied in 27 C.F.R. § 478.11, causes §§ 922(d)(3) and (g)(3) to fail on prongs two and three of the above-cited test: the law is <u>not</u> narrowly tailored to achieve the intended government interest, nor is it the least restrictive means of achieving the intended government interest. As noted by the Defendants, in their most recent Motion, §§ 922(d)(3) and (g)(3) were enacted with the intent of keeping firearms "out of the hands of presumptively risky people." DEF MOTION TO DISMISS, p. 3, lines

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-17-

27-28 (*quoting Dickerson v. New Banner, Inc.,* 460 U.S. 103, 112, n. 6 (1983)).  However, in its attempt to deter firearm possession amongst these presumptively risky people, the ATF takes a scorched earth approach, seeking to deprive Second Amendment rights to a phenomenally large contingent of the American population – any and all persons that *may* have a physical addiction to any Controlled Substance and any all persons that *may* have taken a Controlled Substance without a physician's prescription.  Based on numbers from the Centers for Disease Control and the Substance Abuse and Mental Health Services Administration, this accounts for roughly rough fifty percent (50%) of all adults in the United States.[10]

18 U.S.C §§ 922(d)(3) and (g)(3), as interpreted by the ATF, are just too impossibly broad to survive strict scrutiny (or intermediate scrutiny for that matter).  The law aims to deprive over one hundred million people of their constitutional right to keep and bear arms, just to target an infinitesimal subset of potentially dangerous individuals.  Even if §§ 922(d)(3) and (g)(3) were solely concerned with illicit substance abuse (which they are not) and even if we were to assume that every single person who committed a violent crime within the last year was an illicit substance abuser (which is a quantum leap of an assumption), the violent persons targeted by §§ 922(d)(3) and (g)(3) would still only account for 3.2% of the total people actually affected by the law,[11] meaning that the law attacks the constitutional rights of more than thirty times the number of people that it is intended to affect. This is like leveling the entire rainforest just to take down a single rotting tree.

What's more, it is Plaintiff's contention that the Open Letter fails to even satisfy the first prong of the strict scrutiny standard; the Plaintiff asserts that the Open Letter, unlike the underlying statute, was not issued to further a compelling government interest, but rather was issued as a means of putting down a growing grassroots political movement.  The Open Letter was part of an effort within the federal government to undermine the increasing groundswell of

---

[10] *Supra* at note 5.

[11] This statistic is based on a combination of two statistical sources.  First, the Substance Abuse and Mental Health Services Administration calculates that 38,806,000 Americans had taken illicit drugs in 2010. Second, statistics compiled by the Federal Bureau of Investigation estimate that in that same year there were approximately 1,240,000 instances of violent crime. *See Crime in the United States*, available at http://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2010/crime-in-the-u.s.-2010/violent-crime/violent-crime.  Taken together, if we assume that each instance of violent crime was committed by a separate and distinct individual, and that each and every violent assailant was an illicit drug user, then only 3.2% of illicit drug users account for all violent crimes committed in the United States.

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

state-level support for the legalization of medical marijuana. The Open Letter was a straightforward abuse of agency authority, aimed at undermining the constitutional rights of our citizens.   The Open Letter must be struck down as unconstitutional, together with the ATF's unconstitutionally broad interpretation of §§ 922(d)(3) and (g)(3)

c.   **Even Under an Intermediate Scrutiny Analysis, 18 U.S.C. §§ 922(d)(3) and (g)(3) is Unconstitutional Because the Expansive Scope of the Law, Covering More than Half of the U.S. Population, is Not Substantially Related to Any Important Government Interest.**

To overcome intermediate scrutiny, the asserted governmental interest must be "substantial," rather than "compelling," and the regulation adopted must have "a direct, substantial relationship between the objective and the means chosen to accomplish the objective." *Coral Const. Co. v. King County*, 941 F.2d 910 (9th Cir. 1991); *see also Association of Nat. Advertisers, Inc. v. Lungren*, 44 F.3d 726, 729 (9th Cir. 1994) (*citing Central Hudson Gas v. Pub. Serv. Comm'n of N.Y.,* 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980); *Consolidated Edison Co. v. Public Service Comm'n of N.Y.,* 447 U.S. 530, 540, 100 S.Ct. 2326, 2334-35, 65 L.Ed.2d 319 (1980).  As noted by the Ninth Circuit, "[i]ntermediate scrutiny's precise contours vary slightly depending upon which constitutional right is at issue." *Jacobs v. Clark County School Dist.,* 526 F.3d 419, n. 23 (9th Cir. 2008).   Neither the Ninth Circuit, nor the Supreme Court has set down a system of intermediate scrutiny as applied to Second Amendment issues.

While the Plaintiff agrees that §§ 922(d)(3) and (g)(3) were enacted to further a "substantial" government interest, the Plaintiff contends that the Open Letter was not enacted for such a purpose.  As previously noted in this brief, it is the Plaintiff's contention that the Open Letter was specifically authorized and issued for the purposes of suppressing a growing political movement.  The DOJ, and by extension the ATF, endeavored to quash the medical cannabis movement by manipulating the enforcement of existing law to curtail the constitutional rights of individuals involved in the movement.  This is a material factual allegation that precludes any summary judgment on this matter.

