1   STUART F. DELERY
    Acting Assistant Attorney General

2
    DANIEL G. BOGDEN
3   United States Attorney

4   DIANE KELLEHER
    Assistant Director, Federal Programs Branch

5
    JOHN K. THEIS
6   Trial Attorney, Federal Programs Branch
    United States Department of Justice, Civil Division
7   20 Massachusetts Ave., N.W., Rm. 6701
    Washington, D.C. 20530
8   Telephone: (202) 305-7632
    Facsimile: (202) 616-8460
9   John.K.Theis@usdoj.gov

10  *Attorneys for Defendants*

11                    **UNITED STATES DISTRICT COURT**
                           **DISTRICT OF NEVADA**
12

13  S.  ROWAN WILSON,

14                    Plaintiff,

15          v.

16  ERIC HOLDER, Attorney General of the        Case No.: 2:11-cv-1679-GMN-(PAL)
    United States, *et al.*,
17
                    Defendants.
18

19            **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS
                 OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**
20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      DEFENDANTS HAVE MOVED TO DISMISS UNDER RULE 12(b)(6), OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ................................................................ 1

II.     THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIMS ..................... 3

        A.      Plaintiff Cannot Challenge the Effect of Defendants' Actions on Registry Cardholders Without a Valid Registry Card .................................................. 3

        B.      Plaintiff Cannot Seek Relief for Injuries that are Self-Inflicted ........................... 5

        C.      Plaintiff's Alleged Injury is Not Traceable to Defendant's Conduct ...................... 6

III.    PLAINTIFF HAS NOT ESTABLISHED A SECOND AMENDMENT VIOLATION ...... 6

        A.      At Most, Intermediate Scrutiny Would Apply to Any Independent Constitutional Analysis ................................................................................ 6

        B.      Plaintiff's Challenge to the Statutes Must Fail ............................................... 8

                1.      Plaintiff's Second Amendment Challenges to § 922 (g)(3) and § 922(d)(3) are Foreclosed by Precedent .............................................. 8

                2.      Even if *Dugan* and *Chafin* Did Not Apply, the Challenge to the Two Statutes Fail, as Unlawful Drug Users, Including Those Who Comply with State Medical Marijuana Laws, Fall Outside the Scope of the Second Amendment ................................................................ 9

                3.      Under an Independent Constitutional Analysis, § 922(g)(3) and § 922 (d)(3) Survive, as They Substantially Relate to the Important Government Interest in Protecting Public Safety and Combating Violent Crime ......... 10

        C.      27 C.F.R. 478.11 Does Not Violate the Second Amendment ............................ 13

        D.      The Open Letter Does Not Violate the Second Amendment ............................. 14

                1.      Plaintiff May Not Amend Her Complaint to Add an APA Claim .............. 14

                2.      The Open Letter is an Interpretive Rule Entitled to Deference Under *Skidmore* and *Auer* ................................................................ 15

                3.      The Open Letter Does Not Violate the Second Amendment ................... 18

IV.     THE OPEN LETTER DOES NOT VIOLATE THE FIRST AMENDMENT .................. 19

        A.      Possession of Registry Card Does Not Constitute "Expressive Conduct" ............ 19

        B.      Even if Possession of a Registry Card Can be Considered Expressive Conduct, the Open Letter Satisfies the Appropriate Level of Scrutiny ..................................... 21

V.  BOTH OF PLAINTIFF'S CLAIMS UNDER THE DUE PROCESS CLAUSE MUST FAIL.................................................................................................................22

    A.  Plaintiff Cannot Rest Her Substantive Due Process Claim on Other Constitutional Amendments ..............................................................................22

    B.  Defendants Have Not Violated Plaintiff's Right to Procedural Due Process ........24

VI.  PLAINTIFF FAILS TO STATE A VALID EQUAL PROTECTION CLAIM .................24

VII.  PLAINTIFF'S DAMAGES CLAIM SHOULD BE DISMISSED ....................................25

CONCLUSION.................................................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

*Albright v. Oliver*,
   510 U.S. 266 (1994)..................................................................................................22

*Alcaraz v. Block*,
   746 F.2d 593 (9th Cir. 1984)....................................................................................16

*Am. Rivers v. FERC*,
   201 F.3d 1186 (9th Cir. 1999)....................................................................................2

*Ashcroft v. Iqbal*,
   129 S. Ct. 662 (2009)................................................................................................20

*Arizonans for Official English v. Arizona*,
   520 U.S. 43 (1997)......................................................................................................3

*Auer v. Robbins*,
   519 U.S. 452 (1997)..................................................................................................17

*Big Blue Capital Partners, LLC v. Recontrust Co., N.A.*,
   No. 6:11-CV-1412, 2012 WL 1870752 (D. Or. May 21, 2012)................................5

*Broam v. Bogan*,
   320 F.3d 1023 (9th Cir. 2003)..................................................................................15

*Buckley v. Valeo*,
   424 U.S. 1 (1976)......................................................................................................13

*Ctr for Biological Diversity v. Lohn*,
   511 F.3d 960 (9th Cir. 2007)......................................................................................4

*Christensen v. Harris County*,
   529 U.S. 576 (2000)..................................................................................................17

*Citizens for Better Forestry v. USDA*,
   567 F.3d 1128 (9th Cir. 2009)....................................................................................8

*City of Ladue v. Gilleo*,
   512 U.S. 43 (1994)....................................................................................................12

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)......................................................................................................3

*Crozier v. Endel*,
   No. 3:09-cv-00694, 2010 WL 5250875 (D. Nev. Dec. 16, 2010)............................23

*Denney v. DEA*,
   508 F. Supp. 2d 815 (E.D. Cal. 2007)....................................................................23

*District of Columbia v. Heller*,
   554 U.S. 570 (2008)............................................................................................*passim*

28

*Dittman v. California*,
  191 F.3d 1020 (9th Cir.1999) ............................................................................3

*Erickson v. United States*,
  67 F.3d 858 (9th Cir. 1995) ...............................................................................24

*Erringer v. Thompson*,
  371 F.3d 625 (9th Cir. 2004) .............................................................................15

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) ...............................................................................9

*Feldman v. Bomar*,
  518 F.3d 637 (9th Cir. 2008) ...............................................................................4

*Ferguson v. Skrupa*,
  372 U.S. 726 (1963) ...........................................................................................13

*Fire Equip. Mfrs. Ass'n v. Marshall*,
  679 F.2d 679 (7th Cir. 1982) .................................................................... *passim*

*Fontana v. Haskin*,
  262 F.3d 871 (9th Cir. 2001) .............................................................................22

*Golden v. Zwickler*,
  394 U.S. 103 (1969) .............................................................................................5

*Gen. Motors Corp. v. Ruckelshaus*,
  742 F.2d 1561 (D.C. Cir. 1984) .........................................................................16

*Gonzalez-Medina v. Holder*,
  641 F.3d 333 (9th Cir. 2011) .............................................................................24

*Graham v. Connor*,
  490 U.S. 386 (1989) ...........................................................................................22

*Hearn v. W. Conference of Teamsters Pension Trust Fund*,
  68 F.3d 301 (9th Cir. 1995) .................................................................................3

*Heller v. District of Columbia*,
  670 F.3d 1244 (D.C. Cir. 2011) .......................................................................7, 9

*Hemp Indust. v. DEA*,
  333 F.3d 1082 (9th Cir. 2003) ...........................................................................16

*Johnston v. Port Auth. of N.Y. and N.J.*,
  No. 09-CV-4432, 2011 WL 3235760 (E.D.N.Y. July 28, 2011) .........................19

*Lamie v. U.S. Trustee*,
  540 U.S. 526 (2004) .............................................................................................2

*Marin Alliance For Med. Marijuana v. Holder*,
  866 F. Supp. 2d 1142 (N.D. Cal. 2011) .........................................................23, 24

iv

*McDonald v. City of Chicago,*
   130 S. Ct. 3020 (2010)...........................................................................................................7

*Mora-Meraz v. Thomas,*
   601 F.3d 933 (9th Cir. 2010) ............................................................................................16

*Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales,*
   468 F.3d 826 (D.C. Cir. 2006) .......................................................................................5, 6

*Nordyke v. King,*
   319 F.3d 1185 (9th Cir. 2003) .............................................................................19, 20, 21

*Nordyke v. King,*
   644 F.3d 776 (9th Cir. 2011) ............................................................................................22

*Nordyke v. King,*
   681 F.3d 1041 (9th Cir. 2012) .....................................................................................6, 22

*Olympic Arms v. Buckles,*
   301 F.3d 384 (6th Cir. 2002) ...........................................................................................13

*Orengo Caraballo v. Reich,*
   11 F.3d 186 (D.C. Cir. 1993) ...........................................................................................16

*Pennsylvania v. New Jersey,*
   426 U.S. 660 (1976) ...........................................................................................................5

*Peruta v. County of San Diego,*
   758 F. Supp. 2d 1106 (S.D. Cal. 2010) .............................................................................7

*Petro-Chemical Processing, Inc. v. EPA,*
   866 F.2d 433 (D.C. Cir. 1989) ...........................................................................................5

*Presbyterian Church v. United States,*
   870 F.2d 518 (9th Cir. 1989) ...........................................................................................15

