# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| S. ROWAN WILSON, an individual,     ) <br>                    ) <br>        Plaintiff,     ) <br>      vs.               ) <br>                    ) <br>ERIC HOLDER, individually and as Attorney ) <br>General of the United States; THE U.S.   ) <br>BUREAU OF ALCOHOL, TOBACCO,   ) <br>FIREARMS, AND EXPLOSIVES; B. TODD ) <br>JONES, individually and as Acting Director of ) <br>the U.S. Bureau of Alcohol, Tobacco,   ) <br>Firearms, and Explosives; ARTHUR   ) <br>HERBERT, individually and as Assistant   ) <br>Director of the U.S. Bureau of Alcohol,   ) <br>Tobacco, Firearms, and Explosives; and THE ) <br>UNITED STATES OF AMERICA,   ) <br>                    ) <br>        Defendants.    ) <br>_____) | Case No.: 2:11-cv-01679-GMN-PAL <br><br>**ORDER** |

Pending before the Court is the Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 37) filed by the United States of America, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATFE"), U.S. Attorney General Eric Holder, Acting BATFE Director B. Todd Jones, and Assistant BATFE Director Arthur Herbert's (collectively, "Defendants"). Plaintiff S. Rowan Wilson ("Plaintiff") filed a Response (ECF No. 41) and Defendants filed a Reply (ECF No. 47).

## I.    BACKGROUND

This case arises from an asserted conflict between the right secured by the Second Amendment, certain provisions of the federal Gun Control Act that prohibit the users of controlled substances from procuring firearms, and the recent wave of state legislation legalizing the medical use of marijuana. In 2001, the Nevada legislature enacted legislation

exempting the medical use of marijuana from state criminal prosecution in certain limited circumstances. *See* Nev. Rev. Stat. § 453A.  Specifically, the legislation permits individuals who obtain a state-issued registry identification card ("state marijuana registry card") to use marijuana for medicinal purposes. Nev. Rev. Stat. § 453A.200(1)(f).

However, under the Controlled Substances Act, marijuana is listed as a controlled substance that cannot be lawfully prescribed and that the general public may not lawfully possess. 21 U.S.C. § 802(6); 21 U.S.C. § 812(c), Sched. I(c)(10).  There is no provision under Federal law that permits any class of the general public to lawfully possess marijuana, including those wishing to use marijuana for medical purposes. *See* 21 U.S.C. § 823(f) (providing an exception to the ban on possession of Schedule I drugs for federally approved research projects); *see also Gonzales v. Raich*, 545 U.S. 1, 14 (2005) ("By classifying marijuana as a Schedule I drug, as opposed to listing it on a lesser schedule, the . . . possession of marijuana became a criminal offense, with the sole exception being use of the drug as part of a Food and Drug Administration pre-approved research study.").  In contrast, the Controlled Substances Act expressly recognizes that "there is a lack of accepted safety for use of [marijuana] under medical supervision." 21 U.S.C. § 812(b)(1)(A)–(C).  *See* 21 U.S.C. § 829; *see also United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 491 (2001) ("Whereas some other drugs can be dispensed and prescribed for medical use, . . . the same is not true for marijuana.").

Furthermore, the Federal Gun Control Act of 1968 ("Gun Control Act") prohibits "any person . . . who is an unlawful user of or addicted to any controlled substance . . . [to] possess . . . any firearm or ammunition . . . ." 18 U.S.C. § 922(g)(3).  Additionally, § 922(d)(3) prohibits any person from selling or otherwise disposing of "any firearm or ammunition to any person knowing or having reasonable cause to believe that such person . . . is an unlawful user of or addicted to any controlled substance . . . ." 18 U.S.C. § 922(d)(3).

In September 2011, because of the growing number of states that permit the medicinal use of marijuana, the ATF issued an "Open Letter." Bureau of Alcohol, Tobacco, Firearms and Explosives, Open Letter, *Open Letter to All Federal Firearms Licensees – The use of marijuana for medical purpose and its applicability to Federal firearms laws* (Sept. 26, 2011), *available at* http://www.atf.gov/press/releases/2011/09/ 092611-atf-open-letter-to-all-ffls-marijuana-for-medicinal-purposes.pdf  [hereinafter *"ATF Open Letter"*].  Notably, this letter informed all individuals licensed to sell firearms ("Federal Firearms Licensees" or "FFLs") that "if [the seller is] aware that the potential transferee is in possession of a card authorizing the possession and use of marijuana under State law, then you have 'reasonable cause to believe' that the person is an unlawful user of a controlled substance." *Id.*  Thus, the letter advised FFLs and provided them notice that the agency which issues their license (the BATFE) interpreted § 922 as not only criminalizing the *possession* of a firearm by a registry card holder, but also the *sale* of a firearm to a registry card holder.

In the fall of 2010, due to her struggle with severe dysmenorrhea, Plaintiff applied for and obtained a state marijuana registry card. (First Am. Compl. ("FAC") ¶¶ 35–36, ECF No. 34.)  Plaintiff subsequently applied to purchase a firearm at a gun store in Mound House, Nevada. (*Id.* ¶¶ 17–24.)  However, the store's proprietor prevented her from completing her application he knew she carried a state marijuana registry card. (*Id.* ¶ 22.)

As a result, Plaintiff filed this lawsuit in October 2011. (Compl., ECF No. 1.)  In her suit, Plaintiff challenges the constitutionality of the two provisions of the Gun Control Act that effectively criminalize the sale and possession of a firearm by the holder of a registry card: 18 U.S.C. §§ 922(d)(3) and (g)(3). (FAC ¶¶ 51–56.)  Plaintiff also challenges the constitutionality of one of the accompanying regulations, 27 C.F.R. § 478.11, that defines the term "unlawful user of or addicted to any controlled substance" as used in §§ 922(d)(3) and (g)(3). (*Id.*)  Finally, Plaintiff challenges the ATF policy that federal firearms licensees may not sell a

firearm to persons they know are "in possession of a card authorizing the possession and use of marijuana under State law . . .." *ATF Open Letter.*  Plaintiff claims that these provisions, along with the ATF policy, violate her Second Amendment right to "keep and bear Arms"; her First Amendment right to free speech; as well as her rights to substantive due process, procedural due process and equal protection as secured by the Fifth Amendment.