Moreover, due to the extraordinary breadth and scope with which the ATF has interpreted §§ 922(d)(3) and (g)(3), even prior to the issuance of the Open Letter, the law fails to provide a

RAINEY  /  DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1  direct, substantial relationship between the law's objective and the means chosen to accomplish

2  that objective.   As previously noted, the ATF has taken a scorched earth approach in its

3  interpretation of these laws, seeking to stretch  §§ 922(d)(3) and (g)(3) beyond the boundaries of

4  constitutionality and deprive Second Amendment rights to as many people as possible. The

5  overwhelming impact of the law, as interpreted by the ATF, falls on the shoulders of non-violent,

6  harmless individuals, depriving those individuals of their Second Amendment rights. The law

7  does not merely apply to thieving, violent scoundrels.  As applied by the ATF, §§ 922(d)(3) and

8  (g)(3) prohibits the sick, the elderly,[12] and tens of millions others.

9         Meanwhile, the law allows a specific exception for alcohol abuse.  Curiously, alcoholism,

10  a condition that is widely known to increase aggression and violent tendencies[13] is exempted

11  from prosecution under § 922(d)(3).  If the law were truly constructed for the purpose of

12  curtailing the ownership of firearms amongst potentially violent people, then why would it apply

13  to all suspected drug users, but specifically exclude alcoholics?  In a 1997 report from the

14  National Institute of Health, it was noted that, as a direct effect of the consumption of alcohol,

15  "[a]lcohol may encourage aggression or violence by disrupting normal brain function."[14]

16  Nevertheless, § 922(d)(3), a law allegedly designed to keep firearms out of the hands of

17  potentially dangerous people makes no attempt to keep guns from alcoholics.

18         Inversely, there is no viable evidence to suggest that marijuana use is correlated with

19  violent crime (or any other crime beyond illegal drug use). While the Government makes a

20  feeble attempt to tie drug use to criminal behavior, the statistics that the Government points to

21  fail to take into account the large number of non-criminal drug users.  The statistics cited by the

22  Government merely analyze the number of prison inmates who admit to having been on narcotic

23  substances at the time of arrest.  However, those individuals account for a miniscule fraction of

24  the total number of drug users in the United States.

25         At the end of 2010, state and federal prison populations totaled 1,518,104. Correctional

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

---

[12] *See supra* note 5 (90.1% of persons over the age of 65 report having taken prescription medications within the last thirty days).

[13] *See* NATIONAL INSTITUTE ON ALCOHOL ABUSE AND ALCOHOLISM NO. 38 OCTOBER 1997, available at http://pubs.niaaa.nih.gov/publications/aa38.htm

[14] *Id.*

Population in the United States, 2011. Bureau of Justice Statistics. This figure equals approximately 0.5% of the U.S. population. *Id.*; 2010 Census. Federal prisons housed 206,968 prisoners while state prisons housed 1,311,136. The 2004 DOJ study relied upon by Defendants indicates that 32% of state prisoners and 26% of federal prisoners committed their current offense while under the influence of drugs.[15] However, only 15% of state prisoners and 14% of federal prisoners used marijuana at the time of their offense.[16] Thus, approximately 196,670 state inmates and 28,975 federal inmates committed their crimes while using marijuana. This equates to approximately 0.07% of the U.S. population having committed a crime while under the influence of marijuana. When this number is compared with the total number of Americans who report using marijuana, it is clear that marijuana use has no causal link to crime. Approximately 106,232,000 Americans (or 34.4% of the total U.S. population) report having using marijuana in their lifetime.[17] Approximately 17,373,000 Americans (or 5.6% of the total U.S. population) report having used marijuana in the past month. Thus, the number of incarcerated persons who were using marijuana at the time of their crime equals only 0.2% of all persons who have used marijuana and 1.2% of all persons who are habitual users of marijuana.

Additionally, the 2004 DOJ study reports that violent offenders were less likely than other offenders to have used drugs in the month prior to their offense.[18] The report states "Violent offenders in State prison (50%) were less likely than drug (72%) and property (64%) offenders to have used drugs in the month prior to their offense."

The Defendants also rely on a 2010 report by the Office of National Drug Control Policy. However, this report is not a good indicator of any supposed link between marijuana and crime because it only reports incidents of marijuana use in males arrested in 10 cities. Additionally, the ONDCP is not an independent research organization but rather a cabinet level component of the Executive Office with the stated objective of eradicating drug use. As such, any studies conducted by the ONDCP are inherently biased.

There is no viable link between the use of cannabis and violent behavior; meanwhile,

---

[15] *See* http://bjs.ojp.usdoj.gov/content/dcf/duc.cfm.
[16] *Id.*
[17] *See* http://www.icpsr.umich.edu/cgi-bin/file?comp=none&study=32722&ds=1&file_id=1094507
[18] *See* http://bjs.ojp.usdoj.gov/content/pub/pdf/dudsfp04.pdf.