*Price v. Stevedoring Servs. of Am., Inc.,*
   697 F.3d 820 (9th Cir. 2012) ...........................................................................................17

*Raich v. Gonzales,*
   500 F.3d 850 (9th Cir. 2007) .....................................................................................23, 24

*Robinson v. Smith,*
   No. 3:09-cv-00138-RAM, 2010 WL 3463594 (D. Nev. Aug. 27, 2010).........................23

*Roulette v. City of Seattle,*
   97 F.3d 300 (9th Cir. 1996) .............................................................................................21

*Ruiz v. Laguna,*
   Case No. 06-cv-187, 2007 WL 1120350 (S.D. Cal. March 28, 2007)...............................15

*Russman v. Bd. of Educ. of Enlarged City School Dist. of the City of Watervliet,,*
   260 F.3d 114 (2d Cir. 2001) ..............................................................................................4

*Sabri v. United States,*
    541 U.S. 600 (2004) ..................................................................................9

*Schall v. Martin,*
    467 U.S. 253 (1984) ................................................................................10

*Shalala v. Guernsey Mem'l Hospital,*
    514 U.S. 87 (1995) ..................................................................................15

*Stormans, Inc. v. Selecky,*
    586 F.3d 1109 (9th Cir. 2009) ...........................................................10, 18

*Suzlon Energy Ltd. V. Microsoft Corp.,*
    671 F.3d 72 (9th Cir. 2011) .....................................................................2

*Temple v. Adams,*
    No. CV-F-04-6716, 2006 WL 2454275 (E.D. Cal. Aug. 23, 2006) ........................20

*Town of Castle Rock, Colo. v. Gonzales,*
    545 U.S. 748 (2005) ..................................................................................9

*Turner Broad. System v. FCC,*
    512 U.S. 622 (1994) ................................................................................13

*United States v. Carter,*
    669 F.3d 411 (4th Cir. 2012) ....................................................... *passim*

*United States v. Chafin,*
    423 F. App'x 342 (4th Cir. 2011) ..............................................................9

*United States v. Chester,*
    628 F.3d 673 (4th Cir. 2010) ................................................................7, 9

*United States v. Dugan,*
    657 F.3d 998 (9th Cir. 2011) ......................................................... *passim*

*United States v. Lanier,*
    520 U.S. 259 (1997) ................................................................................22

*United States v. Lewitzke,*
    176 F.3d 1022 (7th Cir. 1999) ................................................................13

*United States v. Marzzarella,*
    614 F.3d 85 (3d Cir. 2010) ...................................................................7, 9

*United States v. Oakland Cannabis,*
    532 U.S. 483 (2001) ....................................................................12, 17, 23

*United States v. O'Brien,*
    391 U.S. 367 (1968) ................................................................................21

*United States v. Reese,*
    627 F.3d 792 (10th Cir. 2010) ..............................................................7, 9

vi

*United States v. Salerno,*
    481 U.S. 739 (1987)........................................................................9, 10

*United States v. Skoien,*
    614 F.3d 638 (7th Cir. 2010)..........................................................11

*United States v. Stacy,*
    No. 09-cr-3695, 2010 WL 4117276 (S.D. Cal. Oct. 18, 2010)...............8

*United States v. Tooley,*
    717 F. Supp. 2d at 597....................................................................11

*United States v. Virginia,*
    518 U.S. 515 (1996)........................................................................12

*United States v. Yancey,*
    621 F.3d 681 (7th Cir. 2010)....................................................5, 7, 11

*Vasquez v. Los Angeles County,*
    487 F.3d 1246 (9th Cir. 2007)..........................................................3

*Vegas Diamond Properties, LLC v. FDIC,*
    669 F.3d 933 (9th Cir. 2012)..........................................................3, 4

*Ward v. Rock Against Racism,*
    491 U.S. 781 (1989)..........................................................................7

*W. Coast Seafood Processors Ass'n v. NRDC,*
    643 F.3d 701 (9th Cir. 2011)............................................................4

**FEDERAL STATUTES**

5 U.S.C. § 702...................................................................................15

21 U.S.C. § 829.................................................................................17

27 C.F.R. § 478.11...................................................................1, 12, 17

28 U.S.C. § 2201.................................................................................4

28 U.S.C. § 2201(a).............................................................................4

18 U.S.C. §§ 922(b)(2)........................................................................6

18 U.S.C. § 922(d)(3)..........................................................................1

**STATE STATUTES**

Nev. Rev. Stat. § 202.360(1)(c)...........................................................6

Nev. Rev. Stat. § 453A.050...............................................................19

Nev. Rev. Stat. § 453A.200(1)(f) ....................................................................................2

Nev. Rev. Stat. § 453A.200(3)(a) ...................................................................................2

Nev. Rev. Stat. § 453A.200(3) .......................................................................................2

Nev. Rev. Stat. § 453A.220(4) .....................................................................................19

Nev. Rev. Stat. § 453A.240 ....................................................................................19, 25

Nev. Rev. Stat. § 453A.210(a)(2) ................................................................................19

Nev. Rev. Stat. § 453A.210(a)(3) ................................................................................19

As explained in Defendants' opening brief, Plaintiff's constitutional challenges to 18 U.S.C. §§ 922(d)(3) and (g)(3), 27 C.F.R. § 478.11, and the September 2011 Open Letter issued by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") have no merit. This Court lacks Article III jurisdiction because Plaintiff does not have standing to bring the current action. Even if Plaintiff had standing, the First Amended Complaint must be dismissed for failure to state claims upon which relief may be granted. Plaintiff's Second Amendment challenges to the statutes, the regulation, and the Open Letter are foreclosed by precedent, and in any event, the laws and the letter survive an independent constitutional analysis. Plaintiff's First Amendment challenge must fail because possession of a state-issued registry card does not qualify as "expressive conduct" subject to First Amendment protection. Plaintiff's due process claims are equally flawed. Her substantive due process claim impermissibly rests on rights guaranteed in other Amendments, and her procedural due process claim falls flat because she has not been deprived of a constitutionally-protected liberty or property interest. Finally, Plaintiff's equal protection claim does not allege a proper classification of a group against whom Defendants have discriminated. Plaintiff's responsive brief does nothing to diminish these arguments, but instead attempts, as in the previous round of briefing, to constructively amend the operative pleading by adding allegations and causes of action not present in the First Amended Complaint. The Court should reject those attempts and dismiss this action with prejudice.

## I.    DEFENDANTS HAVE MOVED TO DISMISS UNDER RULE 12(b)(6), OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT.

Plaintiff again misconstrues the posture of Defendants' motion. Defendants moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). *See generally* Def. Mot. to Dismiss Pl's 1st Am. Compl., or in the Alternative, for Summ. J. (Dkt. 37); *see also* Defendants' Memorandum in Support ("Def. Mem.") at 10:21-25. Plaintiff lacks standing to bring this suit, and therefore the FAC should be dismissed under Rule 12(b)(1). Even if Plaintiff has standing, each of Plaintiff's claims should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. With regard to Plaintiff's Second Amendment challenge to § 922(g)(3), Defendants argued in Section II.A.1 that the claim should dismissed

under *United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011).  .  The Court need not proceed further in order to dismiss this claim.  However, in Sections II.A.2 and II.A.3 of the Motion, Defendants further argued that Plaintiff's Second Amendment claim should be dismissed because unlawful drug users fall outside the scope of the Second Amendment as understood at the adoption of the Bill of Rights, and because § 922(g)(3) survives intermediate scrutiny.  *See* Def. Mem. at 19:11-30:28.  In the course of their argument, Defendants presented some extrinsic sources that the Court may consider, such as a government report on the association between cognitive functioning and marijuana use.  If the Court determines that it can only dismiss the Complaint by relying on those extrinsic sources, then the Court should treat Defendants' motion as a motion for summary judgment under Rule 56.  To facilitate that, Defendants attached to their motion a Statement of Undisputed Facts in compliance with Local Rule 56-1.[1]

In a purported effort to defeat Defendants' alternative motion for summary judgment, Plaintiff raises two factual "disputes," neither of which has any relevance to the current motion. First, Plaintiff suggests that there is a "factual dispute" as to Defendants' intent in issuing the Open Letter.  But the FAC makes no mention of Defendant's intent beyond the clearly expressed intent on the face of the Open Letter itself.  More importantly, Defendants' intent in issuing the Open Letter is irrelevant to Plaintiff's claims for injunctive and declaratory relief.  The plain language of the letter is clear on its face, which means that this Court need not delve into the history of the issuance of the letter.  *See Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 728 (9th Cir. Oct. 3, 2011) (citing *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (finding it "unnecessary to rely on the legislative history" when the plain language of the statute was clear, but finding it an "instructive" way to "lend support" to its holding)); *Am. Rivers v. FERC*, 201

---

[1] Plaintiff raises several objections to Defendants' Statement of Undisputed Facts, but only one need be addressed.  Plaintiff contends that "[t]here is no requirement in the Nevada statutes that a Registry Cardholder ever use or possess marijuana."  Resp. to Def. Mot. to Dismiss Pl's 1st Am. Compl. or, in the Alternative, for Summ. J. ("Pl's Opp.") (Dkt. 41) at 2:8-9.  While it is true that the Nevada statute does not require that every cardholder use marijuana, the issue in this case is whether possession of a registry card gives "reasonable cause to believe," 18 U.S.C. 922(d)(3), that a person is a user of marijuana.  *See* Def. Mem. at 34 n.21.  And as discussed below, *see infra* at 19 and n.11, Plaintiff has not rebutted Defendants' showing that current use can reasonably be inferred.