In response to Plaintiff's initiating this action, Defendant filed a Motion to Dismiss. (Mot. to Dismiss, ECF No. 10.)  Thereafter, on November 11, 2012, the Court held a hearing at which the Court ordered supplemental briefing on several issues. (Minutes of Proceedings, ECF No. 30.)  Prior to the deadline for filing the supplemental briefing, the parties filed a Joint Motion to Amend/Correct Complaint. (ECF No. 31; *see* First Am. Compl. ("FAC"), ECF No. 34.)  After the Court granted this Motion, the Court denied Defendants' previously filed Motion to Dismiss as moot. (ECF No. 32.)  In response to Plaintiff's First Amended Complaint, (ECF No. 34), Defendants filed the instant Motion to Dismiss (ECF No. 37), which, for the reasons discussed below, the Court grants.

## II.   JURISDICTION

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Therefore, before a federal court may consider the merits of a case, it must first determine whether it has proper subject matter jurisdiction. *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 653–54 (9th Cir. 2002); *see also Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

For the reasons discussed below, the Court concludes that Plaintiff has, at this stage of the litigation, adequately established that she has standing to assert these causes of action.  In

addition, the Court determines that this case is not rendered moot by the absence of a currently valid medical marijuana registry card from the record.  Accordingly, the Court does not lack jurisdiction to consider the merits of this case.

### A.    Standing

Article III of the United States Constitution limits the power of the judiciary to hear only "cases" and "controversies." U.S. Const. art. III, § 2; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992).  Standing is a core component of the Article III case or controversy requirement and focuses on whether the action was *initiated by* the proper plaintiff. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732–33 (2008) (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("[T]he party invoking federal jurisdiction [must] have standing—the 'personal interest that must exist at the commencement of the litigation.'"); *see also Arakaki v. Lingle*, 477 F.3d 1048, 1059 (9th Cir. 2007) ("Standing ensures that, no matter the academic merits of the claim, the suit has been brought by a proper party.").  The "irreducible constitutional minimum of standing" requires that a plaintiff demonstrate three elements. *Lujan*, 504 U.S. at 560.

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560–61 (internal quotation marks and citations omitted).

### 1.    *Injury in Fact*

Defendants' argument that Plaintiff has failed to establish an injury in fact rests solely on the fact that Plaintiff's state marijuana registry card expired during litigation and the absence of a new non-expired registry card from the record. (Mot. to Dismiss 12:3–16, ECF No. 37.)

However, the standing inquiry relies upon the facts as they existed when Plaintiff initiated this action.[1] *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008) (noting that the limits on federal judicial power in Article III require "that the party invoking federal jurisdiction have standing—the personal interest that must exist *at the commencement* of the litigation." (emphasis added) (internal quotation marks omitted)).

In this case, at the time that Plaintiff initiated this action, she held a valid state marijuana registry card. (FAC ¶ 41, ECF No. 34; FAC Ex. 1-B, ECF No. 34-1.) It is precisely because she held this card that the owner of the firearms store informed Plaintiff that "he could not sell her a firearm without jeopardizing his federal firearms license." (FAC ¶¶ 22–23.) As a result, Plaintiff claims that she was deprived of several of her constitutional rights. (FAC ¶¶ 50–97.) Therefore, Plaintiff has adequately alleged "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560–61.

### 2.    *Causal Connection*

The causation element of standing requires that "the injury . . . be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560–61. Defendants argue that Plaintiff cannot satisfy the causation requirement of standing because her injury is "self-inflicted." (Mot. to Dismiss 13:3–4.) The Court disagrees.

True enough, injuries that are truly "self-inflicted" cannot serve as the basis for standing because they are not fairly traceable to any action other than action by the plaintiff. *See, e.g.*, *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (concluding that States that extended tax

---

[1] Defendants' "standing" argument is more appropriately characterized as a mootness argument, which the Court addresses in Section II.B, below. *See Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007) (observing that the "central question" in a mootness analysis is "whether changes in the circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief" (quotation marks omitted)).

credits to their residents for income taxes paid in other states were suffering from self-inflicted injuries, "resulting from decisions by their respective state legislatures"). In this case, Defendants assert that their Open Letter advising FFLs to restrict the class of citizens with medical marijuana cards from purchasing firearms is an injury that these citizens are inflicting upon themselves. (Mot. to Dismiss 13:1–24.) Plaintiff alleges that her injury is her inability to purchase a firearm. (FAC ¶ 42, ECF No. 34.) Plaintiff further alleges that this injury resulted solely from the gun store owner's reliance on the BATFE's "open letter . . . [that] instructed firearms licensees to deny the sale of firearms or ammunition to any person whom the licensee is aware possesses a card authorizing such person to possess and use marijuana under state law." (*Id.* ¶¶ 42–43.)

Thus, it appears to the Court that the causal connection between Defendants' actions and Plaintiff's alleged injury remains intact and Defendant has failed to provide the Court with any controlling or adequately persuasive legal authority to support a conclusion that the injury is self-inflicted or an independent action of some third party not before the court. *See, e.g.*, *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (finding a self-inflicted injury when the injury resulted from the plaintiff state's legislature's decision to provide a tax refund for income taxes paid by residents to a different state); *Nat'l Family Planning & Reproductive Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (concluding the injury was self-inflicted when the association could have resolved an alleged conflict between a statute and a regulation by inquiring about the conflict with the agency responsible for administering the regulation); *Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Center Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994) ("The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization.").

3.    *Redressability*

Defendant finally argues that Plaintiff's claims would not be redressable by a declaration on the constitutionality of the challenged statutes, regulations and policies because an unchallenged statute, 18 U.S.C.  922(b)(2), would still act to prevent FFLs from selling a firearm to Plaintiff. (Mot. to Dismiss 13:25–14:10, ECF No. 37.)  Specifically, § 922(b)(2) prohibits a FFL from selling a firearm "to any person in any State where the purchase or possession by such person of such firearm would be in violation of any State law . . .." 18 U.S.C. § 922(b)(2).