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

there is clear and well-established evidence that alcohol is directly linked with violent behavior. Nevertheless, the ATF's application of §§ 922(d)(3) and (g)(3) arbitrarily preclude users of cannabis (or any other controlled substance for that matter) from exercising their fundamental constitutional rights. Sections 922(d)(3) and (g)(3), as interpreted by the ATF, fails to provide a direct, substantial relationship between the law's objective and the means chosen to accomplish the objective. The ATF's interpretation of this law is untenable, unenforceable, unconstitutional and utterly unrealistic; it must be declared unconstitutional.

### d.   United State v Dugan does not foreclose a constitutional challenge to 18 U.S.C §§ 922(d)(3) and (g)(3).

In seeking to validate the constitutionality of §§ 922(d)(3) and (g)(3), the Defendants rely heavily, almost exclusively, upon the Ninth Circuit case *United States v. Dugan*,  657 F.3d 998 (9th Cir 2011). However, *Dugan* is a deeply flawed opinion, lacking any meaningful legal analysis, and is not, in fact, applicable to the current case.  Indeed, the Defendant's discussion of *Dugan* is longer than the actual court opinion.

Consisting of just four short paragraphs, *Dugan* makes the sweeping assertion that § 922(g)(3) is constitutional, without even bothering to examine the law under a strict scrutiny, intermediate scrutiny or even rational basis analysis. Indeed, *Dugan* provides no substantive analysis of the law's constitutionality and appears to base its entire decision upon two similarly brief and similarly flawed opinions from sister circuit courts.[19]

Meanwhile, the facts of *Dugan* are so prejudicial that they fail to provide a proper framework for analyzing the constitutionality of §§ 922(d)(3) or (g)(3).  In *Dugan,* the party challenging the law's constitutionality, Kevin Dugan, was arrested during a domestic violence complaint, when officers discovered an illegal marijuana "operation" in Mr. Dugan's home.  Mr. Dugan was the very sort of person that  § 922(g)(3) was designed for—a dangerous criminal. Based on the facts represented in the *Dugan* opinion, Kevin Dugan was possibly a wife beating, drug dealing, drug using, arms dealer.  As the old saying goes: "Bad facts make bad law."

Indeed, §§ 922(d)(3) or (g)(3) don't merely affect the rights of the Kevin Dugans of this

---

[19] *Dugan* cites to only two cases in support of its proposition that 922(d)(3) is constitutional, *U.S v. Seay*, 620 F.3d 919 (8th Cir 2010), and *U.S. v Yancey*, 621 F.3d 681 (7th Cir 2010).

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1    world; these laws, as interpreted by the ATF, threaten the fundamental constitutional rights of

2    nearly half of the U.S. population.[20]   Even though §§ 922(d)(3) or (g)(3) are intended to keep

3    guns out of the hands of a small subset of the population, the ATF has radically over-reached the

4    limits of this goal and sought to unilaterally categorize enormous swaths of the population as

5    criminals, without the need for any judge, any jury or any due process.

6    　　　The *Dugan* opinion does <u>not</u> so much as reference the ATF, let alone address the

7    expansive manner with which this agency has sought to enforce §§ 922(d)(3) or (g)(3).   In fact,

8    the *Dugan* opinion pre-dates the Open Letter, so it naturally fails to address the constitutionality

9    of that letter.   The *Dugan* opinion does not even address the constitutionality § 922(d)(3), but

10   rather only addresses § 922(g)(3).   Meanwhile, it is actually under § 922(d)(3) that the ATF

11   seeks to deprive individuals of their Second Amendment rights.

12   　　　For the foregoing reasons, the *Dugan* Opinion is a flawed, short-cited opinion that simply

13   does not apply to the current case.

14   **III.**　　　**DEFENDANTS VIOLATED PLAINTIFF'S FIRST AMENDMENT RIGHTS.**

15   　　　The ATF's Blanket prohibition on the sale of firearms to Registry Cardholders

16   violates such cardholders' First Amendment rights to free speech and expression. By

17   automatically labeling the Plaintiff as a criminal (an "unlawful user"), based purely upon her

18   choice to acquire and maintain a State-issued Registry Card, the Defendants have deliberately

19   sought to curtail the Plaintiff's right to free speech.  The Plaintiff's procurement and possession

20   of her Registry Card is a form expressive conduct protected under the First Amendment.    And

21   yet, the Defendants have endeavored to deter the Plaintiff from exercising those First

22   Amendment Rights.   The Defendants have effectively given the Plaintiff a Hobson's Choice

23   between her First and Second Amendment Rights: *you can either exercise your right to free*

24   *expression, or you can exercise your right to keep and bear arms, but you can't have both*.  This

25   is an unacceptable and unconstitutional proposition.

26   　　　"As a general matter, the First Amendment means that the government has no power to

27   restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v.*

28

---

[20] *Supra* note 5.

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1     *Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002). Nevertheless, in the present case, the ATF

2     sought to do just that.