F.3d 1186, 1204 (9th Cir. 1999) ("[W]e are mindful that this Court steadfastly abides by the principle that 'legislative history—no matter how clear—can't override statutory text.'") (quoting *Hearn v. W. Conference of Teamsters Pension Trust Fund*, 68 F.3d 301, 304 (9th Cir. 1995)). Plaintiff also argues that there is a material dispute as to her intent in obtaining the registry card. But at this stage, there is no dispute about Plaintiff's intent: as expressed in the declaration attached to the FAC, Plaintiff states that she suffered from severe and debilitating cramps that could be treated by cannabis, and sought a doctor's recommendation to obtain a medical marijuana registry card. FAC Ex. 1 at ¶¶ 20-22.

## II.   THIS COURT LACKS JURISDICTION OVER PLAINTIFF'S CLAIMS

An Article III court has a continuing obligation to assess its own subject-matter jurisdiction. *See Dittman v. California*, 191 F.3d 1020, 1025 (9th Cir. 1999). Because Plaintiff lacks standing to pursue her claims, the Court should dismiss the FAC for lack of jurisdiction.

### A.   Plaintiff Cannot Challenge the Effect of Defendants' Actions on Registry Cardholders Without a Valid Registry Card

This Court lacks subject matter jurisdiction because Plaintiff lacks a valid registry card. An actual case or controversy must exist at every stage of the litigation. *Vegas Diamond Properties, LLC v. FDIC*, 669 F.3d 933, 936 (9th Cir. 2012) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). If Plaintiff no longer suffers an ongoing injury or an immediate threat of injury, her claim is moot, and should be dismissed.[2] *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983); 28 U.S.C. § 2201(a) (proceeding under the Declaratory Judgment Act requires "a case of actual controversy").

Plaintiff's alleged injury is that she cannot obtain a firearm because she possesses a valid registry card. Plaintiff attached an expired card to the FAC. *See* FAC Ex. 1 at 10. She then attached another registry card to her opposition to the motion to dismiss, *see* Pl's Opp. Ex. A, but

---

[2] Defendants presented this issue within the rubric of "standing," though more accurately, Plaintiff's claims should be dismissed under the doctrine of mootness. As the Ninth Circuit has explained, mootness is the "doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1253 n.6 (9th Cir. 2007).

3

that card expired on March 10, 2013.  Again, because the only alleged impediment to Plaintiff's ability to obtain a firearm has been removed, Plaintiff is not suffering an ongoing injury, and the FAC lacks an "actual controversy."

Plaintiff argues that even if she had an expired card, her claim could still proceed. Plaintiff raises the "capable of repetition, but evading review" exception to the mootness doctrine, but that narrow exception does not apply here.  The exception has two prongs.  The first requires a "reasonable expectation" that the same party will confront the same controversy again. *W. Coast Seafood Processors Ass'n v. NRDC*, 643 F.3d 701, 704 (9th Cir. 2011) (citing *Feldman v. Bomar*, 518 F.3d 637, 644 (9th Cir. 2008)).  Under the second prong, the issue must "evade review," which means that it must be "inherently limited in duration such that it is likely always to become moot before federal court litigation is completed."  *Id.* at 705 (citing *Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 965 (9th Cir. 2007)).  The exception applies only in "extraordinary cases."  *Id.*, 643 F.3d at 704 (citation omitted); *Vegas Diamond*, 669 F.3d at 936 (noting that the exception applies "only in exceptional situations").

Though the one-year period of the registry card may be enough to satisfy the second of the two prongs, Plaintiff has not alleged a reasonable expectation that the alleged injury will recur.  At no point in the FAC does she allege that she intends to continue to renew her card and continue to return to the same FFL to purchase the firearm.  Without those allegations, the exception does not apply.  Plaintiff cannot rely on her suggestion in her opposition that "she could *potentially* obtain a new Registry Card in the future and again be denied the purchase of a firearm as a result of her possession of the Card."  Pl's Opp. at 6 (emphasis added).[3]  That allegation is not in the FAC, and in any event, the "reasonable expectation" prong requires more than a hypothetical supposition that an injury could "potentially" occur.  *See Russman v. Bd. of Educ. of Enlarged City School Dist. of the City of Watervliet*, 260 F.3d 114, 120 (2d Cir. 2001) ("[M]ere speculation that the parties will be involved in a dispute over the same issue does not

---

[3] Plaintiff further posits in a footnote that an FFL could deny the sale of a firearm to a holder of an expired card.  As noted in the opening brief, if an FFL were to do so, the injury would then be traceable to the FFL, and not the Government.  *See* Def. Mem. at 12 n.10.

rise to the level of a reasonable expectation or demonstrated probability of recurrence.") (citation omitted); *cf. Golden v. Zwickler*, 394 U.S. 103, 109 (1969) (ordering dismissal of a declaratory judgment action where there was insufficient "immediacy and reality" that the complaining party would again encounter the challenged action).

**B. Plaintiff Cannot Seek Relief for Injuries that are Self-Inflicted**

Assuming that Plaintiff had a valid registry card, she still would lack standing.  Injuries that are traceable not to a defendant, but to a plaintiff's own decisionmaking, are insufficient to confer standing.  *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976); *Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006); *Fire Equip. Mfrs. Ass'n v. Marshall*, 679 F.2d 679, 682 n.5 (7th Cir. 1982); *cf. United States v. Yancey*, 621 F.3d 681, 687 (7th Cir. 2010).  In response, Plaintiff suggests that Defendants' argument is "analogous to arguing that a pregnant woman may not challenge laws restricting access to abortions because the woman's own decision making is what caused her to become pregnant." Pl's Opp. at 7:26-27.  Plaintiff's analogy is flawed.  The harm in Plaintiff's hypothetical is that the woman cannot obtain an abortion, not that she is pregnant.  The woman in the hypothetical would therefore have standing to challenge such a restriction, because the harm (inability to obtain an abortion) would be directly traceable to the State and only the State.  In this case, Plaintiff's alleged harm is that she cannot obtain a firearm because she possesses a registry card, which she only obtained as a result of her own efforts.  This alleged harm is traceable not to Defendants, but to Plaintiff's choice to obtain a state-issued medical marijuana card.

Additionally, Plaintiff argues that the "self-inflicted" harm standard is found "almost exclusively in cases dealing with disputes between two states." Pl's Opp. at 8:19-20.  This is not so.  Courts have found standing lacking as a result of a plaintiff's self-inflicted injury in a wide variety of contexts outside of disputes between states.  *See, e.g., Big Blue Capital Partners, LLC v. Recontrust Co., N.A.*, No. 6:11-cv-1412, 2012 WL 1870752, at *3 (D. Or. May 21, 2012) (finding no standing in a suit between two private parties because "[t]o the extent that plaintiff suffered an injury, it was due to plaintiff's own actions"); *Petro-Chem Processing, Inc. v. EPA*, 866 F.2d 433, 438 (D.C. Cir. 1989) (finding traceability prong of standing lacking in suit

between private party and the federal government where harm was self-inflicted); *Nat'l Family Planning & Reproductive Health*, 468 F.3d at 831; *Fire Equip. Mfrs. Ass'n*, 679 F.2d at 682 n.5. Dismissal is required here, because Plaintiff can avoid her injury simply by relinquishing her registry card.

### C. Plaintiff's Alleged Injury is Not Traceable to Defendants' Conduct

If Plaintiff were to prevail in this action, and § 922(g)(3), § 922(d)(3), 27 C.F.R. 478.11, and the Open Letter were all found unconstitutional, Plaintiff still could not possess a firearm under Nevada law or purchase a firearm from an FFL under § 922(b)(2).  Plaintiff's alleged injury is not fairly traceable to Defendants' conduct because both Federal and Nevada law prohibit possession of a firearm by an "unlawful user" of a controlled substance.  *See* Def. Mem. at 13-15.  Plaintiff fails to address the argument that her alleged injury is not "fairly traceable" to Defendants' conduct, and it should therefore be considered conceded.

## III.  PLAINTIFF HAS NOT ESTABLISHED A SECOND AMENDMENT VIOLATION

Though Plaintiff's Complaint seeks a declaration that § 922(g)(3), § 922(d)(3), 27 C.F.R § 478.11, and the Open Letter violate the Second Amendment, *see* SAC Prayer for Relief, Plaintiff's opposition makes clear that the focus of her suit is the Open Letter.  *See* Pl's Opp. at 9-23.  However, because the Open Letter merely interprets the existing law, *see* Def. Mem. at 32, the analysis must begin with the validity of the underlying statutes and the regulation under the Second Amendment. This analysis compels the conclusion that Plaintiff's Second Amendment challenge cannot go forward.