There is a similar state law, § 202.360(1)(c) of the Nevada Revised Statute, which prohibits an individual from possessing a firearm if that individual "[i]s an unlawful user of, or addicted to, any controlled substance." Nev. Rev. Stat. § 202.360(1)(c).  Furthermore, § 202.360 incorporates its definition of "controlled substance" from the federal Controlled Substances Act, which, as discussed above, includes marijuana. Nev. Rev. Stat. § 202.360(3)(a) ("'Controlled substance' has the meaning ascribed to it in 21 U.S.C. § 802(6)."). *See generally* 21 U.S.C. § 802(6) ("The term 'controlled substance' means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V . . .."); 21 U.S.C. § 812(b)(1) (defining a Schedule I controlled substance as a "drug or substance [with] a high potential for abuse"; "a drug or substance [that] has no currently accepted medical use in treatment in the United States"; and a drug or substance for which "[t]here is a lack of accepted safety for use . . . under medical supervision"); 21 U.S.C. § 812(b)(1)(Sched. I)(c)(10) (listing "marihuana" as a Schedule I controlled substance).

However, Defendants have failed to provide any Nevada state law or regulation whereby state marijuana registry cardholders have been similarly interpreted to be prohibited from purchasing firearms under state law solely based on the buyer's possession of a registry card. Furthermore, these state statutes fail to address the heart of the issue in this case: whether the

BATFE's policy interpreting the possession of a state marijuana registry card as providing an FFL with "reasonable cause to believe" that the holder of the card is a user of a controlled substance, thus prohibiting any sale of firearms or ammunition to Plaintiff, is a violation of her constitutional rights. (*See* FAC ¶¶ 43–44, ECF No. 34; FAC Ex. 2-B, ECF No. 34-2.) Therefore, Defendants argument fails and the Court finds that the relief that Plaintiff seeks in this action would likely remedy her alleged injury.

### B.    Mootness

Although Defendants presented their jurisdiction-based argument as relating to standing, the Court finds this argument is more properly characterized as one directed to the doctrine of mootness.  The Supreme Court often defines mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quotation marks omitted).  When faced with the question of whether a case has been rendered moot, the "central question" is "whether changes in the circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Ctr. For Biological Diversity v. Lohn*, 511 F.3d 960, 963 (9th Cir. 2007).

At first glance, the issues that Plaintiff raises would appear moot because the record lacks a currently valid registry card.  Specifically, the state marijuana registry card that Plaintiff attached to the FAC expired on March 10, 2012. (FAC Ex. 1-B, ECF No. 34-1.)  In an effort to cure this defect, Plaintiff attached a renewed registry card to her Response to Defendants' Motion to Dismiss, however, due to the duration of litigation in this case, that registry card has now also expired as well; it expired on March 10, 2013. (Resp. Ex. A, ECF No. 41-1.)  Plaintiff has failed to further supplement the record with an additional registry card and, thus, there is no valid registry card currently on the record.  Accordingly, this defect would appear to render this case technically moot.

However, the Supreme Court has established an exception to the general principles of mootness for cases that implicate wrongs that are "capable of repetition yet evad[e] review." *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 514–15 (1911); *Weinstein v. Bradford*, 423 U.S. 148–49 (1975).  This exception applies when two elements are satisfied: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein*, 423 U.S. at 149.

As discussed below, the Court finds that Plaintiff has established each of the two elements of the "capable of repetition yet evading review" exception.

### 1. Duration

To determine whether an issue "evades review," the Ninth Circuit has instructed courts to consider whether "the underlying action is almost certain to run its course before [the federal courts] can give the case full consideration." *Alaska Ctr. For Env't v. U.S. Forest Serv.*, 189 F.3d 851, 855 (9th Cir. 1999).  The Supreme Court has previously held that eighteen months was insufficient time to accommodate complete judicial review. *See First Nat'l Bank v. Belloti*, 435 U.S. 765, 774 (1978).  Similarly, the Ninth Circuit has held that the issuance of a two-year permit is sufficiently short in duration to evade review. *Alaska Ctr. For Env't*, 189 F.3d at 855.

Nevada law provides for the issuance of registry cards that expire one year after the issuance. *See* Nev. Rev. Stat. § 453A.230 (providing that a registry card "shall be deemed expired" if the holder fails to, among other things, submit annual updates from the holder's attending physician).  Because the duration of the validity of the registry card is too short to allow full litigation before the registry card expires, the Court concludes that the duration element of the exception is satisfied.

### 2. **Repetition**

"The second prong of the repetition/evasion exception requires some indication that the challenged conduct will be repeated." *Alaska Ctr. For Env't v. U.S. Forest Serv.*, 189 F.3d 851, 856 (9th Cir. 1999). More recently, the Ninth Circuit has articulated that the prong requires a "reasonable expectation that the same party will confront the same controversy again." *W. Coast Seafood Processors Ass'n v. Natural Res. Def. Council, Inc.*, 643 F.3d 701, 704 (9th Cir. 2011) (internal quotation marks omitted).

In the present case, Plaintiff's FAC alleges sufficient facts from which the Court can conclude that Plaintiff will confront this issue again in the future. Specifically, the FAC alleges that Plaintiff has exhibited a sincere interest in "the use of cannabis for medical purposes" for at least three years. (FAC ¶¶ 27–28, ECF No. 34.) The FAC further alleges that Plaintiff first applied for a registry card for treatment of her dysmenorrhea, a condition with which she has struggled since she was ten years of age. (*Id.* ¶ 35.) Plaintiff has battled this condition for more than three decades. (*See* FAC Ex. 1-B.) Finally, neither party has provided any indication that Plaintiff's dysmenorrhea has subsided to the point that she no longer qualifies for a state marijuana registry card.

Because Plaintiff's FAC alleges sufficient facts to satisfy both prongs, the Court concludes that this case meets the "capable of repetition yet evading review" exception to the mootness doctrine. Therefore, the Court finds that the issues presented by this action are not mooted by the expiration of Plaintiff's state marijuana registry card or the absence of a currently valid state marijuana registry card from the record. The fact that Plaintiff possessed a valid card at the time of the alleged injury and renewed the card for at least one more year is sufficient. Accordingly, the Court may properly assert subject matter jurisdiction over this action.