### A. The Plaintiff's Procurement and Possession of a Registry Card Constitutes a Form of Speech Protected Under the First Amendment.

It is well settled that the free speech protections of the First Amendment cover more than mere verbal communication. *See, e.g., Jacobs v. Clark Cnty. School Dist.*, 373 F.Supp.2d 1162, 1171 (D. Nev. 2005) ("we have long recognized that [the First Amendment's] protection does not end at the spoken or written word"). If an activity is "sufficiently imbued with elements of communication" it will "fall within the scope of the First and Fourteenth Amendments." *Spence v. Washington,* 418 U.S. 405, 409 (1974). In determining whether conduct falls within the ambit of the First Amendment, the Court should consider "the nature of [the] activity, combined with the factual context and environment in which it was undertaken." *Id.* at 410.

In *Spence v. Washington*, the Supreme Court held that an activity is protected by the First Amendment when "[a]n intent to convey a particularized message was present, and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Id.* at 410-11. Both prongs of the *Spence* test are fact intensive, and both are met in the present case.[21]

Here, the Plaintiff intended to convey a particularized message by possessing a Registry Card and her message was understood by those who viewed it. The message was: *I am a proponent for the medical use of marijuana*. The Defendant wrongly tries to portray the Registry Card as a purely utilitarian instrument, merely a reflection of the Plaintiff's medical condition. However, the card is a powerful statement of how the Plaintiff wishes to treat her medical condition. The Card reflects the Plaintiff's deep seeded belief in the efficacy of medical marijuana, not just for her ailment, but also for a host of ailments. By undergoing the lengthy application process, the Plaintiff has made an affirmative expression of her belief that cannabis is a viable form of medicine.

The mere fact that the Card has a utilitarian purpose does not foreclose the prospect of the

---

[21] While the Plaintiff asserts that the facts inherent in one's possession of a Registry Card conclusively satisfy the Spence test for speech, the Plaintiff also points out that the fact specific nature

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

Card serving as a form of political speech.  On the contrary, the underlying application process

and purpose of the Card makes it, in fact, a more potent form of political speech.   Obtaining a

medical marijuana registry card in the State of Nevada is an exceedingly difficult and lengthy

process.[22] Due in large part to the extreme divergent opinions on the efficacy of medical

marijuana, the procedure for obtaining a Registry Card requires that the registrant undergo a

series of application steps that take many months to complete. The Card is itself a badge of honor

that, despite the many close-minded forces intent on taking away her right to possess the card,

the Plaintiff endured and successfully navigated this needless bureaucracy.

The Plaintiff's intent to convey a particularized message is irrefutable at this stage of the

litigation.  Determining the Plaintiff's intent is a subjective inquiry. *See e.g., O.S.C & Assoc. v.

Comm'r Of Internal Revenue*, 187 F.3d 1116, 1120  (9th Cir. 1999) (stating "intent is subjective,"

*citing Elliotts, Inc. v. C.I.R.*, 716 F.2d 1241, 1243 (9th Cir. 1983). The Plaintiff avers that she

intended, through her procurement of a Registry Card, and through her informing others that she

possessed a Registry Card, to convey a message that marijuana is a valid medical treatment and

that the use of medical marijuana for medical purposes should be legal.

Meanwhile, the use of marijuana for medical purposes is, and has been, at all times

relevant hereto, a hotly debated political issue with tensions between the states and federal

government growing stronger. In such circumstances, anyone who viewed Plaintiff's Registry

Card or became aware that Plaintiff possessed the Registry Card, would understand the

Plaintiff's intent to message her support for medical marijuana. Thus, Plaintiff's obtainment and

possession of the Registry Card is a form of expressive activity protected by the First

Amendment.

Moreover, even if Plaintiff's conduct could somehow be labeled as non-expressive

activity, she still holds a valid First Amendment claim. "[W]here a statute based on a

nonexpressive activity has the inevitable effect of singling out those engaged in expressive

conduct, the statute may be subject to First Amendment scrutiny." *Roulette v. City of Seattle*, 97

F.3d 300, 305 (9th Cir. 1996), *quoting Arcara v. Cloud Books, Inc*., 478 U.S. 697, 706-07 (1986)

---

[22] FAC at Ex. 1, ¶¶ 21-24.

RAINEY  /  DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

(internal quotations omitted).  The Open Letter deliberately singles out all Registry Cardholders, a subset of the population that necessarily includes the most zealous and outspoken of medical marijuana advocates, those persons that the law most directly affects: medical marijuana patients. As such, the Open Letter inevitably singles out the medical marijuana lobby and seeks to suppress their outspoken criticism of the government by curtailing their Second Amendment Rights.

### A. The Constitutionality of the ATF's Enforcement Actions, as Applied to the First Amendment, Should be Examined Under a Strict Scrutiny Standard.