### A.  At Most, Intermediate Scrutiny Would Apply to Any Independent Constitutional Analysis

As a preliminary matter, if the Court decides to engage in any independent constitutional analysis of Plaintiff's challenges, no more than intermediate scrutiny should apply.  As set forth in Defendants' opening brief, though the Ninth Circuit has not directly addressed the question of the appropriate level of scrutiny applicable to Second Amendment claims, *see Nordyke v. King¸* 681 F.3d 1041, 1044-45 (9th Cir. 2012), other courts of appeals to reach this issue have uniformly applied intermediate scrutiny.  *See United States v. Carter*, 669 F.3d 411, 416 (4th Cir.

2012) (applying intermediate scrutiny in evaluating challenge to § 922(g)(3)); *Yancey*, 621 F.3d

at 683 (same); *see also United States v. Marzzarella*, 614 F.3d 85,  96-97 (3d Cir. 2010)

(applying intermediate scrutiny to challenge to § 922(k)); *United States v. Reese*, 627 F.3d 792,

802 (10th Cir. 2010) (applying intermediate scrutiny to challenge to § 922(g)(8)); *Heller v.

District of Columbia*, 670 F.3d 1244, 1257 (D.C. Cir. 2011) ("*Heller II*") (applying intermediate

scrutiny to review novel gun registration laws).  Intermediate scrutiny is particularly appropriate

here, where the severity of the restriction is not particularly substantial.  *Heller II*, 670 F.3d at

1257; *Yancey*, 621 F.3d at 686-87.   The weight of this authority confirms that, if Plaintiff's

Second Amendment claim is to be reviewed independently by the Court, no more than

intermediate scrutiny should apply.

Plaintiff contends that strict scrutiny should apply because the right protected by the

Second Amendment has been held to be a fundamental right.  Pl's Opp. at 17-18.  "The

[Supreme] Court has not said, however, and it does not logically follow, that strict scrutiny is

called for whenever a fundamental right is at stake."  *Heller II*, 670 F.3d at 1256 (citing *Ward v.

Rock Against Racism*, 491 U.S. 781, 791 (1989); *Marzzarella*, 614 F.3d at 96; *United States v.

Chester*, 628 F.3d 673, 682 (4th Cir. 2010); and Adam Winkler, *Scrutinizing the Second

Amendment*, 105 Mich. L. Rev. 683, 697-98, 700 (2007)).  Therefore, that the Second

Amendment protects rights that are "fundamental," *McDonald v. City of Chicago*, 130 S. Ct.

3020, 3036-42 (2010), does not mandate application of strict scrutiny to Plaintiff's claim.  *See

Peruta v. Cnty. of San Diego*, 758 F. Supp. 2d 1106, 1115-16 (S.D. Cal. 2010) (applying

intermediate scrutiny to a Second Amendment challenge, as "fundamental constitutional rights

are not invariably subject to strict scrutiny").[4]

---

[4] Moreover, the *en banc* opinion in *Nordyke* arguably held that strict scrutiny would not apply to Second Amendment challenges.  *See* 644 F.3d at 1045 n.2 (O'Scannlain, J., concurring).

**B.  Plaintiff's Challenge to the Statutes Must Fail**

**1.  Plaintiff's Second Amendment Challenges to § 922(g)(3) and § 922(d)(3) are Foreclosed by Precedent**

Plaintiff's Second Amendment challenge to § 922(g)(3) is foreclosed by *United States v. Dugan*, 657 F.3d 998 (9th Cir. 2011).  There, the Ninth Circuit upheld § 922(g)(3) against a Second Amendment challenge, holding that "[b]ecause Congress may constitutionally deprive felons and mentally ill people of the right to possess and carry weapons, . . . Congress may also prohibit illegal drug users from possessing firearms."  *Id.* at 999-1000.  Dugan, who was licensed to grow and use medical marijuana, argued that many marijuana users, including those in compliance with state medical marijuana laws, do not "engag[e] in any behavior that would provide a legitimate basis for excluding them from the reach of the Second Amendment."  *See* Brief for Appellant at 59, *United States v. Dugan*, 657 F.3d 998 (2011) (No. 08-10579), ECF No. 57.  In rejecting Dugan's challenge, the court of appeals did not distinguish between Dugan's status as a medical marijuana cardholder and any other user of marijuana.  *Dugan's* holding—that the prohibition on illegal drug users from possessing firearms does not violate the Second Amendment—applies equally to all unlawful users of marijuana.  *See United States v. Stacy*, No. 09-cr-3695, 2010 WL 4117276, at *7 (S.D. Cal. Oct. 18, 2010) (noting, in the course of rejecting a Second Amendment challenge to § 922(g)(3), that "[t]he fact that this particular case involves the alleged lawful use of marijuana under state law does not have any bearing on the presumptively lawful nature of the restriction").  Accordingly, under *Dugan*, Plaintiff's Second Amendment challenge to § 922(g)(3) must fail.  *See, e.g., Citizens for Better Forestry v. USDA*, 567 F.3d 1128, 1134 (9th Cir. 2009) (court of appeals precedent is binding on district court).  Plaintiff's criticism of *Dugan*—the alleged brevity of the court's analysis and an allegation that the "facts of *Dugan* are so prejudicial that they fail to provide a proper framework for analyzing the constitutionality of § . . . 922(g)(3)" (Pl's Opp. at 22:19-20)—even if true, is not a proper ground for ignoring Ninth Circuit precedent.

Plaintiff's challenge to § 922(d)(3)'s restriction on the sale of firearms is similarly meritless.  *Heller* neither recognized a right to sell firearms nor called into question "laws imposing conditions and qualifications on the commercial sale of arms."  *District of Columbia v.*

*Heller*, 554 U.S. 570, 626–27 (2008).  In addition, for the same reasons that the Second Amendment does not preclude Congress from forbidding unlawful drug users from possessing firearms, Congress may also forbid that same group from acquiring firearms.  *See United States v. Chafin*, 423 F. App'x 342, 344 (4th Cir. Apr. 13, 2011) (unpublished).

### 2. Even if *Dugan* and *Chafin* Did Not Apply, the Challenge to the Two Statutes Fail, as Unlawful Drug Users, Including Those Who Comply with State Medical Marijuana Laws, Fall Outside the Scope of the Second Amendment.

Because *Dugan* and *Chafin* resolve Plaintiff's Second Amendment challenges to §§ 922(g)(3) and (d)(3), the Court need not undertake an "independent" constitutional analysis of the two statutes.  *See Town of Castle Rock. v. Gonzales*, 545 U.S. 748, 778 (2005) (longstanding doctrine of constitutional avoidance cautions courts to avoid making unnecessary constitutional determinations).  Nonetheless, were the Court to engage in such an analysis, Plaintiff's claim would still fail.  As set forth in Defendants' Motion, several courts have established a two-step approach to Second Amendment challenges to federal statutes and regulations.  *See, e.g.*, *Heller II*, 670 F.3d at 1252-53; *Ezell v. City of Chicago*, 651 F.3d 684, 701–04 (7th Cir. 2011); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *Reese*, 627 F.3d at 800–01; *Marzzarella*, 614 F.3d at  89.  Under this approach, "[w]e ask first whether a particular provision impinges upon a right protected by the Second Amendment; if it does, then we go on to determine whether the provision passes muster under the appropriate level of constitutional scrutiny."  *Heller II*, 670 F.3d at 1252.  Plaintiff's claim fails both parts of the analysis, as unlawful drug users are not within the class of law-abiding, responsible citizens historically protected by the Second Amendment, and § 922(g)(3) survives the appropriate level of scrutiny.[5]

In the opening brief, Defendants demonstrated that unlawful drug users fall outside the scope of the Second Amendment as understood at the adoption of the Bill of Rights.  *Heller* recognized the "core" Second Amendment right of "*law-abiding, responsible* citizens to use arms

---

[5] Plaintiff appears to frame her Second Amendment argument as an overbreadth challenge.  *See, e.g.*, Pl's Opp. at 19-21.  This is not a proper Second Amendment challenge.  The overbreadth doctrine permits courts to relax the usual rules of standing in the First Amendment context and in a few other settings.  *Sabri v. United States*, 541 U.S. 600, 609-10 (2004); *see also United States v. Salerno*, 481 U.S. 739, 745 (1987) ("[W]e have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment.").

1  in defense of hearth and home." *Heller*, 554 U.S. at 634-35 (emphasis added).  This articulation

2  acknowledges that the Anglo-American right to arms incorporated into the Second Amendment

3  excluded certain categories of individuals, including non-law-abiding citizens.   Therefore,

4  violators of the Controlled Substances Act fall outside of the Second Amendment's scope.

5  Plaintiff apparently does not dispute this point.  She does not offer any historical analysis of the

6  Second Amendment and thus effectively concedes that violators of the law are disqualified from

7  exercising their Second Amendment rights.

8       **3.  Under an Independent Constitutional Analysis, § 922(g)(3) and § 922(d)(3)
            Survive, as They Substantially Relate to the Important Government Interest in
9            Protecting Public Safety and Combating Violent Crime.**

10       Instead, Plaintiff jumps to the second step of the analysis, arguing that §§ 922(g)(3) and

11  (d)(3) fail any level of scrutiny.   As noted *supra*, intermediate scrutiny, at most, should apply to

12  Plaintiff's constitutional challenge.  Under intermediate scrutiny, "a regulation must be

13  substantially related to an important governmental objective."  *Stormans, Inc. v. Selecky*, 586

14  F.3d 1109, 1134 (9th Cir. 2009).  Applying intermediate scrutiny, the law restricting the

15  possession of firearms by unlawful drug users relates substantially to the important government

16  objective of reducing violent crime and protecting public safety.