III.     **MOTION TO DISMISS**

    **A.     Legal Standard**

When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992).

    **B.     Second Amendment Claim**

The Second Amendment protects "the right of the people to keep and bear Arms" from government infringement. U.S. Const. amend. II. Moreover, the Supreme Court has held that this right is an individual right. *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).

However, the Court also held that this individual right is "not unlimited" and that, for example, prohibitions on the possession of firearms by felons and the mentally ill are presumptively lawful. *Id.* at 626–27; *see also id.* at 627 n.26 ("We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive.").

In this case, Plaintiff challenges both § 922(d)(3) and § 922(g)(3) under the Second Amendment. The Court analyzes each section individually.

### 1.  *Section 922(g)(3)*

Section 922(g)(3) prohibits users of a controlled substance from possessing a firearm. 18 U.S.C. § 922(g)(3). Plaintiff's FAC states that this law infringes upon her right to keep and bear arms under the Second Amendment. (FAC ¶ 54, ECF No. 34.) However, Plaintiff's FAC fails as a matter of law because the Ninth Circuit has already upheld the constitutionality of § 922(g)(3). *United States v. Dugan*, 657 F.3d 998, 999–1000 (9th Cir. 2011). In *Dugan*, based on the Supreme Court's acknowledgement that the individual right to possess and carry weapons is not unlimited, the Ninth Circuit observed that "[h]abitual drug users, like career criminals and the mentally ill, more likely will have difficulty exercising self-control, particularly when they are under the influence of controlled substances." *Id.* at 999 (citing *Heller*, 554 U.S. at 592). The court further noted an important distinction between the subsections of § 922 expressly discussed by the Supreme Court in *Heller* and 922(g)(3):

> [U]nlike people who have been convicted of a felony or committed to a mental institution and so face a lifetime ban, an unlawful drug user may regain his right to possess a firearm simply by ending his drug abuse. The restriction in § 922(g)(3) is far less onerous than those affecting felons and the mentally ill.

*Dugan*, 657 F.3d at 999. Therefore, given this distinction and the danger presented by users of controlled substances, the Ninth Circuit joined the Seventh and Eighth Circuits by broadly holding that "Congress may . . . prohibit illegal drug users from possessing firearms." *Id.* at 999–1000.

Plaintiff first feebly attempts to discredit *Dugan* by stating that *Dugan* "is a deeply flawed opinion, lacking any meaningful legal analysis . . .." (Resp. 22:11–13, ECF No. 41.) However, *Dugan* remains controlling authority on this Court.  Furthermore, this Court lacks the authority to overrule a Ninth Circuit decision.

Next, Plaintiff unpersuasively attempts to distinguish her case from the facts in *Dugan*. Specifically, Plaintiff argues that "Mr. Dugan was the very sort of person that § 922(g)(3) was designed for—a dangerous criminal." (Resp. 22:22–24.)  Plaintiff argues that this law is overbroad because it affects "nearly half of the U.S. population." (*Id.* 22:26–23:2.)  However, Plaintiff's argument is "deeply flawed."  Whether nearly half of the U.S. population engages in conduct that is illegal under federal law does not affect the illegality of that conduct. *ATF Open Letter* (stating that "[t]he Federal government does not recognize marijuana as a medicine); *see also* 21 U.S.C. § 812(b)(1), Sched. I(c)(10) (listing "marihuana" as a Schedule I illegal controlled substance).

Because *Dugan* resolves Plaintiff's Second Amendment attack of § 922(g)(3), the Court need not undergo an independent constitutional analysis.  Therefore, the Court dismisses Plaintiff's Second Amendment challenge to § 922(g)(3).  In light of *Dugan,* any amendment of this claim would be futile and, thus, Plaintiff's Second Amendment challenge to § 922(g)(3) is dismissed with prejudice.

### 2.      *Section 922(d)(3)*

Section 922(d)(3) prohibits the sale of a firearm to any person whom the seller knows or has "reasonable cause to believe . . . is an unlawful user of . . . a controlled substance . . .." 18 U.S.C. § 922(d)(3).   In addition, the BATFE Open Letter at issue in this case advised that an FFL has "reasonable cause to believe" that a potential buyer is an unlawful user of a controlled substance within the meaning of the Gun Control Act if the FFL is aware that the potential buyer or transferee possesses a registry card. *See ATF Open Letter*.  Thus, under the BATFE's

interpretation of "reasonable cause to believe," FFLs are prohibited from selling or transferring firearms or ammunition to the holder of a registry card. *ATF Open Letter*; *see also* 18 U.S.C. § 922(d)(3).

In Plaintiff's FAC, she alleges that this law infringes and imposes an impermissible burden on her right to keep and bear arms under the Second Amendment. (FAC ¶¶ 54–55, ECF No. 34.)  The Court recognizes that, in *Dugan*, the Ninth Circuit addressed only the constitutionality of § 922(g)(3). *See Dugan*, 657 F.3d at 999–1000.  However, the reasoning that supports the Court's determination that Plaintiff's FAC fails to state a plausible claim challenging § 922(g)(3) applies equally to Plaintiff's challenge to section (d)(3) of the same statute.  Just as Congress may constitutionally preclude illegal drug users from *possessing* a firearm, Congress likewise may preclude FFLs from *selling* firearms to illegal drug users and thereby prevent such prohibited persons from *acquiring* firearms. *See Dugan*, 657 F.3d at 999-1000.

For these reasons, the Court dismisses Plaintiff's Second Amendment challenge to § 922(d)(3).  Because the Court concludes that amendment of this claim would be futile, Plaintiff's Second Amendment challenge to § 922(d)(3) is dismissed with prejudice.