Because the Plaintiff's activities in obtaining, possessing and informing others that she possess a Registry Card are protected by the First Amendment, any direct restraint on such activities must meet strict scrutiny. *Texas v. Johnson*, 491 U.S. 397, 406 (1989). "The purpose of the First Amendment is to protect private expression." *United States v. American Library Assn., Inc.*, 539 U.S. 194, 211 (2003), *quoting Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U. S. 94, 139 (1973). Strict scrutiny applies to regulations that are "related to the suppression of free expression." *Johnson*, 491 U.S. at 406.

While the Defendants have argued for the less stringent standard set forth in *United States v. O'Brien*, insisting that the Open Letter was not intended to inhibit speech, the Plaintiff contends that the Open Letter was indeed directly aimed at hindering speech.  It is the Plaintiff's assertion that the DOJ, and by extension the ATF, enacted the Open Letter with the deliberate intent to suppress the growing medical marijuana movement.  It is no coincidence that the Open Letter was issued by a bureau of the same agency that was, at the same time, in the process of coordinating a massive crackdown on medical marijuana growers and dispensaries in multiple states.  It is no coincidence that the Open Letter was issued within days of an IRS' ruling that prohibited marijuana growers and dispensaries from writing off business expenses. It is no coincidence that the Open Letter was issued just a few weeks before the four US Attorneys of California dispatched a series of letters to California dispensaries, giving them 45 days to shut down or face criminal prosecution.  The Open Letter was part of a coordinated effort to intimidate and suppress a political movement.

Given that the Open Letter was squarely aimed at curtailing individuals' freedom of

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

speech and expression, a judicial review of the Letter's constitutionality is subject to a strict

scrutiny analysis.

**B. The ATF's Enforcement Actions, as Set Forth in the Open Letter, Fail to Meet Strict Scrutiny Standards.**

In order for a law to survive judicial review under a strict scrutiny analysis, the law must be (1) justified by a compelling governmental interest; (2) narrowly tailored to achieve that goal or interest; and (3) the least restrictive means of achieving that interest. *R.A.V. v. City of St Paul, Minnesota*, 505 U.S. 377, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992).

Here, the Open Letter fails on all three of the foregoing points. First, the letter was NOT issued to serve any compelling government interest, but rather was issued for the purpose of intimidating and suppressing a growing political movement. Second, even if this Court were to believe the Defendants' asserted purpose for the Open Letter, the Letter was not narrowly tailored to effectuate that purpose. Automatically classifying all Registry Cardholders as criminals effectively deprives an enormous cross section of the public of their Second Amendment rights without any real policy justification. Finally, there are a myriad of less restrictive methods of curtailing gun violence and preventing presumptively dangerous people from possessing firearms.

There is no constitutional justification for the Open Letter. The ATF's issuance of the Letter was an abusive of its authority, designed to chill the advocacy efforts of medical marijuana activists.

**C. Even Examined Under the Less Restrictive O'Brien Test, the ATF's Universal Ban on the Sale of Firearms to Registry Cardholders Amounts to an Unconstitutional Restriction on Free Speech.**

Even if this Court were to employ the *O'Brien* test, as argued for by the Defendants, the ATF's pronouncement that all Registry Cardholders are *per se* criminals, as set forth in the Open Letter, is still a clear violation of First Amendment rights. *O'Brien* requires that the regulation (1) be "within the constitutional power of the Government," (2) "further an important or substantial government interest," (3) "the government interest is unrelated to the suppression of free expression," and (4) the incidental restriction on First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 367

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-27-

(1968)

In the present case, the ATF's interpretation of §§ 922(d)(3) and (g)(3), as set forth in the Open Letter, does not merely place an incidental restriction on First Amendment freedoms.  On the contrary, the Open Letter completely precludes Registry Cardholder's from exercising their right to free speech, unless they are willing to relinquish their right to bear arms.  As mentioned earlier, this is an unconstitutional Hobson's Choice, where the Registry Cardholders are forced to decide between Constitutional rights.  The ATF's Open Letter was directly related to suppressing a political movement.  It did not further any important or substantial government interest.  It was merely an attack on the civil liberties of the medical marijuana lobby.

Meanwhile, The restriction placed on First Amendment freedoms was far greater than what was essential to the furtherance of Defendants' alleged purpose of keeping guns out of the hands of potentially dangerous people.  While there is very little, if any, meaningful evidence to suggest that marijuana users are more violent than the rest of the community, there is most definitely no evidence to connect Registry Cardholders with gun violence.  Examining the final prong of *O'Brien* test, it is plain to see that the ATF's interpretation of §§ 922(d)(3) and (g)(3) posed a far greater threat upon the First Amendment freedoms of Registry Cardholders than it furthered any gun control efforts.

Accordingly, even under the *O'Brien* test, which is less stringent than the strict scrutiny analysis required in this case, the Defendants' universal ban on the sale of firearms to Registry Cardholders is unconstitutional.