17       Plaintiff previously conceded that § 922(g)(3)—and, by implication, § 922(d)(3))—is

18  intended to further a "substantial government interest" in "keep[ing] firearms out of the hands of

19  potentially dangerous people."  Dkt. 17 at 21 (further noting that "[t]his underlying goal is

20  perfectly valid and addresses a genuine policy concern").  Indeed, the Supreme Court has

21  characterized the relevant interest as "compelling."  *Salerno*, 481 U.S. at 750; *Schall v. Martin*,

22  467 U.S. 253, 264 (1984).  However, Plaintiff contends that the two laws fail to provide a direct,

23  substantial relationship between the objective and the chosen means.  Plaintiff is incorrect.

24  Defendants' opening brief presented a wide range of sources supporting the conclusion that a

25  substantial relationship exists between § 922(g)(3) as applied to drug users and Congress's goal

26  of protecting public safety and combating violent crime, including the legislative history of §

27  922(g)(3), similar state restrictions, and academic and empirical studies.  In addition, the limited

28  temporal scope of the statute—tailoring the restriction to *current* unlawful users—ensures that

the statute bears a reasonable fit to the end it serves.  *See Carter*, 669 F.3d at 419; *Yancey*, 621

F.3d at 687 ("[T]he Second Amendment . . . does not require Congress to allow [an unlawful

user] to simultaneously choose both gun possession and drug abuse.").  These sources also

support the conclusion that § 922(d)(3) is substantially related to the same government interest.

In response, Plaintiff makes three primary arguments as to why the two statutes are not

substantially related to the government interest in protecting public safety, each of which is

baseless.

        First, Plaintiff contends that §§ 922(g)(3) and (d)(3) bear no substantial relationship to

their ends because of the statutes' "extraordinary breadth and scope."  Pl's Opp. at 19.  According

to Plaintiff, "[t]he overwhelming impact of the law . . . falls on the shoulders of non-violent,

harmless individuals."  *Id.* at 20.  However, the fact that certain individuals who may

theoretically pose a lesser threat to public safety fall within the ambit of §§ 922(g)(3) or

922(d)(3) does not render the statutes unconstitutional.  This is implicit in *Heller*'s recognition of

the validity of categorical limitations on the Second Amendment's scope.  554 U.S. at 626-27,

n.26; *see also Skoien*, 614 F.3d at 641; *United States v. Tooley*, 717 F. Supp. 2d 580, 597 (S.D. W.

Va. 2010). [6]  Moreover, "intermediate scrutiny, by definition, permits legislative bodies to paint

with a broader brush than strict scrutiny. . . . As a consequence, the degree of fit between [§

922(g)(3)] and the well-established goal of promoting public safety need not be perfect; it must

only be substantial."  *Heller II*, 698 F. Supp. 2d at 191 (citations and internal punctuation

omitted).  Plaintiff nevertheless argues that "enormous swaths of the population" are deprived of

their Second Amendment rights by the statutes and the ATF regulation, because, according to

Plaintiff, the restrictions apply to all individuals who have reported using marijuana at some

point in their lifetime and individuals who use prescription drugs.  Pl's Opp. at 23.  Plaintiff

---

[6] Plaintiff further argues that the interpretation of the term "unlawful user" in § 922(d)(3) should only apply to "recently convicted of drug-related crimes."  Pl's Opp. at 14:18-20.  But that reading is inconsistent with the language of the statute as a whole.  When Congress intended to forbid the possession of a firearm by a person convicted of a crime, it explicitly did so.  *See, e.g.*, § 922(g)(1) (prohibiting possession  of a firearm by a person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year"); § 922(g)(9) (prohibiting possession of a firearm by a person "who has been convicted in any court of a misdemeanor crime of domestic violence").

misreads the statute.  The vast majority of these individuals are not restricted by § 922(g)(3) or 922(d)(3).  Congress tailored the statutes by focusing on only "current" users of controlled substances, not individuals who have admitted to using marijuana at some point in their past.  As for prescription drugs, 27 C.F.R. § 478.11 defines "unlawful user of or addicted to any controlled substance" as the use of a controlled substance "in a manner other than as prescribed by a licensed physician."[7]  Lawful prescription drug users are therefore not "unlawful users" of controlled substances.

Second, Plaintiff mistakenly contends that the fact that § 922(g)(3) and 922(d)(3) do not prohibit users or abusers of alcohol from possessing firearms renders the statute unconstitutional. This underinclusivity argument has been expressly rejected by at least one court of appeals.  *See Carter*, 669 F.3d at 421 ("Carter faults § 922(g)(3) for its under-inclusiveness by targeting irresponsible users of some mind altering substances, such as marijuana, but not users of other substances, such as alcohol.  But this argument simply amounts to a disagreement with Congress' policy decision to link the firearms prohibition in § 922(g)(3) to the Controlled Substances Act, 21 U.S.C. § 802.").  Additionally, the underinclusivity doctrine applies primarily in the First Amendment context, and Plaintiff cites no authority for the proposition that the doctrine should apply to her claim.  Because it is used in strict scrutiny analysis, the First Amendment underinclusivity doctrine is a poor fit to the Second Amendment issue here.  *See United States v. Virginia*, 518 U.S. 515, 573 (1996) (Scalia, J., dissenting) ("Intermediate scrutiny has never required a least-restrictive-means analysis, but only a 'substantial relation' between the classification and the state interests that it serves.").  Furthermore, because the doctrine's purpose is to prevent "governmental attempt[s] to give one side of a debatable public question an advantage in expressing its views to the people" or government attempts to "select the permissible subjects for public debate and thereby to control the search for political truth," *City of Ladue v. Gilleo*, 512 U.S. 43,  51 (1994) (internal citations and punctuation omitted), it is

---

[7] As noted, marijuana, a Schedule I drug, cannot be legally prescribed for medical use.  *See* 21 U.S.C. § 829; *United States v. Oakland Cannabis*, 532 U.S. 483, 491 (2001).

difficult to apply outside the First Amendment context, where content-based regulations of expression receive the most exacting scrutiny.[8]

Third, Plaintiff attempts to cast doubt on Congress's determination that marijuana use is linked to crime. Pl's Opp. at 21-22 ("There is no viable link between the use of cannabis and violent behavior."). Plaintiff's argument is policy-based, and is intended to support her opinion that the majority of marijuana users are "non-violent, harmless individuals." *Id.* at 20. Plaintiff's contentions would be better addressed to a legislative body, as "[u]nder the system of government created by our Constitution, it is up to legislatures, not courts, to decide on the wisdom and utility of legislation." *Ferguson v. Skrupa*, 372 U.S. 726, 729 (1963); *see also Turner Broad. Sys. v. FCC*, 512 U.S. 622, 665-66 (1994) (noting that "Congress is far better equipped than the judiciary to 'amass and evaluate the vast amounts of data' bearing upon" complex and dynamic issues). In any event, there are sound reasons why Plaintiff's policy arguments are not persuasive here. *See* Def. Mem. at 25-30.

In sum, the two statutes do not violate the Second Amendment, as they are substantially related to the compelling government interest in reducing violent crime and protecting public safety.

## C. 27 C.F.R. 478.11 Does Not Violate the Second Amendment

Nothing in the ATF's definition of the term "unlawful user of or addicted to any controlled substance" contained in 27 C.F.R. § 478.11 runs afoul of the Second Amendment.[9]

---

[8] Moreover, in analyzing the constitutional propriety of the limitations of a statute, courts are "guided by the familiar principles that a statute is not invalid under the Constitution because it might have gone farther than it did, that a legislature need not strike at all evils at the same time, and that reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind." *Buckley v. Valeo*, 424 U.S. 1, 105 (1976) (internal citations and punctuation omitted); *see also United States v. Lewitzke*, 176 F.3d 1022, 1027 (7th Cir. 1999) (Congress did not act irrationally in imposing firearms disability solely upon persons convicted of domestic violence misdemeanors, despite the fact that "persons convicted of other sorts of misdemeanors [may] pose a danger to society if armed," because "Congress is free to take 'one step at a time'"); *Olympic Arms v. Buckles*, 301 F.3d 384, 390 (6th Cir. 2002) (rejecting argument that import ban of certain semi-automatic weapons was irrational because it prohibited firearms with more than one of four enumerated features, but allowed weapons with one of the features, because "Congress may work incrementally in protecting public safety" and its "decision first to target weapons commonly used for criminal activity or, likewise, those most heavily loaded with dangerous features is within [its] legislative authority").

[9] The regulation defines an "[u]nlawful user of or addicted to any controlled substance" as

*(footnote continued on following page)*

13

Plaintiff does not appear to raise any arguments specific to the regulation.[10]  Plaintiff's challenge to the regulation should therefore be rejected for the same reasons that the statutes survive.

### D.  The Open Letter Does Not Violate the Second Amendment

Plaintiff does, however, raise several arguments specific to the Open Letter.  However, these arguments either do not apply to the operative pleading, repeat arguments directed at the statutes and the regulation, or fail to address Defendants' present motion.