### 3.    27 C.F.R. 478.11

In addition to challenging the two subsections of § 922, Plaintiff also claims that the BATFE's policies and regulations impermissibly infringe on her Second Amendment right. (FAC ¶¶ 54–55, ECF No. 34.)  Plaintiff identifies 27 C.F.R. § 478.11 and alleges the definition of "unlawful user…" contained therein imposes an impermissible burden on her Second Amendment right.[2]  However, Plaintiff fails to plead any facts establishing that the term

---

[2] 27 C.F.R. § 478.11 expressly defines "[u]nlawful user of or addicted to any controlled substance" as:
> A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful

"unlawful user," as defined in 27 C.F.R. § 478.11, itself, imposes an impermissible burden on her Second Amendment right. (*See* FAC ¶¶ 54–55.)  Thus, in reality, Plaintiff's FAC appears to target only the BATFE's Open Letter.  In addition, Plaintiff's Opposition fails to object to Defendants' assertions that Plaintiff failed to adequately plead a constitutional challenge to § 478.11.  Rather, Plaintiff's Opposition merely references alleged contradictions between 27 C.F.R. § 478.11 and the BATFE's Open Letter in her attempt to establish the unconstitutionality of the policy announced in the Open Letter. (Resp. 11:25–12:28, ECF No. 41.)  For this reason, the Court GRANTS Defendant's Motion to Dismiss as it relates to the constitutionality of 27 C.F.R. § 478.11.

Even to the extent that Plaintiff does allege that § 478.11 infringes her Second Amendment rights, her claim fails because § 478.11 is consistent with 21 U.S.C. § 802, which provides that the possession and use of marijuana is prohibited by federal law.  Plaintiff correctly notes that the definition of "unlawful user" excludes any person using a controlled substance in a manner "as prescribed by a licensed physician." 27 C.F.R. § 478.11.  However, marijuana is categorized by federal law as a Schedule I controlled substance under 21 U.S.C. §812(c)(Schedule I )(c)(10).  Controlled substances in Schedule I are defined by statute as having "no currently accepted medical use in treatment in the United States." 21 U.S.C. § 812(b)(1)(B); *see also United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 491

---

use has occurred recently enough to indicate that the individual is actively engaged in such conduct. A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm. An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time, e.g., a conviction for use or possession of a controlled substance within the past year; multiple arrests for such offenses within the past 5 years if the most recent arrest occurred within the past year; or persons found through a drug test to use a controlled substance unlawfully, provided that the test was administered within the past year. For a current or former member of the Armed Forces, an inference of current use may be drawn from recent disciplinary or other administrative action based on confirmed drug use, e.g., court-martial conviction, nonjudicial punishment, or an administrative discharge based on drug use or drug rehabilitation failure.

Page 16 of 27

(2001) (recognizing the statutory determination that "marijuana has no medical benefits worthy of an exception (outside the confines of a Government-approved research project)"). Therefore, a regulation that prohibits any user of marijuana from possessing a firearm or ammunition is also consistent with 18 U.S.C. § 922(g)(3), which, as discussed above in Section III.B.1, the Ninth Circuit has previously found to be constitutional in *Dugan*.  Accordingly, all the reasons that support the constitutionality of the statutes related to the sale and possession of firearms equally apply to 27 C.F.R. § 478.11.

### 4.   *BATFE's Open Letter*[3]

Plaintiff begins her Response to Defendants' Motion to Dismiss her Second Amendment claims by reciting a string of objections to the BATFE's failure to engage in "notice and comment" prior to issuing the Open Letter. (Resp. 9:26–10:12, ECF No. 41.)  The Court recognizes that citizens may seek review of an agency's action that allegedly violates the Administrative Procedures Act ("APA"). *See* 5 U.S.C. § 702 (waiving sovereign immunity and providing a private cause of action for "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute").  However, Plaintiff's argument is puzzling given her failure to include a cause of action for violations of the APA in her FAC. (*See* FAC ¶¶ 50–97, ECF No. 34.)  Thus, Plaintiff's assertions based on the APA, including any contradiction between the Open Letter and 27 C.F.R. § 478.11, cannot save her Second Amendment claim; a claim alleging violations of the APA is separate from a claim alleging violations of the right secured by the Second

---

[3] Plaintiff's argument that the policy in the Open Letter violates the Second Amendment because "more than half of the U.S. population" uses marijuana is absurd at best.  The mere fact that many people engage in illegal activity does not alter the illegal nature of the activity.  Furthermore, the fact that the use of marijuana may be legal under the laws in some states does not later the illegality of this use under federal law. *See Gonzales v. Raich*, 545 U.S. 1 (2005) (It is well settled that Congress has authority under the Commerce clause to criminalize marijuana possession, even if such possession is not also illegal under state law); *see also Raich v. Gonzales ("Raich II")*, 500 F.3d 850, 861–64 (9th Cir. 2007) (holding, on remand from the Supreme Court, that there is no Ninth Amendment or substantive due process right to use marijuana for claimed medical purposes).

1    Amendment.[4]

2        **C.    First Amendment Claim**

3        In Plaintiff's FAC, she asserts that the First Amendment confers a right to exercise

4    "certain non-verbal and communicative conduct, which, in this case, includes, without

5    limitation, the acquisition, possession, and acknowledgment of possession of a medical

6    marijuana registry card validly issued pursuant to state law." (FAC ¶ 82, ECF No. 34.)  Thus,

7    Plaintiff contends that "[b]y acquiring, possessing, and acknowledging possession of a medical

8    marijuana registry card, Plaintiff is exercising her First Amendment right to free speech." (*Id.*

9    ¶ 85.)  Plaintiff alleges that her possession of a registry card is a "tangible symbol" of her

10   "deeply held beliefs that marijuana should be legal for medical use"; her "belief and opinion

11   that her fellow citizens of Nevada were correct to have forced changes to Nevada law legalizing

12   marijuana for medical use"; and her "belief and opinion that citizens in each state have a right

13   to decide whether marijuana should be legal for medical purposes." (*Id.* ¶¶ 87–90.)  Plaintiff

14   further contends that "Defendants are also attempting to deter her from exercising her First

15   Amendment rights in the future by requiring that she give up her First Amendment rights in

16   exchange for her Second Amendment rights."[5] (*Id.* ¶ 95.)

17   _____

18   [4] The Court will not grant leave to amend because the Court holds that amendment would be futile.