## IV.   DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO SUBSTANTIVE DUE PROCESS.

Plaintiff has asserted a substantive due process claim and such claim does not merge with Plaintiff's claims under the First and Second Amendments as argued by Defendants. In her Complaint, Plaintiff alleged one cause of action for violation of her 5th Amendment Due Process rights, which contained both a procedural and substantive aspect. As explained in Plaintiff's Response and Cross-Motion (Dkt. No. 17), Plaintiff possesses a liberty right in the ability to choose a course of medical treatment. In the FAC, Plaintiff split her Due Process claim into separate causes of action for the violations of procedural due process and the violations of

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

substantive due process. In the FAC, Plaintiff sets forth under her substantive due process claim that Defendants have deprived her of her First and Second Amendment rights. However, such provisions in the FAC do not waive Plaintiff's previous assertion that she possess a liberty right in the ability to choose a course of medical treatment nor do they merge Plaintiff's substantive due process claim with her First and Second Amendment claims as Defendants allege.[23]

The Fifth Amendment of the United States Constitution provides, in relevant part that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law." U.S. Const. Amend. V. The right to substantive due process concerns the right to liberty under the Fifth and Fourteenth Amendments. Essentially, the question of substantive due process asks whether a person is free to engage in certain conduct in the exercise of their liberty under the Due Process Clause. *See Lawrence v. Texas*, 539 U.S. 558, 564 (2003). The broad substantive reach of liberty under the Due Process Clause has been noted in a number of U.S. Supreme Court Cases. *Id.*; *see also Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Meyer v. Nebraska*, 262 U.S. 390 (1923); and *Griswold v. Connecticut*, 381 U.S. 479 (1965). "[T]he full scope of the liberty guaranteed by the Due Process Clause . . . includes a freedom from all substantial arbitrary impositions and purposeless restraints." *Albright v. Oliver*, 510 U.S. 266, 287 (1994) (concurring opinion), *quoting Poe v. Ullman*, 367 U.S. 497, 543 (1961) (internal quotations omitted). The U.S. Supreme Court has found that:

> "[Matters] involving the most intimate and personal choices a person may make in a lifetime, choices central to personal dignity and autonomy, are central to the liberty protected by the Fourteenth Amendment. At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life. Beliefs about these matters could not define the attributes of personhood were they formed under compulsion of the State."

*Lawrence*, 539 U.S. at 574, *quoting Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992). "[T]he ultimate question is whether sufficient justification exists for the intrusion by the government into the realm of a person's 'liberty, dignity, and freedom.'" *Compassion in*

---

[23] While Plaintiff maintains her claim that substantive due process protects her right to choose a course of medical treatment without interference from the Government, in the interests of brevity, this Response will not go into a detailed discussion of that right because it is not addressed in Defendants' Motion. However, Plaintiff maintains the right as it is set forth in her Response and Cross-Motion, Dkt. No. 17.

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

1   *Dying v. State of Washington*, 79 F.3d 790, 799 (9th Cir. 1996), *quoting Cruzan v. Director,*

2   *Missouri Dept. of Health*, 497 U.S. 261, 287, 289, 110 S.Ct. 2841, 2856, 2857 (1990)

3   (O'Connor, J., concurring).

4          The argument that Plaintiff's substantive due process claim fails because Plaintiff has

5   alleged a deprivation of her First and Second Amendment rights is without merit. A plaintiff may

6   allege both violations of the substantive due process clause and violations of another

7   Constitutional Amendment without losing her substantive due process claim. While the Supreme

8   Court has held that claims against law enforcement officers for use of excessive force must be

9   brought under the Fourth Amendment rather than the substantive due process provision of the

10  Fifth Amendment "[b]ecause the Fourth Amendment provides an explicit textual source of

11  constitutional protection against this sort of physically intrusive governmental conduct," it does

12  not follow that no substantive due process claim can ever been had where there is a

13  corresponding violation of another Constitutional Amendment. Here, Plaintiff has alleged a

14  substantive due process claim as a result of Defendants' actions and such claim is not foreclosed

15  by the fact that Plaintiff also alleges violations of her First and Second Amendment rights.

16  **V.     DEFENDANTS VIOLATED PLAINTIFF'S RIGHT TO PROCEDURAL DUE
        PROCESS.**

17

18         The United States Constitution requires that whenever a governmental body acts to injure

19  an individual, that act must be consonant with due process of law. The minimum procedural

20  requirements necessary to satisfy due process depend upon the circumstances and the interests of

21  the parties involved. "In all cases, that kind of procedure is due process of law which is suitable

22  and proper to the nature of the case, and sanctioned by the established customs and usages of the

23  courts." *Ex Parte Wall*, 107 U.S. 265, 289 (1883).[24]    With respect to action taken by

24  _____

25  [24] Justice Frankfurter's concurring opinion in *Joint Anti-Fascist Refugee Comm. V. McGrath*, 341 U.S. 123, 163
    (1951), further elaborated upon this understanding as follows:

26          "The precise nature of the interest that has been adversely affected, the manner in which
            this was done, the reasons for doing it, the available alternatives to the procedure that was

27          followed, the protection implicit in the office of the functionary whose conduct is
            challenged, the balance of hurt complained of and good accomplished - these are some of

28          the considerations that must enter into the judicial judgment."