### 1.  Plaintiff May Not Amend Her Complaint to Add an APA Claim

Plaintiff first argues that the Open Letter "violated the APA" because it is a legislative rule that changed the law without a requisite notice and comment period.  Pl's Opp. at 9.  To the extent that Plaintiff is arguing that the Open Letter should be declared invalid on these grounds— and Plaintiff suggests that this is the case, *id.* at 13:14-15—that request is meritless, because she has not filed an APA claim.  A plaintiff may seek review of an agency's action in an Article III court under a discrete set of circumstances.  For example, in *Firearms Import/Export Roundtable Trade Group v. Jones*, the plaintiff claimed in its complaint that an ATF Open Letter should be invalidated for failure to meet the notice and comment requirement, and because the interpretation expressed in the Open Letter was arbitrary and capricious.  854 F. Supp. 2d 1, 9 (D.D.C. 2012), *aff'd*, No. 12-5146, 2013 WL 1155379 (D.C. Cir. Feb. 27, 2013).

---

[a] person who uses a controlled substance and has lost the power of self-control with reference to the use of the controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician.  Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct.  A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm.  An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time . . . .

27 C.F.R. § 478.11.

[10] Plaintiff briefly states, as part of her strict scrutiny analysis, that the regulation is not "narrowly tailored" or the "least restrictive means" of achieving the intended interest.  Pl's Opp. at 17.  As noted above, strict scrutiny is not the appropriate level of analysis here.  In any event, Plaintiff's support for this argument—that the regulation encompasses a large contingent of the United States—is not in the FAC, and in any event, is rebutted above.  *See* p. 11 *supra*.

Plaintiff sought no such relief in this case, and she cannot amend her complaint to add an APA claim in her opposition. *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (noting that a court may not look beyond the complaint to plaintiff's briefs when determining the propriety of a motion to dismiss for failure to state a claim); *Ruiz v. Laguna*, No. 05-cv-1871, 2007 WL 1120350, at *26 (S.D. Cal. Mar. 28, 2007) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation and internal quotation marks omitted).[11]  Accordingly, any suggestion that the Open Letter may be invalidated because of ATF's failure to provide notice and comment for the letter must be rejected, as a claim seeking this relief is absent from the FAC.

### 2.  The Open Letter is an Interpretive Rule Entitled to Deference Under *Skidmore* and *Auer*

Though Plaintiff cannot seek to strike down the Open Letter on these grounds, the question of whether the letter is interpretive or legislative does have relevance for the level of deference that should be afforded to the Open Letter, and the Court sought briefing on this issue at the November 20, 2012 hearing.  An interpretive rule is one "'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.'" *Erringer v. Thompson*, 371 F.3d 625, 630 (9th Cir. 2004) (citing *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 88 (1995)).  Legislative or "substantive" rules, by contrast, "create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress." *Erringer*, 371 F.3d at 630.  The Ninth Circuit has explained that substantive rules have the "force of law," while interpretive rules do not, and has adopted a three-part test for determining whether a rule has the "force of law": (1) when, in the absence of the rule, there would not be an adequate legislative basis for enforcement action; (2) when the agency has explicitly invoked its general

---

[11] In the FAC, Plaintiff alleges that the United States is a "proper defendant in this action pursuant to 5 U.S.C. § 702."  Though § 702 of the APA creates a statutory cause of action for judicial review of federal agency action, the Ninth Circuit has held that § 702 also contains a waiver of sovereign immunity for constitutional claims against the United States.  *Presbyterian Church v. United States*, 870 F.2d 518, 525 (9th Cir. 1989).  The FAC raises only constitutional claims.  She does not allege a statutory violation of the APA for failure to submit the Open Letter for notice and comment or for any other purpose.

1    legislative authority; or (3) when the rule effectively amends a prior legislative rule.  *Id.* (citing

2    *Hemp Indust. v. DEA*, 333 F.3d 1082, 1087 (9th Cir. 2003)).  Notice and comment is required for

3    legislative, but not interpretive, rules.  *Mora-Meraz v. Thomas*, 601 F.3d 933, 939-40 (9th Cir.

4    2010).

5            Under the Ninth Circuit's test, the Open Letter qualifies as an interpretive rule.  First,

6    absent the Open Letter, there would still be a basis for enforcement of § 922(d)(3).  That is, an

7    FFL would still be subject to prosecution under § 922(d)(3) if he or she sold a firearm to a person

8    that he or she knew possessed a registry card that allowed the individual to use marijuana in

9    violation of federal law.  Indeed, concern for this type of prosecution prompted ATF to issue the

10   Open Letter.  *See* FAC Ex. 2-B (stating the purpose of the letter to be that ATF had received

11   "inquiries regarding the use of marijuana for medical purposes and its applicability to Federal

12   firearms laws" and that ATF would "provide guidance on the issue and [assist the FFL] in

13   complying" with the laws).  Second, ATF did not explicitly invoke its general legislative

14   authority.  *See id.*  Third, the letter did not amend any previous legislative rule.  Section

15   922(d)(3) makes in unlawful for an FFL to sell a firearm to an individual whom the FFL has

16   "reasonable cause to believe" is an unlawful user of a controlled substance.  As set forth below

17   and in the opening brief, it is "reasonable" for an FFL to believe that a person who has a card that

18   allows them to use marijuana does, in fact, use marijuana.  That interpretation of the phrase

19   "reasonable cause to believe" did not change any existing law.  In short, the text of the Open

20   Letter, alongside its stated purpose, makes clear that it is no more than a "statement seeking to

21   interpret a statutory or regulatory term," which the D.C. Circuit has identified as the

22   "quintessential example" of an interpretive rule.  *Orengo Caraballo v. Reich*, 11 F.3d 186, 195

23   (D.C. Cir. 1993); *see also Gen. Motors Corp. v. Ruckelshaus*, 742 F.2d 1561, 1565 (D.C. Cir.

24   1984) (en banc) (finding a rule to be interpretive rather than substantive when the agency's

25   justification was "comprised of reasoned statutory interpretation" of the statute); *Alcaraz v.

26   Block*, 746 F.2d 593, 613 (9th Cir. 1984) (explaining that interpretive rules are "essentially

27

28

hortatory and instructional in that they go more to what the administrative officer thinks the statute or regulation means, when applied in particular, narrowly defined, situations").[12]

Plaintiff's attempts to find inconsistencies between the Open Letter and the Federal firearms laws and regulations are fruitless.  Plaintiff suggests that 27 C.F.R. § 478.11 contradicts the Open Letter because while the former exempts from the definition of "unlawful user of a controlled substance" those who do so "as prescribed by a licensed physician," the latter prohibits the sale of firearms to registry cardholders, who "by necessity consulted a licensed physician."  Pl's Opp. at 12:5.  But under federal law, marijuana cannot be prescribed for medical use, *see* 21 U.S.C. § 829; *Oakland Cannabis*, 532 U.S. at 491, and therefore no contradiction exists.  Plaintiff further argues that the regulation provides a list of examples for the types of information one could use to draw an inference of "current use" of a controlled substance, and that possession of a medical marijuana card is not included in that list.  But the examples in § 478.11 are just that—examples—and the list is not meant to be exhaustive.  The operative phrase is that the inference may be drawn from "evidence of a recent use or possession" or a "pattern of use or possession that reasonably covers the present time."  27 C.F.R. § 478.11.  As explained in Section III.D.3, below, the interpretation in the Open Letter falls well within that definition, given the evidence of recent and consistent use that is implied in the possession of a registry card.

Because the Letter is interpretive, it is "entitled to respect" under *Skidmore*, to the extent that it has the "power to persuade."  *Christensen v. Harris County*, 529 U.S. 576, 587 (2000).  Additionally, an agency's interpretation of its own regulation is entitled to deference under *Auer v. Robbins*, 519 U.S. 452, 461 (1997).  *See Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820,

---

[12] In *Firearms Import/Export Roundtable Trade Group v. Jones* ("*FAIR*"), the District Court of the District of Columbia found that a similar open letter issued by ATF constituted an interpretative, not legislative, rule.  854 F. Supp. 2d at 13-14.  The letter in question modified ATF's interpretation of a statue and a regulation, and according to the plaintiff, that action rendered the Open Letter a "legislative rule" that required notice and comment.  Though ATF did not solicit notice and comment prior to the change in the interpretation, the court found that because ATF did not invoke its legislative power to enact legislative rules, and because the letter was entirely consistent with the statute and the regulation, the letter was interpretive, and notice and comment were not required.  *Id.*

828-29 (9th Cir. 2012).  Plaintiff apparently concedes the level of deference afforded to the Open

Letter, given that she did not address the level of deference in her opposition.

### 3.   The Open Letter Does Not Violate the Second Amendment

Finally, as shown by Defendants, the Open Letter does not violate the Second

Amendment.  Because the Open Letter restates the existing law and provides guidance to FFLs

in their application of the laws to new circumstances, all of the reasons that support the

constitutionality of the firearm laws equally apply to the Open Letter.  Plaintiff appears to

concede this point by arguing that if the Open Letter interprets existing law, then the underlying

law violates the Second Amendment.  Pl's Opp. at 13.  If that is the case, then the converse is

true: the Open Letter survives because the statutes and the regulation survive.

Even if the Court were to undertake an independent constitutional analysis, the Open

Letter would survive, as it is "substantially related to an important government objective."