19   Interpretative rules are excepted from the requirement that an agency provide notice and an opportunity for public comment prior to promulgating a rule. 5 U.S.C. § 553(b)–(c).  Because the statements in the Open Letter are textbook interpretative, notice and comment would not be required. *See Shalala v. Guernsey Mem'l Hosp.*,

20   514 U.S. 87, 88 (1995) (describing an interpretative rule as one "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers"); *see also Hepm Indus. Ass'n v. Drug*

21   *Enforcement Admin.*, 333 F.3d 1082, 1087 (9th Cir. 2003) ("[I]nterpretive rules merely explain, but do not add to, the substantive law that already exists in the form of a statute or legislative rule. Legislative rules, on the other

22   hand, create rights, impose obligations, or effect a change in existing law pursuant to authority delegated by Congress." (internal citations omitted)).  The Open Letter simply interprets existing law and provides guidance to

23   the FFLs on how the laws, under which the FFLs operate, apply to the new circumstance of states exempting from prosecution the use of marijuana for medical purposes.  Furthermore, because the use of marijuana is illegal

24   under federal law, regardless of the user's purpose, the Open Letter cannot be said to change existing law. Accordingly, any attempt to amend the FAC to include a cause of action for failure to engage in notice and

25   comment under 5 U.S.C. § 553 would be futile.  Therefore, the Court declines to grant leave to amend.
     [5] Plaintiff's FAC also alleges that "Defendants are retaliating against Plaintiff's exercise of her First Amendment rights by denying her Second Amendment right." (FAC ¶ 94, ECF No. 34.)  Defendant categorizes this

### 1.   *Applicable Legal Standards*

It is well-established that the First Amendment's protection "does not end at the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 404 (1989).  Rather, certain conduct "may be sufficiently imbued with elements of communication to fall within the scope of the First . . . Amendment[]." *Id.* (internal quotation marks omitted).  However, the Supreme Court has repeatedly "rejected 'the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.'" *Id.* (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)).

To determine whether conduct possesses sufficient "elements of communication," courts engage in a two-pronged analysis.  First, courts determine "whether 'an intent to convey a particularized message was present.'" *Texas v. Johnson*, 491 U.S. at 404 (quoting *Spence v. Washington*, 418 U.S. 405, 410–11 (1974)).   Second, courts look to "whether 'the likelihood was great that the message would be understood by those who viewed it.'" *Texas v. Johnson*, 491 U.S. at 404 (quoting *Spence*, 418 U.S. at 411).

### 2.   *Discussion*

Even assuming that Plaintiff has adequately pleaded the two prongs of the *Spence* test for when conduct is expressive, Plaintiff's claim fails under the analysis applying the correct

---

allegation as a "First Amendment 'retaliation claim.'" (Mot. to Dismiss 35 n.23, ECF No. 37.)  In Plaintiff's Response brief, she seems to indicate that that this allegation is more related to a claim under the "unconstitutional condition" doctrine. (Resp. 23:22–25, ECF No. 41 ("The Defendants have effectively given the Plaintiff a Hobson's Choice between her First and Second Amendment Rights: *you can either exercise your right to free expression, or you can exercise your right to keep and bear arms, but you can't have both*.")); *see also Speiser v. Randall*, 357 U.S. 513, 518 (1958) (holding that "[t]o deny an exemption to claimants who engage in certain forms of speech is in effect to penalize them for this speech.").  Regardless of how this allegation is characterized, the claim fails.  First, Plaintiff has not set forth facts adequate to suggest that the passage of § 922(g)(3), § 922(d)(3), the promulgation of 27 C.F.R. § 478.11, or the distribution of the Open Letter, was motivated by retaliation for any communicative conduct by Plaintiff.  Additionally, *Speiser* cautions that conditions which "have the effect of coercing the claimants to refrain from the proscribed speech" are suspect. 357 U.S. at 519.  However, in this case, any such "condition" does not affect the actual speech, *i.e.*, promoting the medical benefits of marijuana, but relates only to the underlying conduct of obtaining and possessing a medical marijuana registry card.

level of scrutiny.

Plaintiff asserts that this Court must apply strict scrutiny to the challenged policy. Plaintiff is mistaken. Strict scrutiny applies only when the government "proscribe[s] particular conduct *because* it has expressive elements" or enforces a "law *directed* at the communicative nature of conduct."[6] *Texas v. Johnson*, 491 U.S. at 406 (quotation marks omitted). Similarly, the Ninth Circuit has stated that the *O'Brien* analysis, rather than strict scrutiny, applies whenever the "conduct . . . merely contains an expressive component . . . more akin to . . . burning a draft card (an example of conduct that can be used to express an idea but does not necessarily do so)." *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1059 (9th Cir. 2010) (citing *O'Brien*, 391 U.S. at 376). The acts of obtaining and possessing a marijuana registry card are classic examples of "conduct that can be used to express an idea but does not necessarily do so." Plaintiff may well have obtained her registry card as a form of expression, but that is not necessarily true of all individuals who obtain a medical marijuana registry card. Accordingly, Plaintiff's assertion that strict scrutiny applies is incorrect; the standard announced by the Supreme Court in *O'Brien* supplies the appropriate standard of review for the statutes, regulation, and policy that Plaintiff challenges.

Under *O'Brien*, even after a court determines that the conduct at issue implicates the First Amendment, "it does not necessarily follow that [the conduct at issue] is constitutionally protected activity." 391 U.S. at 376. "[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the

---

[6] Plaintiff asserts that "the DOJ, and by extension the ATF, enacted the Open Letter with the deliberate intent to suppress the growing medical marijuana movement." (Resp. 26:17–19, ECF No. 41.) For this reason, Plaintiff asserts that the Court must apply strict scrutiny to the challenged policy. (*Id.* 26:28–27:2.) However, the Supreme Court rejected a similar argument in *O'Brien* because "under settled principles the purpose of Congress . . . is not a basis for declaring this legislation unconstitutional." 391 U.S. at 382–83 (rejecting the argument that a statute prohibiting the destruction or mutilation of selective service registration certificates was unconstitutional because it was the "'purpose' of Congress to 'suppress freedom of speech'").

nonspeech element can justify incidental limitations on First Amendment freedoms." *Id.*  More specifically:

> a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*Id.* at 377.