RAINEY / DEVINE
891 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

administrative agencies, the Supreme Court has held that notice must be given and a hearing must be held before a final order becomes effective. *Opp Cotton Mills v. Administrator*, 312 U.S. 126, 152, 153 (1941). "The fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). When the Constitution requires a hearing, the hearing must be "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). Generally, these provisions require that the hearing be held before a tribunal which meets currently prevailing standards of impartiality and a party must be given an opportunity not only to present evidence, but also to know the claims of the opposing party and to meet them. *Wong Yang Sung v. McGrath*, 339 U.S. 33, 50 (1950); *see also Goldberg*, 397 U.S. at 267-268. Furthermore, those who are brought into contest with the government in a quasi-judicial proceeding aimed at control of their activities are entitled to be fairly advised of what the government proposes and to be heard upon the proposal before the final command is issued. *Margan v. United States*, 304 U.S. 1, 18-19 (1938).

Here, the Defendants have deprived the Plaintiff of a fundamental right without any notice or opportunity to be heard. The Defendants have adopted and are enforcing a policy, through their Open Letter, whereby a distinct group of individuals are automatically precluded from exercising their fundamental rights under the U.S. Constitution based solely upon an FFLs reasonable belief that these persons are exercising their State granted rights. The Defendants have conclusively and irrefutably determined that the mere fact that an FFL is aware a "potential transferee is in possession of a card authorizing the possession and use of marijuana under State law, then [the FFL has] 'reasonable cause to believe' that the person is an unlawful user of a controlled substance" and must deny the transfer of firearms or ammunition to that person.

However, such a determination that holders of a Registry Card are automatically prohibited from obtaining a firearm deprives the Plaintiff of her Second Amendment rights without any due process. Prior to the issuance of the Open Letter, Plaintiff was not given any opportunity to comment on the policy set forth in the Open Letter. Additionally, Defendants have not even provided a post-termination procedure whereby persons who hold Registry Cards can argue that they are not "unlawful users of or addicted to" a controlled substance. While the exact

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

number of medical marijuana users is uncertain, it is estimated that roughly 600,000 persons in the U.S. are using medical marijuana in the nine states where registration is mandatory. By virtue of their issuance and enforcement of the policy set forth in the Open Letter, the Defendants have willfully deprived a large class of U.S. citizens, including the Plaintiff, of their fundamental rights in direct violation of the procedural requirements of the Due Process Clause. Defendants cannot be allowed, simply on their conclusory opinion that Registry Cardholders are always drug users, to avoid the procedural due process requirements of the Fifth Amendment.

## VI.   DEFENDANTS HAVE VIOLATED PLAINTIFF'S RIGHT TO EQUAL PROTECTION.

The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the law." This provision of the Fourteenth Amendment has been held by the United States Supreme Court to apply to the federal government by virtue of the Fifth Amendment. *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693 (1954). The Equal Protection Clause "is essentially a direction that all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc*., 473 U.S. 432, 439 (1985). The Equal Protection Clause "keeps governmental decision makers from treating differently persons who are in all relevant aspects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *see also Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1047 (9th Cir. 2002) ("The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike.")

Here, Defendants have violated Plaintiff's equal protection rights by treating Plaintiff differently from persons to whom she is similarly situated. The FAC alleges that Plaintiff is being treated differently than similarly situated individuals, which must be accepted as true for purposes of Defendants' Motion. Additionally, the determination of whether Plaintiff is being treated differently than similarly situated persons is inherently an issue of fact. Because there is a genuine dispute as to the material fact of whether Plaintiff is being treated differently than similarly situated persons, Defendants cannot be granted to Defendants on Plaintiff's Equal Protection claim.

In the FAC, Plaintiff specifically alleges that she is being treated differently from persons who are prescribed medical marijuana in states where obtainment of a Registry Card is not

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-32-

required because Defendants have conclusively and irrefutably deemed Plaintiff an "unlawful user" of marijuana based solely on her obtainment of a Registry Card as required by her state; Defendants have not issued any directive to FFLs that a person who gains access to medical marijuana in a state where a Registry Card is not required is an "unlawful user" of marijuana. In their Motion, Defendants completely misrepresent the allegations set forth in Plaintiff's FAC and incorrectly assert that Plaintiff's Equal Protection Claim rests on a supposed argument that "because some states allow medical marijuana use without issuing registry identification cards, those medical marijuana users will be able to buy firearms more easily than people who live in states that require medical marijuana registry cards." Motion to Dismiss at p. 40, lines24-26. However, this argument does not appear anywhere in the FAC.