*Stormans*, 586 F.3d at 1134.  The Letter was intended to further the "compelling" government

interest in protecting public safety by "keeping guns out of the hands of dangerous persons."

*Carter*, 669 F.3d at 417.[13]  The Letter is substantially related to that objective because: (1) it

includes the temporal scope of §§ 922(g)(3) and (d)(3); (2) the interpretation is reasonable and

furthers the underlying goals of the statutes in a targeted manner; (3) any alleged overinclusivity

is contemplated within the meaning of intermediate scrutiny; and (4) the interpretation is entitled

to deference.

Plaintiff does not directly respond to any of these arguments.  In particular, Plaintiff does

not rebut that ATF's interpretation of the phrase "reasonable cause to believe" in § 922(d)(3) is

valid in light of the specific structure of the Nevada statute.  Def. Mem. at 33-34.[14]  Instead,

---

[13] Plaintiff asserts (as she does elsewhere in her brief) that the actual government interest animating the Open Letter was part of a concerted effort to "quash the medical cannabis movement."  Pl's Opp. at 19:23-24.  Apart from having no basis in fact, this allegation is found nowhere in the FAC, and therefore should be rejected for purposes of Defendants' motion to dismiss.

[14] Those reasons included the following: (1) the card is only issued to persons who have a "chronic or debilitating medical condition," Nev. Rev. Stat. § 453A.050, which implies a consistent pattern of use; (2) the cardholder must obtain from her physician documentation stating that the "[t]he medical use of marijuana may mitigate the symptoms or effects of [the patient's] condition" and that "[t]he attending physician has explained the possible risks and

*(footnote continued on following page)*

1   Plaintiff argues only that the ATF's interpretation in the Open Letter covers "more than half of

2   the U.S. population," fails to address abusers of alcohol, and reflects an allegedly incorrect

3   policy choice.  As discussed above, none of these points has merit.  Accordingly, if the Court

4   were to undertake an independent analysis of the Open Letter under the Second Amendment, the

5   Court should find that it survives intermediate scrutiny.

6   **IV.    THE OPEN LETTER DOES NOT VIOLATE THE FIRST AMENDMENT**

7            Plaintiff's First Amendment claim must similarly fail.  It appears that Plaintiff only

8   challenges the Open Letter (and not the statutes or the regulation) under the First Amendment.

9   *See* Pl's Opp. at 23:15-16; 26:1-6; 26:28-27:2; 27:8-16; 27:22-25.

10           **A.  Possession of  Registry Card Does Not Constitute "Expressive Conduct"**

11           Under *Spence v. Washington*, conduct is analyzed as speech under the First Amendment if

12   "[1] [a]n intent to convey a particularized message [is] present, and [2] [whether] the likelihood

13   [is] great that the message would be understood by those who viewed it."  418 U.S. 405, 410-11

14   (1974).  As set forth in the opening brief, the facts alleged by Plaintiff fail the first of the *Spence*

15   factors for two reasons: (1) Plaintiff has not adequately alleged an intent to convey a

16   particularized message, because the mere acquisition and possession of a registry card is not

17   enough to set forth a claim, *see Nordyke v. King*, 319 F.3d 1185, 1190 (9th Cir. 2003), *Johnston v.*

18   *Port Auth. of N.Y. & N.J.*, No. 09-cv-4432, 2011 WL 3235760, at *11 (E.D.N.Y. July 28, 2011)

19   (mere possession of an identification card did not demonstrate an "intent to convey a

20   particularized message"); and (2) Plaintiff has not sufficiently alleged that the act of acquiring or

21   possessing a card was "conveyed" to a third party.  Because Plaintiff failed to allege facts that

22

23   benefits of the medical use of marijuana," and then submit that documentation to Nevada, *id.* §
     453A.210(a)(2)-(3), indicating an intent to use marijuana to alleviate the symptoms of the
24   condition; (3) the card is only valid for one year, *id.* § 453A.220(4), which implies recent use;
     and (4) if the cardholder no longer has the "chronic or debilitating" condition, the cardholder
25   must return the card to the State of Nevada within seven days, *id.* § 453A.240, which means that
     a valid cardholder has an immediate justification for using marijuana (under Nevada law).
26   Plaintiff's opposition to Defendants' statement of facts raises a further reason: the Nevada law
     states that a cardholder is exempt from state prosecution only if she "engages in . . . the medical
27   use of marijuana in accordance" with Nevada law.  *Id.* § 453A.200(3)(a).  Thus the central
     purpose of possessing a card—exemption from state prosecution—presumes that a cardholder
28   "engage[s] in" the use of marijuana.

would satisfy the first *Spence* factor, she has failed to state a claim for relief under the First Amendment, requiring dismissal of the claim.

Plaintiff's attempts to rebut these arguments miss their mark.  Plaintiff does not directly address the first argument or distinguish the cases cited by Defendants.  Plaintiff does allege new facts not included in the FAC, *see* Pl's Opp. at 24:3-26:6, and notably does not once cite the operative pleading in her response.  The Court should not consider these additional "facts" for purposes of ruling on Defendants' Rule 12(b)(6) motion to dismiss.  In any event, none of these additional facts rebuts the argument that Plaintiff has not sufficiently alleged a communicative "act" beyond the mere acquisition and possession of a registry card.  Like possessing an American flag or a draft card (as opposed to waiving or burning these items), possessing the registry card does not demonstrate "intent to convey a particularized message."  *See Nordyke*, 319 F.3d at 1190 (citing *Johnson*, 491 U.S. at 404-06).  Her possession of the card cannot be considered expressive activity subject to First Amendment protection.  On the second argument, Plaintiff contends (again without citing the FAC) that she informed "others" that she possessed a Registry Card.  *Id.* at 25:13-14.  To the extent that Plaintiff is referencing the allegation in FAC ¶ 88, this allegation, on its face, is far too vague too vague and conclusory to support a "plausible" claim for relief against Defendants.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009).  In any event, Plaintiff's declaration is devoid of any averment that she communicated the fact that she owned a registry card to anyone other than the FFL.  *See, e.g.*, *Temple v. Adams*, No. CV-F-04-6717, 2006 WL 2454275, at *9 (E.D. Cal. Aug. 23, 2006) (exhibit attached to pleading controls over inconsistent allegations).

Plaintiff also fails to explain how her First Amendment claim meets the second of the *Spence* factors.  The likelihood is far from "great" that someone who learned of Plaintiff's possession of a registry card would find that Plaintiff intended any political message by that conduct.  Far more likely would be the conclusion that she possesses the card in order to treat a medical condition as allowed under state law.  FAC Ex. 1 ¶ 20-22.  Indeed, the requirements for obtaining a card under the Nevada statute make clear that one would not undergo the application process for any other purpose.  *See* footnote 11, *supra* (noting the requirements for obtaining a

20

registry card, including that an individual must submit documentation from a physician stating

that "[t]he medical use of marijuana may mitigate the symptoms or effects of [the patient's]

condition"). These requirements do not convey a particular political viewpoint, but rather reflect

the method through which one could obtain an exemption from prosecution under Nevada law.

In short, it not plausible that the mere possession of a registry card would indicate an intent to

convey a particularized message. *Villegas v. City of Gilroy*, 484 F.3d 1136, 1140 (9th Cir. 2007)

("[C]ontext is crucial when determining whether conduct rises to the level of expression for

purposes of the First Amendment.") (citation omitted); *cf. Nordyke*, 319 F.3d at 1190 (noting that

when a person possesses a firearm, there is typically no "particular message likely to be

understood by those who view it").[15]

### B. Even if Possession of a Registry Card Could be Considered Expressive Conduct, the Open Letter Satisfies the Appropriate Level of Scrutiny

Plaintiff's acquisition or possession of the registry card therefore does not constitute

expressive conduct. But even if it did, the Open Letter would be valid. Because the Open Letter

was aimed at reducing the threat caused by gun violence, and not at suppressing speech,

intermediate scrutiny applies under *United States v. O'Brien*, 391 U.S. 367, 377 (1968). All four

factors of the *O'Brien* test are met here. *See* Def. Mem. at 37-38. Plaintiff nevertheless

contends that strict scrutiny must apply because, according to Plaintiff, Defendants "enacted the

Open Letter with the deliberate intent to suppress the growing medical marijuana movement."

Pl's Opp. 26:17-19. This baseless suggestion should be rejected by this Court. The operative

pleading contains none of the allegations used by Plaintiff to argue in favor of strict scrutiny.