Here, Plaintiff fails to establish that this policy fails the test articulated by the Supreme Court in *O'Brien*.  First, neither party asserts that the Government lacks the constitutional authority to regulate the possession and sale of firearms.  Second, the challenged policy furthers the important governmental interest of protecting public safety and preventing violent crime. *See United States v. Dugan*, 657 F.3d 998, 999 (9th Cir. 2011) (recognizing the "danger in allowing habitual drug users to traffic in firearms because . . . [they] more likely will have difficulty exercising self-control, particularly when they are under the influence of controlled substances").  Third, this interest is unrelated to the suppression of free expression.  Finally, any restriction on Plaintiff's First Amendment right is no greater than necessary to further this interest.  Specifically, the policy does not prohibit individuals from advocating for the legalization of marijuana for medicinal purposes.  Similarly, the policy does not prevent any known advocate of the medical benefits of marijuana from obtaining a firearm.  Instead, this policy is tailored to prevent users of marijuana, a controlled substance, from possessing a firearm by presuming that an individual who undertakes the "exceedingly difficult and lengthy process" of obtaining a medical marijuana card, (Resp. 25:2–8), is actually using marijuana. For these reasons, any infringement of Plaintiff's First Amendment right is incidental to an important governmental interest of reducing the threat caused by gun violence.  Plaintiff cannot show that, under *O'Brien*, these statutes, regulation, and policy impermissibly infringe her right

1    of expression as secured by the First Amendment.  Accordingly, her First Amendment claim

2    fails and must be dismissed with prejudice.

3          **D.      Substantive Due Process Claim**

4          Substantive due process refers to the protection of "those fundamental rights and

5    liberties which are, objectively, deeply rooted in this Nation's history and tradition."

6    *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (internal quotation marks omitted).  In

7    Plaintiff's FAC, she asserts that her "right to possess a handgun *under the Second Amendment*

8    is objectively deeply rooted in the Nation's history and tradition and implicit in the concept of

9    ordered liberty such that neither liberty nor justice would exist if they were sacrificed." (FAC

10   ¶ 75, ECF No. 34 (emphasis added).)  Similarly, Plaintiff asserts that she "possesses a

11   fundamental right to free speech *under the First Amendment* which includes certain non-verbal

12   speech . . .." (*Id.* ¶ 77 (emphasis added).)

13         The Supreme Court has long foreclosed this type of claim.  For this reason, Plaintiff's

14   cause of action for violations of the substantive due process clause of the 5th Amendment fails

15   and must be dismissed.  Specifically, more than two decades ago, the Supreme Court first held

16   that "[w]here a particular Amendment provides an explicit textual source of constitutional

17   protection against a particular sort of government behavior, that Amendment, not the more

18   generalized notion of substantive due process, must be the guide for analyzing these claims."

19   *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395

20   (1989)) (internal quotation marks omitted).  In fact, the Supreme Court has employed this

21   principle to countless amendments.  For example, in *Stop the Beach Renourishment, Inc. v.*

22   *Florida Department of Environmental Protection*, the Court noted that "[t]he first problem with

23   using Substantive Due Process to do the work of the Takings Clause is that we have held it

24   cannot be done." 560 U.S. 702, 721 (2010) (citing *Albright*, 510 U.S. at 273).  Similarly, in

25   *Turner v. Rogers*, the Court concluded that a criminal defendant could not use the Due Process

Page 22 of 27

1   Clause to assert a claim for violations of his Sixth Amendment right to appointed counsel. 131

2   S. Ct. 2507, 2522 (2011) ("[W]e do not read a general provision to render a specific one

3   superfluous.").

4        Plaintiff attempts to salvage this claim by arguing that the provisions in her FAC that

5   refer to her First and Second Amendment rights, (FAC ¶¶ 75–77), "such provisions in the FAC

6   do not waive Plaintiff's previous assertion that she possess [sic] a liberty right in the ability to

7   choose a course of medical treatment . . .." (Resp. 29:1–5, ECF No. 41.)  This argument is

8   fatally flawed for at least two reasons.  First, Plaintiff cannot attempt to cure defects in her

9   complaint by including the necessary allegations in her opposition brief. *See Broam v. Bogan*,

10  320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (noting that a court may not look beyond the complaint

11  to plaintiff's briefs when determining the propriety of a motion to dismiss for failure to state a

12  claim).  Second, the Ninth Circuit's opinion in *Raich v. Gonzales*, forecloses any claim that

13  Plaintiff has a fundamental right to use marijuana for medical reasons.[7] 500 F.3d 850, 861–66

14  (9th Cir. 2007).

15       For these reasons, the Court concludes that Plaintiff has not and cannot state a claim for

16  violations of the substantive due process claim.  Because the Court finds that amendment would

17  be futile, this cause of action is dismissed with prejudice.

18       **E.      Procedural Due Process Claim**

19       In Plaintiff's FAC, she alleges that "Defendants have denied the Plaintiff adequate

20

---

21  [7] The Supreme Court has recognized that there are fundamental rights associated with choosing one's medical
    treatment. *See Planned Parenthood of S.E. Penn. v. Casey*, 505 U.S. 833 (1992) (recognizing a women's right to
22  an abortion); *Eisenstad v. Baird*, 405 U.S. 438 (1972) (recognizing the right to use contraception); *Cruzan v.
    Dir., Mo. Dept. of Health*, 497 U.S. 267, 279 (1990) (recognizing the right to "refuse lifesaving hydration and
23  nutrition").  However, the Court has never recognized an unqualified constitutional right to any medical
    treatment that a patient desires.  In fact, in *Raich v. Gonzales*, the Ninth Circuit held that there was no
24  constitutionally protected right to use marijuana for medicinal purposes. 500 F.3d 850, 864 (9th Cir. 2007)
    (stating that "federal law does not recognize a fundamental right to use medical marijuana prescribed by a
25  licensed physician to alleviate excruciating pain and human suffering").  Thus, the Ninth Circuit's holding in
    *Raich v. Gonzales* effectively precludes Plaintiff's argument that she has a fundamental right to engage in the
    exact course of treatment that she and her physician deem best.

procedural protections before depriving her of her right to purchase and possess a firearm."
(FAC ¶ 71, ECF No. 34.)  However, because Plaintiff has failed to identify a constitutionally
protected liberty or property interest, as required by the Fifth Amendment, her claim fails and
must be dismissed.