As additional grounds for her Equal Protection claim, Plaintiff's FAC also alleges that Plaintiff is being treated differently from persons with similar medical conditions. Defendants have conclusively and irrefutably deemed Plaintiff an "unlawful user" of marijuana simply because she has followed state laws for the obtainment of treatment for her medical condition; the Defendants have not issued directives to FFLs deeming any person who pursues any method of treatment other than medical marijuana an "unlawful user" of a controlled substance. Defendants, without any basis, allege that it is "entirely reasonable for the government to infer that those individuals who have affirmatively registered to use marijuana on the basis of chronic medical conditions are, in fact, marijuana users."[25] Motion to Dismiss at p. 41. Such conclusion is not "entirely reasonable" and completely ignores the reality that many people may register for a card and then not use or possess marijuana.[26]

The Defendants' policy set forth in the Open Letter thus discriminates against persons

---

[25] Defendants' assertion that those who "have affirmatively registered to use marijuana . . . are, in fact, marijuana users" actually raises an important question about when a person pursuing the right to use medical marijuana may be deemed an "unlawful user." The Open Letter directs FFLs to deny firearm purchases based on a person's possession of a Registry Card but Defendants assert that a person may be deemed an "unlawful user" from the time they "affirmatively register." In Nevada, and many other states, there are typically many months between the time that a person registers and the time they receive their registration card. In the present case, it took seven (7) months from the time Plaintiff submitted her paperwork until she received her Registry Card. Would Defendants label her an "unlawful user" during those seven months?

[26] For example, many persons obtain Registry Cards prior to their condition becoming so debilitating that the person can no longer deal with the pain without the use of marijuana. The difficulty and length of time required to obtain a Registry Card in Nevada and other states actually encourages that persons prescribed medical marijuana take action to obtain their Registry Card as soon as possible, even if they may not use or possess marijuana in the near future.

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

who live in a state that requires a registry identification card because any knowledge of the person's possession of that card can be used as conclusive and irrefutable evidence to deny their attempt to purchase firearms and/or ammunition. Meanwhile, persons entitled to use medical marijuana in a state that does not issue registry identification cards will avoid the policies set forth in the Open Letter simply because their state does not issue registry identification cards. As such, the policies adopted and promulgated by the Defendants, as set forth in the Open Letter, violate the Plaintiff's right to equal protection.

## VII.   PLAINTIFF DOES NOT SEEK MONETARY DAMAGES AGAINST THE UNITED STATES, OTHER THAN COSTS AND FEES ALLOWED, BUT INSTEAD SEEKS DECLARATORY AND INJUNCTIVE RELEIF.

Plaintiff does not dispute that 5 U.S.C § 702 does not provide for monetary damages against the United States, the ATF or the individual Defendants in their official capacities. The primary purpose of this case is, and has always been, to obtain declaratory and injunctive relief against the Defendants. Plaintiff has already asserted that she is not seeking monetary relief in this action other than various fees and costs associated with pursuing this case as provided for in 28 U.S.C. § 2412 and similar statutes. The Prayer for Relief contained in Plaintiff's FAC requesting "compensatory and punitive damages" should not be read as requesting a monetary award against Defendants other than a monetary award of costs and fees to which Plaintiff is entitled by statute. 5 U.S.C. § 702 provides that in "[a]n action in a court of the United States seeking relief other than monetary damages . . . [t]he United States may be named as a defendant." Here, the Plaintiff seeks both declaratory and injunctive relief, which is, relief other than monetary damages. Thus, the United States is a proper defendant in this action.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

RAINEY  /  DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

**CONCLUSION**

Based upon the authorities set forth herein, Defendants are neither entitled to dismissal under F.R.C.P. 12(b)(1) and F.R.C.P. 12(b)(6), nor are they entitled to summary judgment on the causes of action set forth in Plaintiff's First Amended Complaint. Plaintiff therefore respectfully requests that Defendants' Motion be DENIED.

Dated this 25th day of February 2013.

Respectfully Submitted by:

RAINEY DEVINE, ATTORNEYS AT LAW

By:    /s/ Chaz Rainey
        Charles C. Rainey, Esq.
        Nevada Bar No. 10723
        Jennifer J. Hurley, Esq.
        Nevada Bar No. 11817
        8915 S. Pecos Road, Ste. 20A
        Henderson, Nevada 89074
        Telephone: +1.702.425.5100
        Facsimile: +1.888.867.5734
        *Attorney for Plaintiff*

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

**PROOF OF SERVICE**

I, Jennifer J. Hurley, an employee of The Law Firm of Rainey Devine, certify that the following individuals were served with PLAINTIFF'S RESPONSE TO THE UNITED STATES' MOTION TO DISMISS OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT, on this date by the below identified method of service:

**Electronic Case Filing**

TONY WEST
DANIEL G. BOGDEN
SANDRA SCHRAIBMAN
ALICIA N. ELLINGTON
JOHN K. THEIS
Trial Attorneys, Federal Programs Branch
United States Department of Justice, Civil Division
20 Massachusetts Ave, N.W. Rm 7226
Washington, DC 20530

Zachary Richter
Trial Attorney, Constitutional Torts Staff
United States Department of Justice, Civil Division
P.O. Box 7146, Ben Franklin Station
Washington, DC 20044

DATED this 25th day of February 2012.

/s/ Jennifer J. Hurley
An employee of The Law Firm of Rainey Devine.

RAINEY / DEVINE
8915 S. Pecos Road, Ste. 20A
Henderson, Nevada 89074
+1.702.425.5100 (ph) / +1.888.867.5734 (fax)

-36-