The series of alleged "coincidences" regarding the enforcement of federal drug law are found

---

[15] Plaintiff contends that even if her conduct is not considered "expressive conduct," she still holds a valid First Amendment claim, as the ordinance "deliberately singles out all Registry Cardholders" and seeks to "suppress their outspoken criticism of the government by curtailing their Second Amendment Rights." Pl's Opp. at 26. Plaintiff misstates the law. As recognized in *Roulette v. City of Seattle*, the Ninth Circuit case cited by Plaintiff, "a facial freedom of speech attack must fail unless, at a minimum, the challenged statute is directed narrowly and specifically at expression or conduct commonly associated with expression." 97 F.3d 300, 305 (9th Cir. 1996) (citation and internal quotations omitted). In *Roulette*, the Ninth Circuit rejected the First Amendment claim because the forms of conduct regulated—sitting or lying on the sidewalk— were not "integral to, or commonly associated with, expression." *Id.* As in *Roulette*, the conduct here—possessing a registry card—is not integral to or associated with expression.

nowhere in the FAC, nor is the allegation that ATF drafted the Open Letter with the express

intent of "hindering speech."  Conversely, the only statement regarding the intent of the Open

Letter in the FAC or its exhibits is on the face of the letter itself, which states that "the purpose of

this open letter is to provide guidance on the issue [of the use of marijuana for medical purposes

and its applicability to Federal firearms laws] and to assist you, a Federal licensee, in complying

with Federal firearms laws and regulations."  FAC Ex. 2-B.  As a pleading matter, then, this

argument has no basis in the operative complaint.  Accordingly, Plaintiff's First Amendment

challenge to the Open Letter must fail.

## V.    BOTH OF PLAINTIFF'S CLAIMS UNDER THE DUE PROCESS CLAUSE MUST FAIL

### A.  Plaintiff Cannot Rest Her Substantive Due Process Claim on Other Constitutional Amendments

Plaintiff grounds her substantive due process claim in the "right to possess a handgun

under the Second Amendment," FAC ¶ 75, and the "fundamental right to free speech under the

First Amendment," *id.* ¶ 77.  As shown by Defendants in the opening brief, "[w]here a particular

Amendment 'provides an explicit textual source of constitutional protection' against a particular

sort of government behavior, 'that Amendment, not the more generalized notion of "substantive

due process," must be the guide for analyzing' such a claim."  *Albright v. Oliver*, 510 U.S. 266,

266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Because Plaintiff's

substantive due process claim rests upon rights guaranteed in the First and Second Amendments,

her claim must be analyzed under those Amendments, and her substantive due process claim

must be dismissed.  *See United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *Fontana v.

Haskin*, 262 F.3d 871, 882 (9th Cir. 2001); *see also Nordyke v. King*, 644 F.3d 776, 794 (9th Cir.

2011) (internal citation omitted), *vacated by* 681 F.3d 1041 (9th Cir. 2012) (en banc) (affirming

the district court's decision to dismiss the equal protection claim and noting that "although the

right to keep and to bear arms for self-defense is a fundamental right, that right is more

appropriately analyzed under the Second Amendment.").

Plaintiff does not attempt to distinguish any of the cases cited by Defendants that directly

foreclose this claim.  Instead, she suggests that this legal principle applies only when a plaintiff

brings a substantive due process claim and a claim under the Fourth Amendment.  Pl's Opp. at

30:4-15.  This is not the law.  *See, e.g*, *Denney v. DEA*, 508 F. Supp. 2d 815, 834 (E.D. Cal.

2007) ("Since the First Amendment provides explicit protection for the right to free speech,

which plaintiff claims has been chilled, plaintiff may not additionally base a due process claim

on a violation of his right to free speech."); *Robinson v. Smith*, No. 09-cv-00138, 2010 WL

3463594, at *10 n.2 (D. Nev. Aug. 27, 2010) (same); *Crozier v. Endel*, No. 09-cv-00694, 2010

WL 5250875, at *7 (D. Nev. Dec. 16, 2010) (dismissing substantive due process claim where

allegations analyzed in context of Eighth Amendment jurisprudence).

Likely recognizing that the substantive due process claim as pleaded may not proceed,

Plaintiff suggests that she has "not waive[d]" the previous basis for her claim: that she has a

"liberty right in the ability to choose a course of medical treatment."  Pl's Opp. at 28:25-29:5.

But Plaintiff abandoned this formulation of her substantive due process claim.  Because the

operative pleading does not contain allegations supporting a claim in this purported liberty right,

it must fail.[16]

---

[16] Even if Plaintiff had somehow preserved this claim, her argument is foreclosed by *Raich v. Gonzales*, 500 F.3d 850, 861-66 (9th Cir. 2007) ("*Raich II*"), in which the Ninth Circuit rejected a nearly identical attempt to establish a fundamental right to use marijuana for medical reasons. Plaintiff omits the central component of the right she seeks to vindicate: the use of *marijuana* in the course of her treatment.  In this regard, Plaintiff's articulation of her right is similar to the alleged right that the *Raich II* plaintiff sought to establish.  *Id.* at 864 (noting that plaintiff's "carefully crafted interest" was "a fundamental right to 'mak[e] life-shaping medical decisions that are necessary to preserve the integrity of her body, avoid intolerable physical pain, and preserve her life'").  The Ninth Circuit held that Raich's framing of the fundamental right was inaccurate because "[c]onspicuously missing from Raich's asserted fundamental right is its centerpiece: that she seeks the right to use *marijuana* to preserve her bodily integrity, avoid pain, and preserve her life."  *Id.* (emphasis in original).  As in *Raich II*, the right Plaintiff seeks to vindicate in this case is the right to use marijuana as the course of medical treatment.  The right to use marijuana, even by persons who claim they need to use it to alleviate serious medical symptoms, does not meet the exacting standards required for the recognition of a new substantive due process right.  *Id.* at 866 ("[F]ederal law does not recognize a fundamental right to use medical marijuana prescribed by a licensed physician to alleviate excruciating pain and human suffering."); *see also Marin Alliance  for Med. Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1157 (N.D. Cal. 2011) ("Finally—and significantly—it is difficult to reconcile the purported existence of a fundamental right to use marijuana for medical reasons with Congress' pronouncement that 'for purposes of the [CSA], marijuana has no currently accepted medical use at all.'" (citing *United States v. Oakland Cannabis*, 532 U.S. at 491)).

**B.  Defendants Have Not Violated Plaintiff's Right to Procedural Due Process**

Plaintiff's procedural due process claim also lacks merit, as she has not been deprived of a constitutionally-protected liberty or property interest.  *Erickson v. United States*, 67 F.3d 858, 861 (9th Cir. 1995).  There is no constitutional right to use marijuana, *Raich II*, 500 F.3d at 850, 861-66, and as stated above, users of marijuana for medical purposes, like all users of controlled substances in violation of federal law, fall outside of the scope of the Second Amendment. Plaintiff does not directly address this argument in her opposition.  Instead, she realleges the allegations of the FAC and states that Defendants violate the Due Process Clause by promulgating a policy that allows an FFL to use a registry card as part of the "reasonable cause to believe" judgment.  That argument amounts to a reanimation of arguments addressed throughout the Second Amendment section, and does not provide any support to Plaintiff's due process claim.

**VI.    PLAINTIFF FAILS TO STATE A VALID EQUAL PROTECTION CLAIM**

Finally, Plaintiff has failed to adequately articulate an equal protection claim because she has not shown that she is being treated differently from similarly situated individuals.  *Gonzalez-Medina v. Holder*, 641 F.3d 333, 336 (9th Cir. 2011).  As for Plaintiff's first alleged category of individuals—persons in other states where registry cards are not required—Plaintiff did not support the allegations underlying this category in the FAC.  *See Marin Alliance*, 866 F. Supp. 2d at 1158-59 (rejecting equal protection claim where, *inter alia*, Plaintiff failed to present facts supporting allegations regarding differences in state medical marijuana laws).  Plaintiff does not dispute this point, and it should be treated as conceded.  In any event, the claim fails because the law facially applies to every marijuana user, even if some individuals in states outside of Nevada are able—through deceit or fraud—to avoid prosecution or obtain a firearm.  Plaintiff does not dispute this argument either, and instead argues that Defendants misconstrue the nature of her claim.  Defendants have responded to the allegations as pleaded.

Plaintiff's second category of individuals from whom she alleges she is being treated differently is "persons with similar medical conditions to those of the Plaintiff."  FAC ¶ 63.  But as noted by Defendants, the class of citizens that use marijuana pursuant to state law are not

similarly situated to law-abiding individuals, including those who seek treatment in compliance with federal law.  Plaintiff's only response is that Defendants do not take into account individuals who "register for a card and then [do] not use or possess marijuana."  Pl's Opp. at 33.  But the Nevada law requires that if the cardholder no longer has the "chronic or debilitating" condition that led to the acquisition of the card, the cardholder must return the card to the State of Nevada within seven days.  Nev. Rev. Stat. § 453A.240.  Thus if the cardholder is no longer "seeking treatment" by using marijuana, he must relinquish the card, and would therefore be able to obtain a firearm.

## VII.    PLAINTIFF'S DAMAGES CLAIM SHOULD BE DISMISSED

Finally, to the extent that the FAC could be construed otherwise, Plaintiff concedes that she may not pursue monetary damages against the United States.  Pl's Opp. at 34.

**CONCLUSION**

For the reasons stated above and in Defendants' opening brief, the Court should grant Defendants' motion to dismiss (or in the alternative, enter summary judgment for Defendants).


Dated: March 29, 2013                              Respectfully submitted,

                                                   STUART F. DELERY
                                                   Acting Assistant Attorney General

                                                   DANIEL G. BOGDEN
                                                   United States Attorney

                                                   DIANE KELLEHER
                                                   Assistant Director

                                                   */s/ John K. Theis*
                                                   JOHN K. THEIS
                                                   Trial Attorney
                                                   United States Department of Justice
                                                   Civil Division, Federal Programs Branch

                                                   *Attorneys for Defendants*