The relevant portion of the Fifth Amendment provides that "No person shall . . . be
deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V.
To successfully allege a procedural due process claim, plaintiffs must provide sufficient facts
establishing the plausible existence of two elements: "(1) a deprivation of a constitutionally
protected liberty or property interest, and (2) a denial of adequate procedural protections."
*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).  The
Court need not reach the second element because Plaintiff has not alleged that Defendants
deprived her of a constitutionally protected liberty or property interest. *See Bd. of Regents v.
Roth*, 408 U.S. 564, 569 (holding that adequate procedural protections are required only when
the plaintiff has been deprived of a liberty or property interest).

In her opposition brief, Plaintiff first asserts that "[t]he United States Constitution
requires that whenever a governmental body acts to injure an individual, that act must be
consonant with due process of law." (Resp. 30:17–18, ECF No. 41.)  Plaintiff concludes that
Defendants' determination that those persons that possess a registry card fit the definition of an
"unlawful user of a controlled substance" deprives her of a right without adequate procedure.
(*Id.* at 31:14–22.)  However, Plaintiff fails to recognize that she must articulate a
"constitutionally protected *liberty* or *property* interest" before her procedural due process claim
may proceed.  Therefore, Plaintiff's discussion of any procedural inadequacies is insufficient to
defeat Defendants' Motion to Dismiss.  Because Plaintiff cannot identify a constitutionally
protected *liberty* or *property* interest, she cannot state a procedural due process claim and the
Court must dismiss her claim with prejudice.

1

**F.      Equal Protection Claim**

2

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state

3

shall . . . deny to any person within its jurisdiction the equal protection of the laws."  Although

4

the Fourteenth Amendment applies only to state action, the Due Process Clause of the Fifth

5

Amendment, which does apply to the federal government, encompasses the protections of the

6

Equal Protection Clause. *Bolling v. Sharpe*, 347 U.S. 497 (1954).  The equal protection

7

component of the Due Process Clause is "essentially a direction that all persons similarly

8

situated be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439

9

(1985).  To state a valid claim under the equal protection component of the Fifth Amendment,

10

Plaintiff "must show that the statute in question results in members of a certain group being

11

treated differently from other persons based on membership in that group." *Sagana v. Tenorio*,

12

384 F.3d 731, 740 (9th Cir. 2004) (internal quotation marks omitted); *see also Gonzalez-*

13

*Medina v. Holder*, 641 F.3d 333, 336 (9th Cir. 2011) ("To establish an equal protection

14

violation, [the plaintiff] must show that she is being treated differently from similarly situated

15

individuals.").

16

Plaintiff's FAC first alleges that she "is being treated differently from persons who are

17

prescribed medical marijuana in states where the obtainment of a state-issued medical

18

marijuana registry card is not required." (FAC ¶ 62, ECF No. 34.)  This statement is

19

insufficient to state an equal protection claim.  The laws, regulation, and policy that Plaintiff

20

challenges are neither "applied in a discriminatory manner," nor does it "impose[] different

21

burdens on different classes of people." *See Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187

22

(9th Cir. 1995).  Plaintiff's argument simply acknowledges that marijuana users in states that

23

do not require registry cards may more easily evade and violate federal law. *See United States*

24

*v. Hendrickson*, 664 F. Supp. 2d 793, 798 (E.D. Mich. 2009) ("There is no right under the

25

Constitution to have the law go unenforced against you, even if you are the first person against

whom it is enforced . . . . The law does not need to be enforced everywhere to be legitimately enforced somewhere." (quotation omitted)).

Plaintiff further alleges that she "is also being treated differently from similarly situated persons with similar medical conditions to those of the Plaintiff. . . .  Other similarly situated individuals who likewise pursue different methods of treatment for medical conditions have not been denied their ability to obtain handguns." (*Id.* ¶ 63.)   However, although the use of marijuana for medical purposes may not violate Nevada state law, this same use is still prohibited under federal law. *See e.g.*, 21 U.S.C. § 844(a) (prohibiting possession of controlled substances); *see also ATF Open Letter* (stating that "[t]he Federal government does not recognize marijuana as a medicine").  The fact remains that, by "follow[ing] state laws for the obtainment of treatment for her medical condition," (Resp. 33:12–16), she is pursuing a course of treatment that violates federal law.  Thus, she is not similarly situated to individuals that avail themselves of treatment methods *that comply with federal law*. *See Marin Alliance for Med. Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1158–59 (N.D. Cal. 2011) (concluding that individuals for whom the use of marijuana is prohibited under federal law are not similarly situated to individuals whose use of marijuana is permitted under federal law (in connection with research projects funded by the Government)).  Accordingly, Plaintiff has failed to plead a valid class of persons against whom the government is discriminating in violation of the equal protection component of the Fifth Amendment.[8]

For these reasons, Plaintiff's complaint fails to state a plausible claim under the equal protection component of the Fifth Amendment.  Accordingly, the Court dismisses Plaintiff's

[8]  Even if Plaintiff had identified an appropriate class of individuals, she certainly has not established her membership in a "suspect class."  Accordingly, "any differential treatment violates equal protection only if it lacks a 'rational basis.'" *Gonzalez-Medina*, 641 F.3d at 336.  As discussed numerous times above, this policy is rationally related to the Government's legitimate interest in preventing violent crime.

equal protection claim with prejudice.

**IV.**     **CONCLUSION**

      **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss the First Amended
Complaint (ECF No. 37) is **GRANTED** with prejudice.

      The Clerk of the Court shall enter judgment accordingly.

      **DATED** this 11th day of March, 2014.

_____

Gloria M. Navarro, Chief Judge
United States District Judge